**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DYSON, INC., | |
| Plaintiff, | |
| v. | Civil Action No. 06-CV-6576(DC) |
| MAYTAG CORPORATION, | |
| Defendant. | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DYSON, INC.'S MOTION FOR A PRELIMINARY INJUNCTION**</u>

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 5

    A.   Maytag's False and Misleading Campaign ................................................ 5

    B.   Testing Confirms that Maytag's "No Loss of Suction" Claim is False. ................ 6

    C.   The No Loss of Suction Claim is Also Misleading, Even When Read
        Along With the Footnoted Disclaimer .................................................. 10

    D.   The NAD Proceedings and Maytag's False Promise to Cease and Desist .......... 11

III.  ARGUMENT ...................................................................................................... 14

    A.   The Standards Applicable to Injunctive Relief in Lanham Act Cases are
        Well-Settled. .................................................................................. 14

    B.   Dyson is Likely to Succeed on the Merits of its Claims. ............................ 16

        1.   The "No Loss of Suction" Claim Is Literally False ............................. 16

        2.   Dyson Will Suffer Irreparable Harm if Maytag's False Packaging
            and Advertisements Continue. ..................................................... 20

    C.   The Equities Weigh Decidedly in Favor of Injunctive Relief ....................... 23

    D.   The Relief Requested is Appropriate and Necessary ................................ .23

IV.   CONCLUSION .................................................................................................. 24

## MEMORANDUM OF LAW IN SUPPORT OF DYSON, INC.'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Dyson, Inc. ("Dyson") respectfully submits this Memorandum in Support of its Motion for a Preliminary Injunction along with the Affidavit of Gregory W. Fortsch, and Declarations of Gordon Thom, Susan H. Goldsmith, and Michael B. Mazis, and a proposed order that sets forth the specific relief requested. This Court should issue a Preliminary Injunction because Defendant Maytag Corporation ("Maytag") is falsely claiming in advertising for its Hoover Fusion™ ("Fusion") and Maytag Legacy™ ("Legacy") upright vacuum cleaners that the vacuums provide "No Loss of Suction," *i.e.*, that the suction performance of these vacuum cleaners stays constant while consumers use them to clean their homes. Maytag's No Loss of Suction claim is false. Testing conducted by a leading independent laboratory proves that both the Fusion and the Legacy *do* lose suction, by about 35%, as dust accumulates in the machines during conditions representative of ordinary use.

If permitted to continue, Maytag's false "No Loss of Suction" claim threatens irreparable harm to Dyson, which sells products that compete directly with the Fusion and the Legacy in the U.S. market for upright vacuum cleaners.

## I.    PRELIMINARY STATEMENT

Four years ago, Dyson introduced a line of revolutionary, bagless, cyclonic vacuum cleaners in the United States market. In a now-iconic television commercial that kicked off Dyson's U.S. launch, company-founder James Dyson described the years of trial and error that ultimately led to his invention of the first vacuum cleaner that "doesn't lose suction." Dyson's advertising claim is amply supported because its vacuums do not lose suction. Their suction power remains constant during use, unlike that of other vacuum cleaners. Other vacuum cleaners (such as those made by Maytag) lose suction as dirt, dust and carpet fibers tend to clog the fine

pores on internal filters and bags. Dyson has widely advertised this important point of difference, and Dyson vacuum cleaners have proven to be immensely popular with consumers.

Maytag launched its own version of a bagless, cyclonic vacuum cleaner called the Hoover Fusion, in the middle of 2005. Maytag either hoped to ride on Dyson's coat-tails, or to erode Dyson's exclusive claim to No Loss of Suction, by claiming on product packaging and advertising that the Fusion also had No Loss of Suction. (See Affidavit of Gregory W. Fortsch ("Attorney Aff."), Exhibits ("Ex.") A, G.) A tiny footnote to the No Loss of Suction claim on the Fusion vacuum product packages and the Maytag/Hoover website states: "Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using the ASTM International F558 test method and dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material." (Id., Ex. C, G) For reasons discussed below, the footnote obfuscates with technical jargon and tiny typeface the essential point that Maytag's No Loss of Suction claim, at best, holds true for a short period of time under test conditions that do not reflect ordinary consumer use. Furthermore, a consumer survey commissioned by Dyson proves that few, if any, consumers read this footnote, much less understand it.

Shortly thereafter, Dyson challenged the Fusion No Loss of Suction claim before the National Advertising Division of the Council of Better Business Bureaus ("NAD"). The NAD is a widely-respected, advertising industry-funded arbitral forum that reviews national advertising for truthfulness and accuracy and determines whether advertising claims have been substantiated. Following a lengthy, contested proceeding in which both parties submitted extensive evidence, the NAD ruled in April 2006 that Maytag had not substantiated its No Loss of Suction claim and recommended that Maytag discontinue advertising that the Fusion has No Loss of Suction. (Attorney Aff., Ex. H at 33-34.)

Maytag publicly pledged to comply with the NAD's recommendations, but ultimately displayed contempt for the NAD decision in both words and deeds. Around May 2006, Maytag launched a copycat vacuum to the Hoover Fusion, called the "Maytag Legacy." The new Maytag Legacy is highly similar to the Hoover Fusion in styling, packaging, and marketing, and advertises the same No Loss of Suction claim found to be unsubstantiated by the NAD (along with the same inadequate fine-print disclaimer).[1] Moreover, Maytag took no steps to remove the No Loss of Suction claim from the packaging and advertising for the Fusion. Rather, it added language to the Fusion website that further obfuscated the claim, stating that "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability" and that "No testing has established a correlation between suction performance and carpet cleaning in the home." (Attorney Aff., Ex. G.)

Faced with Maytag's recalcitrance, Dyson lodged a compliance challenge with the NAD. (Attorney Aff., Ex. I.) On August 2, 2006, the NAD concluded that Maytag indeed had failed to comply with the NAD's previous decision, adding that Maytag's new language (described above) actually confused consumers by *contradicting* the performance benefit advertised by the "No Loss of Suction" claim. (Attorney Aff., Ex. J.) The NAD reiterated its recommendation that Maytag discontinue its "No Loss of Suction" claim. Because of Maytag's continuing refusal to comply, however, the NAD took the severe step of referring the matter to the Federal Trade Commission ("FTC") for potential enforcement under Section 5 of the FTC Act. (Id.)[2]

---

[1] As we discuss below, the Legacy loses suction even faster than the Fusion, based on tests by a leading independent laboratory.

[2] This is not the first time Maytag has failed to comply with an NAD finding. In July, Bissell Homecare sued The Hoover Company for false advertising after attempting unsuccessfully to obtain Hoover's compliance with an NAD decision. Bissell Homecare, Inc. v. The Hoover Company, No. 1:06-CV-0464 (W.D. Mich. 2006). That case is currently pending.

In June of 2006, Maytag's Vice President of Marketing, Dave Baker, revealed in a public interview with Advertising Age ("AdAge") magazine that Maytag intends to keep using the No Loss of Suction claim, in plain defiance of the NAD ruling. (Attorney Aff., Ex. K.) Mr. Baker told AdAge that "[w]e don't believe in the 'no loss of suction' claims." (Id.) Incredibly, Mr. Baker also told AdAge that Maytag would nevertheless keep advertising "No Loss of Suction" purely as "*a way to hit Dyson where they claim their superiority*." (Id. (emphasis added).) Maytag thus signaled clear intent to continue using the unsubstantiated No Loss of Suction claim purely to harm Dyson. Mr. Baker went on to say that Maytag would add a new statement telling consumers that "No Loss of Suction" is not correlated to vacuum cleaner cleaning performance in furtherance of its objective to "hit Dyson." (Id.)

Recognizing that the NAD could do no more, and that Maytag would proceed in defiance of the law until forced to stop, Dyson commissioned new product tests of the Fusion and Legacy to prepare for litigation. The tests, conducted by a leading lab under widely accepted international testing standards, were completed in August 2006. They show that the two Maytag products do, in fact, lose suction by about 35% under standard test conditions designed to be representative of consumer use. Dyson also commissioned a consumer survey to test the effect of Maytag's footnote on consumer perception of the "No Loss of Suction" claim. The survey confirms that few consumers read the footnote, and few understand it.

Having diligently exhausted efforts to resolve this matter out of court through industry-recognized arbitration procedures, and having recently proven through product testing that the claims at issue are plainly false, Dyson now seeks emergency injunctive relief to prevent irreparable harm caused by Maytag's current and proposed advertising and its continued refusal to comply with the NAD decision. Maytag's "No Loss of Suction" claim is literally false. Even

if the claim, when read in conjunction with the footnoted disclaimer, might appear on the surface

to be technically true, consumer survey evidence shows that the footnote has no impact on the

vast majority of consumers who view the package.

On information and belief, Maytag plans to triple its spending on advertising to $120

million (Attorney Aff., Ex. K) -- just as the critical holiday purchasing and gift-giving seasons

approach -- during which time, this claim, if not stopped by this court, will surely proliferate.

Maytag's current and proposed false advertising should be enjoined immediately.

## II.     STATEMENT OF FACTS

### A.     Maytag's False and Misleading Campaign

Maytag is a leading manufacturer and marketer of vacuums in the United States, but

Dyson has challenged Maytag's position in recent years, with its innovative and revolutionary

bagless cyclonic vacuum cleaners.  In a desperate attempt to stem the tide of Dyson's success in

challenging its position, Maytag has directly attacked Dyson's products by falsely claiming that

Maytag's own vacuums have "No Loss of Suction."  Maytag makes its claims on its website, on

packaging, and on the vacuums themselves.  Copies of the relevant advertisements are attached

to the Affidavit of Gregory Fortsch, Esq., as Exhibits A, B, F, and G.

Currently, a small asterisk after the No Loss of Suction claim on Hoover Fusion and

Maytag Legacy packaging (Attorney Aff., Exs. A, B) and the Maytag Legacy vacuum cleaner

itself (Attorney Aff., Ex. F.) leads to a miniscule disclaimer stating that "Suction stays constant

for up to 10 ounces of dirt, as tested by an independent laboratory using the ASTM International

F558 test method and dirt composition comprised of 70% mineral dust, 20% cellulose dust and

10% fibrous material."  (Attorney Aff., Ex. C, D; see also Ex. E.)  As discussed below, Maytag's

counsel has stated that Maytag intends in the near future to add this claim on product packaging

in two ways, first by adding a statement in bold print immediately beneath the No Loss of Suction claim that "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability" and second, by adding a sentence to the disclaimer stating that "[n]o testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary." (Attorney Aff., Ex. L.) These statements already appear on the Hoover Fusion website. (Attorney Aff., Ex. G.) As the NAD found in its compliance decision (see Section C below), neither of these additions alters the plain, and false, meaning of the Maytag No Loss of Suction claim.[3]

**B.    Testing Confirms that Maytag's "No Loss of Suction" Claim is False.**

Contrary to Maytag's headline, bold-faced "No Loss of Suction" claim, the Fusion and Legacy do, in fact, lose suction. (See Declaration of Susan H. Goldsmith ("Goldsmith Dec."), ¶¶ 14-16.) This has been proven by tests conducted by Inter Basic Resources, Inc. ("IBR"), the country's only accredited testing laboratory for filtration and vacuum testing. (Id.) IBR is a leading, independent vacuum performance testing laboratory, and is relied on by every major manufacturer in the United States to test vacuum suction and other vacuum performance attributes. (Goldsmith Dec., ¶ 8.)

In tests of the Fusion and the Legacy commissioned by Dyson during the summer of 2006, IBR found that both the Fusion and the Legacy experience a significant loss of suction before the dust bin is full at 1200 grams of dust. (Goldsmith Dec., ¶¶ 15-16.) Thus, consumers

---

[3] The Owner's Manuals for the Fusion and Legacy further discredit Maytag's "No Loss of Suction" claim by conceding the machines will lose suction when used on fine particulates, such as face powder or corn starch. These manuals state on page 6 that "[i]t is recommended that the dirt cup be emptied before the dirt reaches the fill line . . . or after every use if preferred. **CAUTION: Very fine materials such as face powder or corn-starch, may seal the filter and cause loss of suction. When using the cleaner for this type of dust, empty the cup and clean the filters often."** (Attorney Aff., Ex. N) (bold in original) (the Hoover Fusion and Maytag Legacy vacuums both contain the same "Hoover Fusion" instruction manual). This disclosure is not made available to consumers prior to purchase.

using the units would experience a loss of suction before they would need to empty the dust bins, even for the very first time.

In an implicit concession that the Fusion and the Legacy do lose suction before their dust bins are filled, Maytag's tiny, footnoted disclaimer[4] to the No Loss of Suction claim states in highly technical language that "Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using the ASTM International F558 test method and a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material."[5] As discussed below, a consumer survey conducted for Dyson shows that few, if any, consumers read or understand the disclaimer.

Unfortunately for Maytag, even in the unlikely circumstance that consumers could grasp the engineering jargon set out in the footnote (and a consumer survey shows the overwhelming majority do not), the ASTM F558 test referred to there is inapposite both to the main No Loss of Suction claim and to the purported disclaimer in the footnote. The ASTM F558 test measures only initial suction power of the vacuum cleaner -- not how suction changes as dust is vacuumed over time into the machine. (Attorney Aff., Ex. M.) In the ASTM F558 test, the vacuum cleaner is placed into a chamber, turned on, and suction power is measured as different orifice plates of varying diameters are placed onto the air intake to restrict air flow. (Id.) Not surprisingly, the ASTM standard itself states that "The test results allow the comparison of the maximum potential air power available for cleaning tasks . . . [and] *do not indicate the actual air power present during the cleaning process* due to the effect of the various tools in use and surfaces

---

[4] On both the Legacy and Fusion packages, the disclaimer appears in tiny, low-contrast print, less than one inch from the bottom of the box. (See Attorney Aff., Ex. B; see also Ex. E.)

[5] ASTM International, originally known as the American Society for Testing and Materials (ASTM), is a voluntary standards development organization that produces technical standards for materials, products, systems, and services. See http://www.astm.org/cgi-bin/SoftCart.exe/ABOUT/aboutASTM.html?L+mystore+nazy7360+1156362319 (last visited Aug. 28, 2006).

being cleaned." (Id., at §4.1 (emphasis added).)

Maytag's footnote reveals that it conducted ASTM test measurements, apparently by adding an additional step that provides for the loading of dust and fiber into the machine.[6] While Maytag's tiny footnote purports to say that its ASTM tests show that suction remains constant "up to" 10 ounces of dirt,[7] the footnote says nothing about what happens thereafter – a precipitous decline in suction. The footnote, therefore, does not, by any means, cure or make true the broad and false message conveyed by the No Loss of Suction claim.

Ten ounces of dirt fills about 25% of the available dustbin capacity of the Fusion and Legacy vacuums. Yet over 23% of consumers who are shown the footnote and asked how much of the bin they think is filled by 10 ounces, believe 10 ounces is 75% or more of bin capacity. (See Declaration of Michael Mavis, PhD. ("Mazis Dec."), ¶25.) The bins on each of the Legacy and Fusion units contain 2.7 liters of liquid volume, and during IBR's testing, they did not reach the "bin full" indicator until 1200 grams (42.4 ounces) of the IEC standard test dust mixture had been loaded. (Goldsmith Dec., ¶¶ 15-16.)

As discussed in Section C, below, few actual consumers can pierce the technical jargon contained in Maytag's tiny footnote in order to discern that Maytag is saying that suction in the Legacy and Fusion remains constant only until the dust bins are at roughly 25% of capacity (283 grams out of 1200 grams total). This is because Maytag never explains this critical qualification to consumers in prominent, easy-to-understand language. Nor does Maytag prominently qualify the headline No Loss of Suction claim by disclosing that its products may experience a significant decline of suction as they progress to fill the remaining bin capacity. IBR's tests for

---

[6] This testing was also carried out by IBR. Dyson has no quarrel with IBR's execution of the test *per se*, but rather Maytag's reliance on its results to make a No Loss of Suction claim in advertising.
[7] Maytag's counsel has claimed that this is equivalent to a "single use." (Attorney Aff., Ex. L.) Product instructions do not require the bin to be emptied after each use. (Attorney Aff., Ex. N.)

Dyson show that suction declines by about 35% during this period.  (Goldsmith Dec., ¶¶ 15-16.)

      In contrast to the modified ASTM F558 test relied on by Maytag, Dyson commissioned testing under an industry-consensus standard test developed by the International Electrotechnical Commission ("IEC"),[8] which is specifically designed to measure the change in suction over time as dust is loaded into the machine.  (Goldsmith Dec., ¶ 11.)  This standard, Part 2.9 of IEC 60312 ("Reduction in maximum air flow with a partly filled dust receptacle"), provides for the measurement and comparison of changes in suction as dust is fed into vacuum cleaners under standardized conditions designed to be representative of ordinary vacuum use.  (Goldsmith Dec. ¶¶ 10-11.)  Major vacuum manufacturers and distributors (such as Maytag), representatives from which have been participating members of the IEC 60312 committee that developed the test (Goldsmith Dec., ¶ 3), are intimately familiar with this method.

      Independent testing by IBR using the IEC 60312, Part 2.9 standard shows that the suction performance of the Fusion and the Legacy drop by about 35%.  (Goldsmith Dec., ¶¶ 15-16.)  In IBR's tests, three units of each of the Legacy and Fusion vacuum cleaners were tested under IEC standard test conditions by measuring suction under conditions of steady dust loading until the bins of each had been completely filled with a standard test dust mixture, in accordance with IEC standards.  (Id.)  The test results demonstrate a significant decline in suction for all of the tested units.  (Id.).

      Consumers reading the No Loss of Suction claim on the Maytag boxes will reasonably expect suction of the Fusion and Legacy to remain constant during use.  The footnote does not disclose to them that suction drops substantially.  A consumer who uses the Fusion or Legacy expecting No Loss of Suction will be sorely disappointed.

---

[8] The IEC is "the leading global organization that prepares and publishes international standards for all electrical, electronic and related technologies."  See http://www.iec.ch/about/mission-e.htm (last visited Aug. 24, 2006).

C.     **The No Loss of Suction Claim is Also Misleading, Even When Read Along With the Footnoted Disclaimer.**

A consumer survey conducted by noted consumer perception expert, Professor Michael Mazis of American University, shows that, while the No Loss of Suction claim is prominently displayed on the Hoover Fusion box, the accompanying disclaimer was neither recalled frequently nor comprehended often by consumers.  (Mazis Dec., ¶26.)

The survey took the form of a classic mall-intercept design.  The universe for the study consisted of 208 recent upright vacuum cleaner purchasers or prospective upright vacuum cleaner purchasers.  (Id. ¶10.)  Interviews were conducted in eight shopping malls across the U.S. – with approximately one-fourth of the interviews taking place in each of the four U.S. Census regions.  (Id.)

Survey respondents who qualified for the study were shown the Hoover Fusion box, and instructed to read all of the information on the box as though they were considering purchasing an upright vacuum cleaner. (Id. ¶14.)  The box was then removed and the interviewer asked respondents a series of questions regarding the box, beginning with an open-ended question: "Please tell me all of the information that you can remember reading on the vacuum box."  (Id. ¶¶14-15.)  Respondents were also asked "Do you or don't you recall seeing any information on the box about 'no loss of suction'?" (Id. ¶16.)  Then, respondents were asked "Do you or don't you recall seeing a footnote with an asterisk at the bottom of the box?"  (Id. ¶17.)  Those responding affirmatively were asked, "What did the footnote at the bottom of the box say?"  (Id.)

Interviewers then allowed respondents to see the Hoover Fusion box for a second time, asking respondent about their comprehension of the disclaimer.  (Id. ¶18.)  While the box was in front of the respondent, the interviewer said, pointing to the disclaimer:

> I'd like you to read this information in the footnote.  When you are
> finished, please let me know, and I will have some questions for
> you about the information.
>
> The information in the footnote states that "suction stays constant
> for up to 10 ounces of dirt."  What does this phrase mean to you?
> [and later] What else?

Finally, interviewers asked respondents to state what percentage of the dirt cup they thought 10 ounces of dirt would fill.

The results confirm that very few consumers saw, recalled, or understood the disclaimer. Of those consumers who reported recalling the "no loss of suction" message when asked the first open-ended question, only about 15% reported noticing the disclaimer.  (Id. ¶23.)  Even fewer consumers (about 4%) recalled key points regarding the message conveyed in the disclaimer. (Id.)

Moreover, when all consumers were asked to read the disclaimer, and were asked to indicate what percentage of the dirt cup they thought ten ounces of dirt would fill, most said either that they did not know (about 29%) or they estimated that 10 ounces of dirt would fill three-fourths or more of the dirt cup (about 23%).  (Id.)  Only 15.8% understood that 10 ounces of dirt would fill one-quarter or less of the dirt cup.  (Id.)

**D.      The NAD Proceedings and Maytag's False Promise to Cease
and Desist**

The April 5, 2006 NAD decision states that Maytag had failed to substantiate its No Loss of Suction claim on the Fusion and recommends that Maytag discontinue the claim.  (Attorney Aff., Ex. H.)  The NAD reasoned that the No Loss of Suction claim "is a broad claim that reasonably communicates to consumers a performance attribute that occurs over time and with repeated use of their vacuum cleaners."  (Id. at 33.)  The NAD further concluded that the footnote used by Maytag did not adequately qualify this broad claim for several reasons.

First, the NAD was not persuaded that "there was sufficient correlation between the laboratory testing [relied on by Maytag] and consumer experience in the real world to support a 'No Loss of Suction Claim.'" (Id. at 34 (citing ASTM F558, part 4.1).) The NAD reasoned that, as discussed infra, the modified ASTM F558 test used by Maytag does not provide for measuring the suction of a vacuum cleaner in a dust-loaded condition. (Id.) Moreover, the NAD stated that it was not persuaded that Maytag's before-and-after version of the ASTM F558 test "was representative of real-world experience of consumers or a representative measure of how vacuum cleaners perform over time." (Id.)

Although it could have appealed the NAD decision, Maytag chose not to. Instead, in an Advertiser's Statement published along with the NAD decision, Maytag stated that it would comply with the NAD's recommendation. (Attorney Aff., Ex. H at 37.) But this has been nothing more than a ruse: in the ensuing months, Maytag failed to honor the NAD recommendation and continued marketing the Fusion with its "No Loss of Suction" claim. Compounding its noncompliance with the NAD recommendation, in or around late May 2006, Maytag launched a copycat vacuum to the Fusion, under the Maytag Legacy brand. The Legacy mimics the styling, packaging, and marketing of the Fusion, and bears an identical "No Loss of Suction" claim, complete with the same fine-print disclaimer. (Attorney Aff., Ex. B, D, F; see also Ex. E.) As discussed above, however, the Legacy performs even worse on industry standard tests of suction over time.

When Dyson learned of Maytag's actions, it initiated a compliance proceeding before the NAD, asking the NAD to take action under section 4.1 of the NAD procedures.[9] (Attorney Aff.,

---

[9] Section 4.1 of the NAD Procedures states, "[A]t the behest of a challenger or a third party, [NAD] may request that the advertiser report back, within five (5) business days, on the status of the advertising at issue and explain the steps

Ex. I.)  After conducting its own investigation, the NAD issued its further decision, and a public

press release, stating that Maytag had failed to comply with the NAD's prior recommendation.

(Attorney Aff., Ex. J.)  The NAD stated that because Maytag had refused to comply with its

recommendation, it would refer the matter to the appropriate government agency for potential

enforcement – in this case, the Federal Trade Commission, which has authority to curb deceptive

advertising under Section 5 of the FTC Act, 15 U.S.C. § 45.  *See* NAD Procedures,

§4.1.C.(ii)(b)(2) (available at http://www.nadreview.org/Procedures.asp?SessionID =996260

(last visited Aug. 28, 2006).

Making matters worse, Maytag has recently told the national press that it not only intends

to stick with No Loss of Suction claim found unsubstantiated by the NAD, but that it will modify

that claim in ways designed to injure Dyson.  Maytag's Vice President of Marketing, Dave

Baker, told AdAge magazine in an obscenity laden interview that Maytag intends to keep

advertising the No Loss of Suction claim despite the NAD decision.  (Attorney Aff., Ex. K.)  Mr.

Baker, described by AdAge as "infuriated," told the magazine that "[w]e don't believe in the 'no

loss of suction' claims," but added that Maytag would nevertheless keep advertising "No Loss of

Suction" as "a way to hit Dyson where they claim their superiority."  (Id.)

Maytag's counsel has more recently disclosed that Maytag would more widely employ

new language, already on the Fusion website, stating that "Vacuum Cleaner Suction Tests Do

Not Represent Carpet Cleaning Ability" and that "No testing has established a correlation

between suction performance and carpet cleaning ability in the home.  Household results may

vary."  (Attorney Aff., Ex. L.)  In a letter to counsel for Dyson's Canadian affiliate, he stated that

Maytag believes these statements disclaim any "performance benefit" by "adequately

communicat[ing] to consumers that Maytag's 'loss of suction' claim is not a cleaning

it has taken to bring the advertising into compliance with the decision."

performance claim and is only for up to 10 ounces of dirt (*i.e.*, a single use),[10] not over time or with repeated use."  (Id.)

In light of Maytag's complete reversal of its initial commitment to abide by the NAD recommendation and total disregard for the NAD's recommendation, made on two separate occasions, that Maytag discontinue its "No Loss of Suction" claims, Dyson's only remedy is to seek emergency injunctive relief.

### III.    ARGUMENT

#### A.    The Standards Applicable to Injunctive Relief in Lanham Act Cases are Well-Settled.

Section 43(a) of the Lanham Act offers broad protection against false advertising.  "The purpose for which this section was enacted was the protection of consumers and competitors from a wide variety of misrepresentations of products and services in commerce."  CBS Inc. v. Springboard Intern.  Records, 429 F. Supp. 563, 566 (S.D.N.Y. 1977); see also SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., Inc., 906 F.Supp. 178, 181 (S.D.N.Y. 1995) ("[t]he purpose of the Act is to insure that advertisements represent truthful claims by a manufacturer and to eliminate any advertising which proffers a misstatement or misrepresentation by a competitor").  Congress specifically sought to provide a business competitor of an advertiser a powerful legal tool to prevent consumer deception.  Competitors "have the greatest interest in stopping misleading advertising, and a private cause of action under section 43(a) allows those parties with the greatest interest in enforcement, and in many situations with the greatest resources to devote to a lawsuit, to enforce the statute rigorously."  Coca-Cola Co. v. Procter & Gamble Co., 822 F.2d 28, 31 (6th Cir. 1987).  Accordingly, Section 43(a) vindicates a consumer's right to be told the truth, as well as a

---

[10] Maytag's assertion that 10 ounces equates with a "single use" is, to Dyson's knowledge, unsupported and

competitor's right to fair tactics in the marketplace.  4 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 27:25, at 27-43 (4th ed. 2004).

The law governing false advertising claims under the Lanham Act is well settled in this Circuit.  To establish such a claim, a plaintiff must prove the following five elements:

> (1)  The defendant has made a false or misleading statement of fact;
>
> (2)  The false or misleading statement of fact in issue has actually deceived a substantial segment of the audience for the advertisement or has the capacity to deceive such segment;
>
> (3)  The deception caused by the statement in issue is material because it is likely to influence purchasing decisions;
>
> (4)  There is a likelihood of injury to plaintiff such as declining sales or loss of goodwill; and
>
> (5)  The advertised goods traveled in interstate commerce.

<u>Johnson & Johnson Vision Care, Inc. v. Ciba Vision Corp.</u>, 348 F.Supp.2d 165, 178 (S.D.N.Y. 2004).  A claim of false advertising does not require proof of intent to deceive.  <u>Procter & Gamble Co. v. Chesebrough-Pond's Inc.</u>, 747 F.2d 114, 118-19 (2d Cir. 1984).

Under well-established Second Circuit law, preliminary injunctive relief is appropriate in Lanham Act cases where a plaintiff establishes: (1) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, plus a balance of hardships tipping decidedly in the plaintiff's favor; and (2) the likelihood of irreparable injury in the absence of such an injunction.  <u>See, e.g.</u>, <u>TCPIP Holding Co., Inc. v. Haar Comm., Inc.</u>, 244 F.3d 88, 92 (2d Cir. 2001); <u>Castrol, Inc. v. Quaker State Corp.</u>, 977 F.2d 57, 62 (2d Cir.1992); <u>Procter & Gamble Co. v. Chesebrough-Pond's Inc.</u>, 747 F.2d 114, 120 (2d Cir.1984).  Dyson easily meets each part of this familiar standard.

confusing.  The dustbin capacity of the Legacy and Fusion is well over that amount – about 42 ounces.

**B.     Dyson is Likely to Succeed on the Merits of its Claims.**

Given the proven, literal falsity of Maytag's "No Loss of Suction" claim, the likelihood that Dyson will succeed on its claims is high.  Moreover, the NAD, a highly-respected neutral arbiter of advertising disputes, has already determined that Maytag's advertising claim of No Loss of Suction is unsubstantiated.

**1.     The "No Loss of Suction" Claim Is Literally False.**

Maytag's advertised No Loss of Suction claim is literally false.  *See* Castrol, 977 F.2d at 62; see also McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991).  To establish that an advertisement is literally false, a plaintiff must show that a disputed advertisement is "false on its face or 'explicitly false.'"  Ciba, 348 F.Supp. 2d at 178.  As the NAD correctly concluded, the "'No Loss of Suction Claim'" is a broad claim that reasonably communicates to consumers a performance attribute that occurs over time and with repeated use of their vacuum cleaners."  (Attorney Aff., Ex. H at 33.)  The claim means that consumers will not experience a loss of suction during conditions of ordinary use and over time.  Even if the court were to conclude that there is some ambiguity in the period of time for which the claimed "No Loss of Suction" holds true, the necessary implication of the claim is that suction will remain constant and undiminished so long as the consumer uses the vacuum under ordinary conditions, and not drop off after some arbitrary, intermediate point.  Here, independent testing constitutes persuasive and reliable evidence demonstrating the falsity of Maytag's "No Loss of Suction" claim.  Maytag's Fusion and Legacy vacuums do in fact lose suction by about 35%.

The tiny footnote is not part of the claim, but rather a failed attempt to qualify or disclaim the "No Loss of Suction" claim.  It is so small that consumers do not see it prior to purchase.  This court and others have sensibly held that a literally false claim cannot be cured by means of a small-print footnote containing a disclaimer.  In JR Tobacco of America, Inc. v. Davidoff of

Geneva (CT), Inc., the court held that "[a]lthough disclaimers are preferred to 'blanket proscriptions of speech,' generally, a disclaimer is ineffective to cure a literally false statement." 957 F.Supp. 426, 437 (S.D.N.Y.,1997) (citing Tambrands, Inc. v. Warner-Lambert Company, 673 F.Supp. 1190, 1195 (S.D.N.Y.1987); see also Coca-Cola v. Tropicana, 690 F.2d 312, 318 (2d Cir.1982); George Washington Mint, Inc. v. The Washington Mint, Inc., 349 F.Supp. 255, 262 (S.D.N.Y.1972)). A footnote or disclaimer that "purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims." SmithKline, 906 F.Supp. at 182 (stating that such unacceptable disclaimers typically appear "in small size print near the bottom of the document and either contradict, clarify, or change the meaning of the main claim of the advertisement"); see also Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. The Procter & Gamble Company, 285 F.Supp.2d 389, 392 (S.D.N.Y. 2003) (stating that "The bottom line is that a statement, although literally true [in light of a footnote], can for all practical purposes, convey a false message.") These conclusions are totally reinforced by the consumer survey concluded by Dr. Mazis which overwhelmingly demonstrates that very few people read the tiny disclaimer on the Hoover Fusion package.

Even for the handful of consumers who actually read the disclaimer, the text of the footnote used by Maytag obfuscates the key point that the No Loss of Suction claim applies only for the first ten ounces of dirt – about 25% of the bin volume in recent tests by IBR – and declines by up to one-third thereafter. As proven by the consumer survey conducted by Dr. Mazis, most consumers who read the disclaimer do not know how much of the vacuum bin will be filled by ten ounces of dust. (Mazis Dec. ¶25.) Many would not understand that the footnote disclaimer implies that the vacuum will lose suction after the 10 ounce mark. In this regard, the

claim as used by Maytag is like the advertising at issue in <u>Johnson & Johnson-Merck</u>, where the

defendant-advertiser claimed that its heartburn medication provided 24-hour relief, but failed to

disclose clearly in the advertisement that the promised 24-hour relief did not begin until five

hours from the time the pill was ingested.  <u>Johnson & Johnson-Merck</u>, 285 F.Supp.2d at 390

(stating that the claim, "'One pill.  24 Hours.  Zero Heartburn.' simply does not equal 'One pill.

Wait 5 Hours.  Only then Zero Heartburn for the next 24 hours.'")  Similarly, Maytag's claim,

"No Loss of Suction," simply does not equal "No Loss of Suction until only 25% of the bin is

full.  After that, big drop in suction."

    Even if the footnote were of equal size and clarity to the main No Loss of Suction claim,

it would still be false.  The disclaimer itself refers explicitly to the ASTM F558 test, a

modification of which Maytag purports to rely on to support of its "No Loss of Suction" claim.

Under the "establishment claim" doctrine, when a defendant explicitly purports to rely on the

results of scientific tests or studies to establish the truth of  its claim, a plaintiff can prove the

falsity of that claim simply by showing that the tests relied on by the advertiser do not establish

the proposition for which they were cited.  <u>Castrol</u>, 977 F.2d at 62, 63; <u>Glaxo Warner-Lambert</u>

<u>OTC G.P. v. Johnson & Johnson Merck Consumer Pharm</u>. Co., 935 F.Supp. 327, 329 (S.D.N.Y.

1996). As the NAD found in its decision, the modified ASTM F558 test relied on by Maytag

does not establish the truth of Maytag's "No Loss of Suction" claim because the ASTM F558 as

modified by Maytag does not adequately correlate with conditions of ordinary consumer use.

(Attorney Aff., Ex. H at 34.)

    Nor will the claim be true if and when modified by Maytag at some point in the future in

the manner promised by the July 2006 letter written by Maytag's counsel.  (Attorney Aff., Ex.

L.)  Maytag has said that it intends to add to the No Loss of Suction claim in two ways: by

adding a statement in bold print immediately beneath the No Loss of Suction claim that "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability" and by adding a sentence to the disclaimer stating that "[n]o testing has established a correlation between suction performance and carpet cleaning ability in the home.  Household results may vary."  (Id.)  This new language already appears on the Fusion website.  (Attorney Aff., Ex. G.)  As the NAD found in responding to Dyson's compliance challenge, the proposed modification does nothing to further qualify or limit the scope of the broad No Loss of Suction claim, other than to confuse consumers by injecting tangential concepts that the claim is not related to carpet-cleaning ability.

Overall, as shown above, Dyson has carried its burden of showing the literal falsity of Maytag's claims.  Nothing in the footnoted disclaimer cures the literal falsity, as proven by Dr. Mazis's consumer survey.  The survey shows that the vast majority of consumers read only the headline No Loss of Suction claim.  Few, if any, see, much less read the tiny, footnoted disclaimer.  Fewer still understand the disclaimer even when they read it.

Because there is persuasive evidence that the challenged advertisement is literally false, this Court, like others in this Circuit, should grant a preliminary injunction.  See, e.g., S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 239-40 (2d Cir. 2001) (upholding injunction where advertisements depicting leaking food storage bags were literally false in light of evidence regarding actual leakage rates); Castrol, 977 F.2d at 62 (affirming grant of preliminary injunction against advertisements claiming superior protection for engine oil where credible expert testimony established that engine oil did not provide better protection); Ciba, 348 F.Supp.2d at 185-86 (granting injunction where plaintiff established falsity of defendant's claim regarding permeability of contact lens); SmithKline, 906 F.Supp. at 186 (injunction appropriate where competitor established that manufacturer made literally false claims regarding its over-

the-counter heartburn medication).[11]

**2.    Dyson Will Suffer Irreparable Harm if Maytag's False Packaging and Advertisements Continue.**

Where, as here, an advertisement is false on its face, a plaintiff in the Second Circuit need not adduce evidence of consumer deception, because such deception is presumed.  Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312 (2d Cir. 1982); American Home Prods. Corp. v. Johnson & Johnson, 577 F.2d 160, 165 (2d Cir. 1978).[12]  The showing of injury to plaintiff is satisfied by establishing that the parties are competitors in a relevant market, and there is a "logical causal connection between the alleged false advertising and plaintiff's own sales position."  Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190-91 (2d Cir. 1980); McNeil-PPC, Inc. v. Pfizer Inc., 351 F.Supp.2d 226, 247 (S.D.N.Y 2005).

In the Second Circuit, to be entitled to injunctive relief, a false advertising plaintiff need submit "only proof providing a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising."  See, e.g., Johnson & Johnson, 631 F.2d at 190.  Proof of actual lost sales or goodwill is not necessary where, as here, the products of plaintiff and defendant compete in the relevant market.  Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 316 (2d Cir. 1982), abrogated on other grounds by Fed.R.Civ.P. 52(a);  Zeneca Inc. v. Eli Lilly & Co., No. 99 Civ. 1452 (JGK), 1999 WL 509471 at *36 (S.D.N.Y. July 19, 1999).

The legal standard for a showing of harm in a preliminary injunction proceeding under the Lanham Act is whether it is likely that the challenged advertising has caused or will cause a

---

[11] The same operative facts also establish a likelihood of success on the merits of Dyson's claims under New York General Business Law §§ 349 and 350.  Ciba, 348 F.Supp.2d at 178, note 6; Princeton Graphics Operating, L.P., v. NEC Home Electronics (U.S.A.), Inc., 732 F.Supp. 1258, 1266 (S.D.N.Y. 1990); SQP, Inc. v. Sirrom Sales, Inc., 130 F.Supp.2d 364, 366 (N.D.N.Y. 2001).

[12] The element of materiality is also presumed where a challenged advertisement is literally false.  Ciba, 348 F.Supp.2d at 180; Telebrands Corp. v. E. Mishan & Sons, No. 97 Civ. 1414 (RPP), 1997 WL 232595, at *22 (S.D.N.Y. May 7, 1997).

loss of sales.  See Johnson & Johnson, 631 F.2d at 190.  As Johnson & Johnson explains,

irreparable injury is established where "(i) the parties are competitors in a relevant market and

(ii) there is "a logical causal connection between the alleged false advertising and [plaintiff's]

own sales position."  Johnson & Johnson, 631 F.2d at 190-91; McNeil-PPC, Inc. v. Pfizer Inc.,

351 F.Supp.2d 226, 247 (S.D.N.Y 2005).  Dyson need not come forward with specific evidence

that Maytag's ads have actually resulted in identifiable loss of sales to Dyson.  Courts have long

recognized the great difficulty of requiring such proof at the preliminary injunction stage in false

advertising matters.  For this reason, numerous courts have held that a showing of the mere

likelihood of competitive injury, rather than concrete proof of actual sales diversion, is sufficient

to warrant a § 43(a) injunction.  Johnson & Johnson, 631 F.2d at 191; American Home Products

Corp. v. Johnson & Johnson, 436 F.Supp. 785 (S.D.N.Y. 1977), aff'd 577 F.2d at 169; Quabaug

Rubber Co., v. Fabiano Shoe Co., Inc., 567 F.2d 154 (1st Cir. 1977); Potato Chip Institute v.

General Mills, Inc., 333 F.Supp. 173 (D.C. Neb. 1971); Parkway Baking Co. v. Friehofer Baking

Co., 255 F.2d 641 (3rd Cir. 1958); American Brands, Inc. v. R.J. Reynolds Tobacco Co., 413

F.Supp. 1352 (S.D.N.Y. 1976); Ames Publishing Co. v. Walker-Davis Publications, Inc., 372

F.Supp. 1 (E.D. Pa. 1974); Mutation Mink Breeders Assn. v. Lou Nierenberg Corp. 23 F.R.D.

155 (S.D.N.Y. 1959).

     Maytag's continued use of the No Loss of Suction claim, if not enjoined, is highly likely

to cause severe and irreparable injury to Dyson for at least the following reasons.

     First, Maytag and Dyson are head-to-head competitors and market leaders in the upright

vacuum cleaner market.  Together, the two companies have a 40.5 % share of the market for

household vacuum cleaners.  (Declaration of Gordon Thom ("Thom Dec."), ¶ 9.)  A loss in sales

occasioned by false advertising of one is highly likely to result in at least some gain by the other.

(Thom Dec., ¶¶ 13-18.)

Second, the very nature of Maytag's advertising claim suggests the high potential for irreparable injury to Dyson.  The "No Loss of Suction" claim has historically been identified with Dyson since the brand's first launch in the United States.  (Id.)  There can be little doubt that Maytag has commenced using precisely the same claim -- albeit falsely -- in predatory fashion to undermine Dyson's uniqueness in the market and to take sales from Dyson for its own benefit.  Maytag's false No Loss of Suction claim, phrased almost identically to the Dyson claim, will likely result in actual and imminent loss to Dyson of not only sales but goodwill and market share losses that cannot be precisely quantified or repaired at a later date.  Johnson & Johnson-Merck, 285 F.Supp.2d at 394.

Third, Maytag's own Vice President of Marketing has actually admitted that Maytag will continue to use the claim in advertising in order to "hit Dyson where they claim their superiority."  (Attorney Aff., Ex. K.)  He has further said that Maytag will continue to use the claim, even though it does not "believe in" No Loss of Suction.  (Id.)  This constitutes strong evidence of Maytag's intent to cause sales loss specifically to Dyson, as opposed to competitors more generally.

Finally, Maytag is using the false claim during the launch of the Legacy.  As the court found in Johnson & Johnson-Merck, the inception of a new product launch is "a time when the buying public is particularly attentive and educable."  Id. at 393.  "Correcting the false impressions made on consumers [during this time] will therefore be difficult."  Id. at 394.

### C.    The Equities Weigh Decidedly in Favor of Injunctive Relief.

The balance of equities falls squarely in Dyson's favor because, by engaging in false, deceptive, and misleading advertisements, Maytag is engaging in illegal and wrongful conduct to

the detriment of Dyson and the general consuming public as a whole. Maytag has no cognizable rights in the dissemination of deceptive falsehoods. <u>Zeneca</u>, 1999 WL 509471 at *41 (false advertising defendant "can assert no equitable interest in the perpetuation of an advertising campaign that is literally false") (citation omitted). Indeed, Maytag has stated that it "does not believe in" the "No Loss of Suction" claim but is continuing to use it as a way to "hit Dyson," thus giving lie to improper motivations for continuing to use the claim in advertising.

Furthermore, Maytag has blatantly ignored the NAD's recommendation – made both in April and August of 2006 – that Maytag discontinue its "No Loss of Suction" claim, even after Maytag indicated in a written statement that it would abide by the NAD's decision. Issuing an injunction here would reinforce the important public policies served by the NAD's self-regulatory forum.

In the face of Maytag's duplicitous behavior, Dyson is left with no choice but to seek emergency judicial intervention in order to vindicate its rights. Granting the relief requested by Dyson will advance the interests that the federal and state false advertising statutes specifically were designed to protect.

        **D.**        **The Relief Requested is Appropriate and Necessary.**

Among other preliminary remedies that Dyson requests be entered, Dyson respectfully requests that Maytag be required to affix stickers to Fusion and Legacy product packages in the marketplace and chain of distribution to cover over the false No Loss of Suction claim. Where the vacuums themselves are displayed outside of the cartons at point of purchase, Dyson requests that the No Loss of Suction claim on the units be covered with a sticker as well. There is ample precedent for an order requiring such relief at the preliminary injunction stage. <u>Grondin v. Rossington</u>, 690 F.Supp. 200, 211 (S.D.N.Y. 1988); <u>Ladas v. Potpourri Press</u>, 846 F.Supp. 221,

224 (E.D.N.Y. 1994); <u>Creative Technology v. SRT, Inc.</u>, 1993 WL 603292 at *3 (N.D. Cal. 1993).

## IV.     CONCLUSION

For the foregoing reasons, the Court should grant the relief sought by Dyson in this motion for a preliminary injunction.

Dated:     New York, New York                                   Respectfully submitted,
               September 7, 2006

                                                                      _s/ Steven F. Reich_____
                                                                      Steven F. Reich, Esq. (SFR0723)
                                                                      Christopher A. Cole, Esq.
                                                                      Gregory W. Fortsch, Esq.
                                                                      MANATT PHELPS & PHILLIPS, LLP
                                                                      7 Times Square
                                                                      New York, New York 10036
                                                                      Telephone:  (212) 790-4500
                                                                      Facsimile:  (212) 790-4545
                                                                      SReich@manatt.com
                                                                      CCole@manatt.com
                                                                      GFortsch@manatt.com

                                                                      *Attorneys for Plaintiff Dyson, Inc.*

30190700.3