# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

DYSON, INC.,

             Plaintiff,

      v.

MAYTAG CORPORATION,

             Defendant.

Civil Action No. 06-CV-6576(DC)

## AFFIDAVIT OF GREGORY W. FORTSCH

DISTRICT OF COLUMBIA

                  :ss:

WASHINGTON, D.C.

      Gregory W. Fortsch, being duly sworn, deposes and says:

1.      I am an attorney with Manatt, Phelps & Phillips, LLP, counsel to Plaintiff Dyson, Inc. ("Dyson") in the above-captioned action.  I execute this affidavit in support of Dyson's Motion for a Preliminary Injunction which is filed concurrently herewith.

2.      True and correct photographs of the Hoover Fusion packaging containing the "No Loss of Suction" claim are attached as Exhibit A.

3.      True and correct photographs of the Maytag Legacy packaging containing the "No Loss of Suction" claim are attached as Exhibit B.

4.      A true and correct photograph of the footnote to the "No Loss of Suction" claim from the Hoover Fusion packaging is attached as Exhibit C.

5.      A true and correct photograph of the footnote to the "No Loss of Suction" claim from the Maytag Legacy packaging is attached as Exhibit D.

6.      A true and correct copy of a demonstrative exhibit regarding Maytag Legacy packaging containing the "No Loss of Suction" claim is attached as Exhibit E.

7.      A true and correct photograph of the Maytag Legacy vacuum containing the "No Loss of Suction Claim" is attached as Exhibit F.

8.      A true and correct copy of the Hoover Fusion website (last visited August 23, 2006) advertising containing the "No Loss of Suction" claim is attached as Exhibit G.

9.      A true and correct copy of the April 5, 2006 decision published by the National Advertising Division of the Council of Better Business Bureaus ("NAD") is attached as Exhibit H.

10.      True and correct copies of two letters which constitute Dyson's compliance challenge to Maytag's No Loss of Suction claims before the NAD dated May 10, 2006 and May 16, 2006 are attached as Exhibit I.

11.      A true and correct copy of the August 2, 2006 decision published by the NAD regarding Dyson's compliance challenge is attached as Exhibit J.

12.      A true and correct copy an article entitled "Hoover to Dyson: It's On Now" from page 14 of the June 26, 2006 issue of Advertising Age magazine is attached as Exhibit K.

13.      A true and correct copy of a July 18, 2006 letter from Maytag's outside counsel, Stephen Durchslag of Winston & Strawn, is attached as Exhibit L.

14.      A true and correct copy of the ASTM F558-03 Standard Test Method is attached as Exhibit M.

15.      A true and correct copy of the cover and page 6 of the Hoover Fusion/Maytag Legacy Owner's Manual is attached as Exhibit N.

Further affiant sayeth not.

_____
Gregory W. Portsch, Esq.
MANATT, PHELPS & PHILLIPS, LLP
700 12th Street, NW
Washington, DC 20005
Telephone: (202) 585-6568
Facsimile: (202) 637-1544
gfortsch@manatt.com

Sworn to before me this 6th day
of September, 2006.

_____
Notary Public

L. Ann Jones
Notary Public, District of Columbia
My Commission Expires 09-30-2008

30190704.1

Exhibit A



HOOVER®

FUSION™
Cyclonic Filtration System

Outcleans Dyson by 13%
(Models DC07, DC14 and DC15)*

NO LOSS OF SUCTION*

**Adjustable Handle Height**
Telescoping handle adjusts to varying height for convenient use and storage

**Storage: On/Off Control**

**E-Z Empty™ Dirt Cup**

**32' Cleaning Reach**

**Cyclonic Filtration System**

**Pet Hair Cleaning Tool**

**No Filters To Replace**

**On-Board Cleaning Tools**

**Extension Wands**

**15" Widepath Nozzle**

**E-Z Access™ Belt Change**



Exhibit B





# MAYTAG

## *Legacy* Series
### *Cyclonic Filtration*

**NO LOSS OF SUCTION***

**Fingertip On/Off Control**
No pedals to maneuver.
Turn off and on with
the flip of a finger.

**Adjustable Handle Height**
Varying heights
for convenient use
and storage.

**38' Total Cleaning Reach**
Extra-long 24' power cord
and 14' of stretch hose and
extension wands allow you
to vacuum several rooms
without stopping.

**E-Z Empty™ Dirt Cup**
No bags. No mess.
Empties from the bottom.

**Pet Hair Cleaning Tool**
Picks up pet hair from
stairs and upholstery.

**Cyclonic Filtration System**
Helps remove common allergens
from your home.

**No Filters To Replace**
Lasts the lifetime of the vacuum.
Easy to remove and clean.

**Onboard Cleaning Tools**
Clean every corner of
the house with these
convenient tools.
• Pet Hair Cleaning Tool
• Three Extension Wands
• Crevice Tool
• Dusting Brush

**Extension Wands**
Three extension wands
provide more than 14' of
reach with the stretch hose
for cleaning ceiling corners
and around high windows.

**E-Z Access™ Belt Change**

**15" Widepath™ Nozzle**

Exhibit C

- Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous mass.

Exhibit D

c **UL** us
LISTED

"Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using the ASTM International F558 test method and a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material.

Exhibit E

# Maytag's Disclaimer: Too Small to Make an Impact



**Front Disclaimer**
24.5 inches from Claim
Occupies 0.701% of Box

**Back Disclaimer**
26.5 inches from Claim
Occupies 0.543% of Box

Exhibit F



Exhibit G





□ **Home** □ **Products** □ **Customer Service** □ **Innovations** □ **About Us** □ **Shop**

| UPRIGHTS ▼ | DEEP CLEANERS ▼ | HARD FLOOR CLEANERS ▼ | CANISTERS ▼ | SPECIALTY ▼ | CENTRAL VAC. ▼ | COMMERCIAL ▼ | CLEANIN |

**BAGLESS FILTRATION UPRIGHTS:**

» Elite™ Rewind™ Upright Bagless

» Fold Away™ Widepath™
       U5172900
       U5175900

» Fusion™ Cyclonic Bagless Upright

» Hoover EmPower™
       U5262910
       U5265900
       U5268970
       U5269900

» Hoover Z™ Bagless Upright
       U9125900
       U9145900

» Savvy™
       U8174900
       U8181900

» Self Propelled WindTunnel™ Bagless
       U6630900
       U6634900

» WindTunnel™ 2 Bagless
       U8341900
       U8351900

» WindTunnel™ 2 Complete Bagless

» WindTunnel™ 2 Surface Command™ Bagless

» WindTunnel™ 2 Bagless Upright

» WindTunnel™ Bagless Upright
       U5753900
       U5760900

[ PREV. ]   [ NEXT ]



Model number: U5180900

# Fusion™ Cyclonic Bagless Upright

▸ COM
▸ USER
▸ QUIC
▸ FAQ

• Broc

- Cyclonic technology offers powerful cleaning with no loss of suction* *Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability**
- Super-powerful cyclonic air movement - spins dirt and dust away
- No filters to replace - permanent washable filters last the life of your vacuum
- Adjustable Handle height - telescoping handle adjusts to varying heights for convenient use and storage
- 32' Cleaning Reach - with a 24' power cord and a 8' stretch hose, you can vacuum several rooms without having to reposition the power plug
- On-board tool set included - everything you need to reach every corner of the house - including a pet hair cleaning tool, two 14" extension wands, crevice tool and dusting brush for delicate surfaces
- Powered hand tool - brings power right to the spot you're cleaning - like stairs and upholstery
- E-Z Access™ Belt Change
- No filters to replace - no need to buy or replace filters, ever. Simply remove, clean and use again
- Extension wands - two extension wands provide more than 10' of reach with the stretch hose for cleaning ceiling corners and around high windows
- 15" Widepath™ Nozzle - one of the widest cleaning paths available, so you'll finish the job faster
- Available exclusively at Wal-Mart
- *** Suction stays constant for up to 10 ounces of dirt using a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material. No testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary.

» Copyright Notice   » Contact Us          » Product Safety Recall   » Site Index   » Search   » Service / Parts Locator          » Privacy Policy   » Te

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.


GOO

Exhibit H



**NATIONAL ADVERTISING DIVISION®**

70 West 36th Street, New York, NY 10018



NARC PARTNERS

AAAA

AAF

ANA

BBB

<u>BY MESSENGER</u>

Direct Line: (212) 705-0119

April 6, 2006

Jeffrey S. Edelstein, Esq.
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10036

**Re: Advertising for WindTunnel and Fusion Upright Vacuum Cleaners**

Dear Mr. Edelstein:

I am writing to advise you that NAD has concluded the investigation based on your challenge. The final case decision is enclosed. NAD's announcement to the press will follow by regular mail or by fax. Please note that NAD's findings may not be used for promotional purposes or to indicate impropriety by any party.

As stated in *NAD/NARB Procedures* at § 3.1(B), if Dyson, Inc. takes issue with NAD's decision, you have a ten-day period (ending April 20, 2006) within which you may request that a panel of the National Advertising Review Board review the decision. The granting of a panel review is at the discretion of the Chairman of the NARB. Your request for a panel review should be addressed to the Chairman, NARB, 70 West 36th Street, 13th Floor, New York, New York, 10018, and copies must be sent to all the parties. The entire appeal process is described in the *Procedures* at §§ 3.1 through 3.8. Please review it carefully.

We greatly appreciate your contribution to the self-regulation program and, in particular, to the resolution of this inquiry. If you have any questions, please do not hesitate to call.

Sincerely,

Jennifer Fried
NAD Attorney

cc:    Stephen P. Durchslag, Esq.

Enclosure

phone: 866.334.6272  •  fax: 212.705-0130  •  www.nadreview.org

The National Advertising Division of the Council of Better Business Bureaus (CBBB). Policy is established by the National Advertising Review Council (NARC).

*Case #4467 (04/05/06)*
**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**

| | |
|---|---|
| *Advertising Agency:* | *Undisclosed* |
| *Challenger:* | *Dyson, Inc.* |
| *Product Type:* | *Household Products* |
| *Issues:* | *Comparative Performance Claims* |
| *Disposition:* | *Modified* |

Advertising claims by The Hoover Company for its WindTunnel and Fusion Upright vacuum cleaners were challenged by Dyson, Inc., the manufacturer of Dyson vacuums. The claims at issue appeared in a wide variety of media, including television commercials, print ads, radio spots, websites, brochures, and product packaging.

The challenged television commercial featured the following dialogue.

Person holding a Dyson vacuum cleaner: *"My vacuum is purple. They say it doesn't loose suction."*

Second person with a Dyson vacuum cleaner: *"My vacuum makes me look good."*

Third person with a Dyson vacuum cleaner: *"My vacuum was in a fashion magazine."*

Person standing next to a Hoover vacuum: *"My vacuum's a WindTunnel and it cleans better than Dyson."*

Voice-over: *"The self-propelled WindTunnel by Hoover cleans carpet 56% better than Dyson. It's proven by the only recognized test representing real-life conditions in American homes. After all, do you want people to look at your vacuum or your clean home?"; "Clean to the highest power."*

The following are representative of the other claims that served as the basis of the instant challenge:

*"Dyson thinks things should work properly. We couldn't agree more. That's why our self-propelled WindTunnel picks up 56% more dirt than Dyson."*

*"[WindTunnel] Picks up more dirt than any other brand."*

*"The Hoover Self-Propelled WindTunnel Vacuum has been proven to extract more embedded dirt from horizontal floor surfaces than any other upright."*

*"The Hoover® Self-Propelled WindTunnel picks up 56% more dirt than Dyson."*

*"The self-propelled WindTunnel by Hoover cleans carpet 56% better than Dyson."*

*"WindTunnel Technology ... They [dual air ducts] not only lift the dirt but trap it so it won't fall back into your carpet."* [Accompanied by close up of cyclone logo]

*"[WINDTUNNEL] PICKS UP MORE DIRT THAN ANY OTHER UPRIGHT"*

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 2

"[WINDTUNNEL]HEPA FILTER WITH ALLERGEN FILTRATION. Long-lasting 3-year HEPA Filter with allergen filtration traps 100% of dust mites, ragweed and common pollen."]

"[WindTunnel] TWIN CHAMBER BAGLESS SYSTEM HELPS MAINTAIN MAXIMUM PERFORMANCE"

"Patented WindTunnel Technology picks up more dirt than any other brand, including Dyson. Some vacuums pick up dirt, only to scatter it back down into your carpet."

"These results are based on ASTM International Test F608, the only recognized industry standard test representing real-life conditions found in American homes."

"[WindTunnel] 'No-Touch' Filter Cleaning System"

"[Fusion] Incredible cleaning power – every time you use it"

[WindTunnel] "PICKS UP MORE DIRT THAN ANY OTHER UPRIGHT … Period!"

[WindTunnel] "PICKS UP OVER 70% MORE DIRT!" caption over chart comparing "All Hoover Self Propelled Uprights", "Oreck Model XL21-600 Upright", and "Dyson Model DC-07 Upright".

[WindTunnel and Fusion] "HEPA FILTER WITH ALLERGEN FILTRATION. Long lasting 3-year HEPA filter with allergen filtration traps 100% of dust mites, ragweed and common pollen."

[WindTunnel] "TWIN CHAMBER BAGLESS SYSTEM HELPS MAINTAIN MAXIMUM PERFORMANCE"

[Fusion] "Cyclonic technology offers powerful cleaning with no loss of suction."

[Fusion] "NO LOSS OF SUCTION"

"The Hoover® Fusion Cyclonic Bagless Upright Vacuum Outcleans Dyson by 13%"

[Fusion] "E-Z Empty Dirt Cup. No bags. No mess! Simply remove the cup, hold it over the trash and push the button to dump contents from the bottom."

**Challenger's Position**

*I. Background*

THE HOOVER COMPANY
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 3

The challenger explained that for many years, vacuums collected dirt and dust either by using a bag, or a bin combined with a large central filter. The challenger described both of these designs as "barrier filtration," and explained that the chief disadvantage of this method is that, while large dust particles settle to the bottom of the bag or bin, smaller dust particles clog the small holes in the bag or the filter, thereby creating a barrier to the airflow and losing suction power.

In contrast, the challenger explained, its DC07, DC14, and DC17 Dyson vacuums utilize a "root cyclone" layout, which uses centrifugal force to separate dirt particles of varying sizes. The significance of Dyson's mechanism of action, argued the challenger, is that unlike vacuums utilizing bags or bins, the challenger's machines never lose suction power, and therefore maintain a constant and continuous level of performance.

*II. Implied Claims that the Challenger's Vacuum is Ineffective and Does Not Clean Properly*

The challenger contended that the challenged advertising implies that the challenger's Dyson vacuums are ineffective and do not clean properly. Specifically, the challenger objected to a television commercial for the WindTunnel (and a rotating website banner) which purportedly implies that consumers choose Dyson vacuums solely for their looks and style. The challenger argued that these advertisements convey the false and misleading message that the challenger's vacuum cleaners are ineffective.[1]

The challenger argued that its vacuums are highly effective. In addition to the above-described "root cyclone" system, the challenger noted its vacuums' advanced features including an "automatic brush control system" which protects rug fringes and the drive belt, a foot-operated on-off switch for the brush roll, automatic carpet-height adjustment, a reversible wand, a clear bin, on-board tools, and HEPA filtration.

   *a) Consumer Perception Survey*

The challenger submitted a consumer perception survey purporting to show that the commercial conveys the message that the advertiser's vacuums clean better than the challenger's vacuums. The survey was conducted online and was completed by 265 adults throughout the United States, all of whom were actual or potential purchasers of vacuum cleaners. After watching the commercial and being asked open-ended questions about the commercial's overall message, 250 respondents (94%) knew the advertised brand was Hoover, and were asked questions about any messages communicated about the Hoover. In addition, 206 respondents (78%) were aware that the other brand in the commercial was Dyson, and were asked questions about any messages communicated about the Dyson vacuum. The challenger further argued that 77% took away superiority messages relating to Hoover's superiority to Dyson, and 46% took away a variety of disparaging messages about the Dyson vacuum.

---

[1] According to the challenger, the claim that Dyson vacuum cleaners are ineffective is conveyed in the challenged television commercial as well as in WindTunnel print advertisements which claim that Dyson vacuums do not clean properly, as well as the hangtag stating that "some vacuums...pick up dirt, only to scatter it back down into your carpet."

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 4

Contrary to the disparaging messages conveyed by this commercial, the challenger argued, the challenger's vacuums are proven to be more effective than the advertiser's. Specifically, the challenger argued that its vacuum has constant suction power, that it outperforms the WindTunnel on a variety of floor surfaces, and that it has low dust emissions.

*b) The Challenger's Dyson Vacuum is Proven To Be Effective*

In support of the argument that its vacuum cleaner outperforms the WindTunnel on a variety of floor surfaces, the challenger noted that it has performed numerous efficacy tests on its vacuum cleaners using industry standards established by both ASTM International ("ASTM") and the International Electrotechnical Committee ("IEC").[2] The challenger argued that these tests demonstrate that Dyson vacuum cleaners outperform Hoover vacuums with respect to (i) suction power; (ii) performance on a variety of floor surfaces; and (iii) dirt emissions.

*(i) Suction Power Testing*

The challenger maintained that its Dyson vacuum cleaners have constant suction power. The challenger defines suction power as "a combination of suction pressure generated by the vacuum cleaner and airflow" as defined in ASTM F558 and IEC 60312. The challenger noted that a decline in suction power may occur when dust collects inside a machine, and that such a dust-loaded condition is highly consumer relevant, as many vacuum cleaners are used when partially loaded with dust.

The challenger noted that unlike "bag" or "bin" vacuums, Dyson's Root Cyclone system utilizes a series of eight cyclones to filter dirt and dust. Thus, because dust does not settle on any part of the vacuum required to maintain airflow, it argued that Dyson's vacuums experience no clogging or resulting loss of suction.

As substantiation, the challenger submitted testing conducted by Intertek Testing Services ("ITS"), an independent industrial testing and certification company. ITS measured the maximum suction power of the DC07, DC14, and the DC 15 Dyson vacuums—as well as that of the Hoover WindTunnel, the Eureka Boss Smartvac, the Kenmore Progressive, and the Dirt Devil Platinum Force Vision Upright. In each case, maximum suction power was measured pursuant to either IEC 60312 or ASTM F558. The challenger explained that both standards measure maximum suction power in a laboratory setting, but that IEC also measures suction as the vacuum cleaner becomes loaded with dust. The challenger noted that this test showed that the challenger's DC07 (the model featured in Hoover's advertisements) maintained a constant suction power of 268 airwatts throughout the test, which was by far the highest maximum suction power of any upright vacuum tested. The challenger further noted that the suction power of all the tested competitors rapidly declined from their "base" suction power, and that Dyson was the only vacuum not to lose suction as the vacuum filled with dust.

---

[2] The challenger noted that ASTM measures cleaning efficacy (F608) and suction power (F558) using two separate standards, but that the IEC standard addresses both cleaning efficacy and suction power in a single standard (60312).

THE HOOVER COMPANY
WindTunnel and Fusion Upright Vacuum Cleaners
Page: 5

*(ii) Cleaning on a Variety of Floor Surfaces Testing*

Using both ASTM and IEC standards for vacuum pick-up efficiency, the challenger tested several of its own Dyson vacuums against several WindTunnels, along with a number of other upright vacuum cleaner models. Specifically, the challenger performed two types of tests: (i) ASTM-based tests conducted on plush and "level loop" carpeting, and (ii) IEC-based tests conducted on hard-wood floors with crevices and on Wilton carpet.[3] With respect to the results of the ASTM-based tests, the challenger argued that while its DC07model (which is featured in various Hoover advertisements) does not perform as well as the premiere WindTunnel model on plush carpet, it performs "much better on the level loop carpet" (72.7% for Dyson versus 88.2% for WindTunnel on pick-up). These test results further showed that the challenger's DC14 model performed better on level-loop carpet (77.9% for Dyson versus 88.2% for WindTunnel on pick-up) than it did on plush carpet (56.3% for Dyson versus 74.4% for WindTunnel on pick-up).

With respect to the IEC-based tests, the challenger noted that its DC07 was shown to outperform all competitors (including the WindTunnel) on hard wood floors, and that it offers performance comparable to the WindTunnel on Wilton carpeting. The challenger noted that when all of the IEC-based test results are combined, the DC07's pick-up results are vastly superior to the WindTunnel's—82% vs 51%.

The challenger further argued that when results from its ASTM-based tests and its IEC-based tests are "averaged across all four floor surfaces," (to represent actual consumer use), the Dyson outperforms the WindTunnel. The DC14 has an average 77.9% pick-up efficacy, the DC07 has an average 70.9% pick-up; the WindTunnel has an average pick-up efficacy of only 66.3%.

*(iii) Dirt Emissions Testing*

The challenger also argued that its Dyson vacuum has low dust emissions. In support of this argument, the challenger submitted dust emission testing[4] purporting to show that the DC07 and the DC14 only emit 0.0001% dust back into the air, which means that the filtration methods in these models are 99.9999% effective. In contrast, the challenger noted that the WindTunnel emits 0.0170% of the collected dust back into the air, thus releasing 170 times more dust into the air than the challenger's machines.

*c) Disparaging Nature of the Advertising*

The challenger contended that the advertisements at issue are disparaging, and therefore violate NAD precedent as well as industry guidelines.[5] The challenger argued that even if the

---

[3] In its first submission to NAD, the challenger included IEC testing that was performed on hard wood floors with crevices and Wilton carpeting only. In its second submission to NAD, the challenger included "new" testing in which vacuum cleaners were tested on all five surfaces as specified by IEC.

[4] The dust emissions testing was based on IEC 60312.

[5] *The Clorox Company/Clorox Toilet Wand System*, NAD Case # 4307 (April, 2005); *McNeil Consumer Healthcare/St. Joseph Adult Low-Strength Aspirin* NAD Case # 3871 (February, 2002). The challenger also cited the Better Business Bureau's *Advertising Review Handbook and Guidelines*.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 6

advertiser's superiority claims were true, the advertiser would not have license to falsely claim that the challenger's vacuums do not clean properly, or that the only reason consumers purchase these vacuums is for their looks and style. The challenger further added, again citing NAD precedent[6] that the presence of humor in an advertisement does not relieve an advertiser from the obligation to support all reasonable interpretations of its claims.

### III. Hoover's Implied Claim that The Dyson Vacuum Looses Suction

The challenger also took issue with what it characterized as the implied claim that the challenger's Dyson vacuum loses suction. The challenger noted the commercial at issue in this proceeding in which an actor sarcastically says, "My vacuum is purple. They say it doesn't lose suction." The challenger argued that the sarcasm in her voice indicates that she means the opposite of what she is saying—that the challenger's vacuum does in fact lose suction. Indeed, the challenger noted, the above-described consumer perception survey indicated that 23% of respondents took away such a disparaging message from this line alone.

Here again, the challenger pointed to the above-described testing (conducted by ITS) to show that its own vacuum cleaners maintain constant suction power throughout the test—while the suction power of all tested competitors rapidly declined. The challenger also noted that according to the only recognized industry standard designed to measure suction power under dust-loaded conditions, its Dyson machines are the only vacuum cleaners that do not lose suction as the vacuum fills with dust. Accordingly, the challenger argued that the claim that Dyson vacuums lose suction is false and misleading.

### IV. The Advertiser's Cleaning Claims

#### (a) The Advertiser's Claim that the WindTunnel Cleans Better than Other Vacuums

The challenger objected to the advertiser's claim that the WindTunnel cleans better than other vacuum cleaners. Specifically, the challenger took issue with the advertiser's claim in Sears brochures that the WindTunnel "[o]utcleans all competitive bagless cleaners," in addition to the advertiser's tagline (in print advertisements, on television commercials, and on WindTunnel hangtags) that WindTunnel vacuums "[c]lean to the highest power." The challenger characterizes this claim as a broad cleaning superiority claim.

The challenger explained that cleaning involves a combination of pick-up and suction power with respect to all surfaces where consumers may reasonably use a vacuum cleaner. Among these surfaces, the challenger noted, were carpeted and hard floors, crevices, curtains, upholstery, stairs, and automobile interiors. The challenger noted, however, that the advertiser relies primarily on the results of testing conducted pursuant to ASTM F608 (*Standard Test Method for Evaluation of Carpet Embedded Dirt Removal Effectiveness of Household/Commercial Vacuum Cleaners*), which only measures pick-up on four types of carpeting. In addition, the challenger noted, the ASTM test does not measure suction power. For these reasons, the challenger argued

---

[6] *Sanderson Farms/Sanderson Farms Chicken*, NAD Case # 4289 (March, 2005)

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 7

that the advertiser's ASTM testing is insufficient to support the advertiser's broad superior cleaning claims.

### (i) ASTM vs IEC Tests

The challenger took issue with the advertiser's claim that ASTM F608 is the *only* standard for measuring the cleaning efficacy of upright vacuum cleaners. In reality, the challenger contended, there are *two* equally accepted standards by which cleaning efficiency of upright vacuum cleaners is measured. In addition to the ASTM F608, the challenger noted, the industry also relies upon IEC 60312 ("Vacuum cleaners for household use—Methods of measuring the performance"). The challenger argued that NAD has accepted both of these testing standards in prior cases.

The challenger suspected that the advertiser relied *only* upon ASTM F608 (rather than the IEC 60312) because the advertiser's vacuum cleaners are designed primarily for cleaning *carpets*— not other surfaces. To this end, the challenger argued, the advertiser's vacuums are equipped with stiffer bristle bars that beat carpeted surfaces harder than the challenger's more gentle vacuum cleaners. The challenger further argued that this difference in design, while giving the advertiser an advantage with respect to ASTM testing, results in greater wear to consumers' carpeting. As evidence, the challenger submitted testing purportedly showing that the WindTunnel tears three times as many carpet fibers out of carpets as compared to the challenger's DC07 vacuum cleaner.

Moreover, the challenger argued, the ASTM standard in no way reflects a vacuum cleaner's performance on the wide variety of surfaces found in today's homes. Specifically, the challenger noted that according to the NPD Households Floor Covering Reports, only 37.8% of flooring sold in 2005 in the U.S. is carpet; the remaining 62.2% is hard floor. In addition, the challenger contended that vacuums are frequently used to clean a variety of non-floor surfaces.

In contrast to the ASTM standard, the challenger noted, IEC tests vacuums on a range of surfaces and debris types, and also tests for suction power. The challenger noted that the IEC standard was developed by the industry over the course of many years to evaluate the performance of vacuum cleaners under consumer relevant circumstances. The "Scope" section of the IEC standard states: "This International Standard is applicable to vacuum cleaners for household use in or under conditions similar to those in households." The challenger further argued that the advertiser's decision to ignore the IEC test standard is troubling, given the advertiser's participation in IEC committees and its acknowledgment (on product packaging) of the importance of a vacuum's ability to clean surfaces other than carpet. One packaging panel clearly states that other "performance factors" relevant to a vacuum's "cleaning performance" include "hose power,…surface litter cleaning, hard floor cleaning, edge cleaning, cleaning width and air filtration." The challenger noted that these are precisely the factors taken into account by the IEC test and ignored by the ASTM standard.

Finally, the challenger took issue with a consumer survey submitted by the advertiser. This survey, conducted by The Good Housekeeping Institute, was submitted to show that "cleaning

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
**Page: 8**

ability on carpets" is the most important attribute to consumers who are considering purchasing vacuum cleaners. The challenger raised several questions about the reliability of the polls, noting that the advertiser failed to supply even the most basic information about the test methodology.

*(ii) The WindTunnel's Performance on the IEC Tests*

The challenger disputed the advertiser's claim that its vacuum cleaners out-clean all other vacuums arguing that its own Dyson machines perform better than the WindTunnel on wood floors with crevices and on Wilton carpet. (In its second submission, the challenger also included test showing the vacuum cleaners' respective performance with respect to the other three floor surfaces specified by IEC.) Specifically, the challenger noted that the DC07 has an 85.5% pick-up efficiency on wood floors with crevices and 78.1% on Wilton carpet; the DC14 has a 94.6% pick-up on wood floors with crevices and 82.3% pick-up on Wilton carpet; whereas the WindTunnel has only a 21.9% pick-up on wood floors, and an 80.7% pick-up on Wilton carpet. The challenger noted that its Dyson machines outperform WindTunnels when all floor types are averaged together.

*(iii) The WindTunnel's Performance Declines With Use*

The challenger further objected to the advertiser's reliance on ASTM F608 to support its WindTunnel superiority claim on the grounds that ASTM testing is performed on brand new vacuums with new drive belts and new bristles. The challenger noted that consumers continue to use their vacuum cleaners for years after their first cleaning, and argued that the WindTunnel's performance rapidly declines with use. The challenger pointed to testing purporting to show that the pick-up efficiency of the WindTunnel to decline as dust enters the vacuum. In particular, the pick-up efficiency of a dust-loaded WindTunnel decreased 71% on wood floors with crevices, 38% on level loop carpet, 10% on plush carpet, and 8% on Wilton carpet. When averaged across all four surfaces, the pick-up efficiency of the dust-loaded WindTunnel decreased 25%.

Likewise, the challenger argued that the WindTunnel's performance declines as its drive belt ages. The challenger submitted testing that compared a brand new replacement belt with an original belt that had not been significantly used for six months, and that of an original belt that had been used for 300 hours. The testing found that the new belt transmitted the most power (about 200 watts), while the 6-month old belt showed a slight reduction in power, transmitting about 190 watts. The belt that had been used for 300 hours was shown to transmit only about 170 watts—15% less than the new replacement belt. The challenger contended that this reduced power due to belt wear results in decreased performance.

Similarly, the challenger maintained that the WindTunnel's performance decreases as its bristles wear. On this point, the challenger submitted testing showing the bristle wear of its own DC07 vacuum cleaner and the WindTunnel after 200 hours of use on plush carpet. After 200 hours of use, the challenger noted, the WindTunnel's bristles decreased by 86%, reducing pick-up performance by 18%.

Part 2 of Exhibit H

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 9

> (b) *The Advertiser's Claim that the WindTunnel Cleans 56% Better Than the Dyson Vacuum*

Dyson challenged the accuracy of a claim made in print advertising and on the advertiser's website and online brochure that the WindTunnel "cleans carpet 56% better" than the challenger's vacuum. Likewise, the challenger took issue with the television commercial claims that the WindTunnel "cleans carpet 56% better" than the challenger's vacuum and more generally that it "cleans better" than the challenger's machine. The challenger also noted the hangtag claims that "Patented WindTunnel Technology™ picks up over 56% more dirt than Dyson DC-14" and "Picks up over 56% more dirt."

The challenger maintained that the WindTunnel does not in fact perform better, let alone 56% better, than the Dyson DC07 or DC14 vacuums. Here again, the challenger noted that its Dyson vacuum performed better than the WindTunnel when tested according to the IEC standard, and when the results of the ASTM and IEC testing are averaged across all surfaces.

The challenger further objected to the advertiser's statement that "These results are based on ASTM International F608, the only recognized industry standard representing real-life conditions in American homes."[7] As argued above, the challenger contended that in fact the ASTM test is *not* the only industry-accepted standard, and that the IEC test is in fact broader and more comprehensive. Moreover, the challenger contended that the advertiser's reference to ASTM fails to inform consumers about the limitations of the test—namely, that it is limited to removing fine test dirt from certain types of carpet only. The challenger added that consumers are generally not familiar with ASTM testing standards, and that 77% of respondents in the above-discussed consumer perception survey took away an overall superiority message, rather than a narrow claim that the WindTunnel tested better in removing one type of dirt from certain types of carpet. Nor does the advertisement inform consumers that the test was performed on a brand new, empty vacuum cleaner with a new drive belt and new bristles. Here again, the challenger noted that the WindTunnel loses both suction power and pick-up efficiency in a dust-loaded vacuum.

> (c) *Claim that the Fusion Out-cleans the Dyson Vacuum by 13%*

Dyson also challenged advertiser's claim that its Fusion vacuum "outcleans Dyson by 13%." This claim is accompanied by the disclaimer: "Outcleans Dyson models DC07, DC14, and DC15 (The Ball™); proven in tests per ASTM International F608, the only recognized industry standard representing real-life conditions in American homes."

The challenger reiterated its argument that ASTM is not the only recognized industry standard, and that this test does not account for a wide variety of floor surfaces. Moreover, as discussed in reference to the WindTunnel vacuum, the challenger argued that the Fusion's performance rapidly declines as dust enters the vacuum cleaner and the drive belt and bristle bar wear down as

---

[7] This disclaimer on the television commercial is "It's proven by the only recognized test representing real-life conditions in American homes."

THE HOOVER COMPANY
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 10

a result of normal use. The challenger submitted test results showing that the Fusion's suction power dropped 24.8 airwatts—or 13.2%—when repeat-loaded to a cumulative total of 1200 grams of dust.

Finally, the challenger argued that the Fusion has "astonishingly high" dust emissions. Specifically, the Fusion emits 0.1596% of the collected dust back into the air, which means its filtration method is only 99.8404% effective. As such, the challenger noted, the Fusion releases 1596 times more dust into the air than the Dyson DC07 and DC14 vacuums.

*V. The Advertiser's "Pick-Up Efficacy" Claims*

The challenger took issue with numerous "pick-up efficacy" claims, including: (i) product packaging claims that "WindTunnel Picks Up More Dirt Than Any Upright...Period" and "WindTunnel Picks Up Over 70% More Dirt"; (ii) print advertising claims that the WindTunnel "Picks up more dirt than any other brand!"; (iii) radio advertising claim that "The Hoover Self-Propelled WindTunnel Vacuum has been proven to extract more embedded dirt than any other upright"; (iv) a Sears brochure claiming that the WindTunnel "Picks up more dirt than any other bagless upright!"; "Picks up more dirt than any other clean-air upright!" and "Picks up more dirt than any other upright!"; and (v) a hangtag claiming that "Patented WindTunnel Technology™ picks up more dirt than any other brand, including Dyson."

The challenger argued that its own testing shows that when averaged together, the pick-up for various vacuum cleaners on the market today ranges from 52.3% to 77.8%, whereas the WindTunnel only had a 66.3% pick-up efficacy. The challenger also noted that for the many reasons outlined above, the advertiser's reliance on the ASTM test—to the exclusion of the IEC standard—was misguided.

*VI. The Advertiser's Claims that WindTunnel Technology Provides Superior Cleaning Performance and Use of the Cyclone Logo*

The challenger also took issue with the advertiser's claim that the WindTunnel technology provides superior cleaning performance, and with its depiction of a cyclone on the WindTunnel packaging and on the product itself. The challenger argued that contrary to the name "WindTunnel," the cyclone graphic, and the advertiser's superiority claims, WindTunnel technology is *not* cyclone technology. The challenger explained that unlike its own cyclone filtration technology, the advertiser's WindTunnel technology has absolutely nothing to do with the vacuum's method of filtration. Rather, the challenger noted, WindTunnel technology is limited to the vacuum cleaner's head.[8] To demonstrate the ineffectiveness of the WindTunnel technology, the challenger devised a test in which the pick-up of the WindTunnel vacuum with WindTunnel technology was compared to the pick-up of the WindTunnel vacuum without WindTunnel technology. This test purportedly showed that with the WindTunnel technology, the vacuum has an average pick-up of 75.0%, whereas without the technology, the vacuum has an

---

[8] The challenger further explained the WindTunnel technology diverts some of the air under the cleaner head into a tunnel running over the top of the bristle bar into a channel running across the front of the vacuum to create a suction in front of and behind the bristle bar.

THE HOOVER COMPANY
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 11

average pick-up of 72.5%. Thus, the challenger argued, the use of WindTunnel technology increases pick-up by a mere 3.5%—an amount that would go unnoticed by consumers. For these reasons, the challenger contended that the advertiser's superiority cleaning claims as well as its use of the cyclone logo are false and misleading.

*VII. Implied Claim that the WindTunnel does not Lose Suction*

The challenger argued that the claim "Twin Chamber Bagless System helps maintain maximum cleaning power," which appears in the Sears brochure for the WindTunnel, implies that the WindTunnel does not lose suction. The challenger previously noted that WindTunnel was shown to lose significant suction power when tested in accordance with the IEC dust-loaded test. The challenger further noted that the bagless WindTunnel—which is the model being promoted in the materials at issue—loses suction much faster than the bagged model. The challenger also argued that the very design of the advertiser's bagless WindTunnel vacuum—barrier filtration that utilizes a paper filter—results in a loss of suction power. Specifically, the challenger explained, dust and dirt clog the paper filter and prevent air from flowing, thereby reducing suction.

*VIII. Claim that the Fusion Does Not Lose Suction*

The challenger also objected to the claim, appearing on product packaging, the advertiser's website, the Fusion Owner's Manual, and the online Fusion brochure, that the Fusion offers "NO LOSS OF SUCTION," that "Cyclonic technology offers powerful cleaning with no loss of suction," and that the Fusion has "incredible cleaning power—every time you use it."

Here again, the challenger noted that due to the very design of the advertiser's vacuums, in which dirt and dust can clog the pores of the filter, suction is reduced with repeated use. While the challenger acknowledges that the Fusion maintains relatively constant suction power when the machine is *not* loaded with dust, the challenger contended that its testing shows that the Fusion does so by emitting 1596 times as much dust and dirt as the advertiser's vacuum.

The challenger also took issue with the disclaimer that appears with certain "no suction loss" claims: "Suction stays constant after picking up 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material." As discussed above, the challenger argued that the results of a narrow ASTM test do not support the advertiser's broad claims. The challenger also contended that this test does not measure a vacuum's performance over time, and that contrary to the advertiser's disclaimer, the test does not use any dust at all. Nor, the challenger added, does the test measure dust emissions from vacuums.

*IX. Dirt Disposal Claims*

The challenger also took issue with the advertiser's dirt disposal claims. Specifically, the challenger argued that the advertiser's touted "no-touch" filter cleaning for its WindTunnel vacuum is false, because in order to clean the paper filter, consumers must remove the filter by hand and spin it against an attached piece of plastic to remove the dust and dirt. Likewise, argued

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 12

the challenger, consumers must replace the vacuum's filter by hand. The challenger further objected to the advertiser's claim that the WindTunnel and the Fusion dirt cups are clean and hygienic to empty. The challenger noted specifically the advertiser's claim that the Fusion involves "No Mess!" and that the WindTunnel offers "hygienic dirt disposal." In reality, the challenger argued, in order to empty the advertiser's vacuums' dirt cups, consumers must open the dirt cups and empty the loose dirt and dust into a garbage can. The challenger maintained that this process results in dirt flying into the hands and face of the consumer, and offered as evidence two demonstrations showing how this happens.

*X. Total Allergen Filtration Claims*

The challenger argued with the advertiser's claims that a number of its vacuums offer total allergen filtration. Specifically, the challenger drew NAD's attention to the claim on the WindTunnel brochure that "Allergen Filtration traps 100% of dust mites, ragweed and common grass pollens," as well as the claim on WindTunnel product packaging that "Allergen Filtration traps 100% dust mites, 99.98% ragweed and common grass pollens."

The challenger argued that these health claims overstate the capabilities of the advertiser's vacuums. As discussed above, the challenger maintained that the advertiser's vacuums emit more dust into the air than the average vacuum cleaner, and that this results from their below-average filtration systems. The challenger added that it is dust mite *feces* that people are allergic to—not dust mites themselves. Therefore, the challenger argued that trapping the insects themselves would have little to no effect on allergies. Finally, the challenger noted, there are many allergies in American homes aside from dust mites, ragweed, and grass pollens.

**Advertiser's Position**

*I. Background*

The advertiser informed NAD of pending patent litigation which was filed prior to the NAD challenge and involves similar issues. According to the advertiser, NAD should not assert its jurisdiction over the comparative cleaning performance claims at issue, as doing so would invite the possibility that NAD and the court would issue conflicting decisions regarding cleaning superiority claims made by parties to this challenge.

Additionally, the advertiser disputed the challenger's contention that the advertiser confined its initial response to the Self Propelled WindTunnel vacuum cleaner. In fact, the advertiser argued, the ASTM F608 test results it submitted clearly establish that both the Self Propelled WindTunnel and the Bagless Self Propelled WindTunnel vacuum cleaner pick up 56% more dirt than Dyson, and that all bagless WindTunnel models also out-clean Dyson. The advertiser further argued that the challenger failed to refute the advertiser's testing for any Hoover models other than the Self Propelled WindTunnel vacuum cleaner (bagged and bagless models) and the Hoover Fusion upright vacuum.

*II. The Advertiser's Performance Claims*

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 13

The advertiser argued that its independently supervised tests, conducted pursuant to ASTM F608, prove that its Hoover Self Propelled WindTunnel cleans carpet better than Dyson vacuum cleaners by at least 56%.

> a. *The advertiser's testing demonstrates that Hoover WindTunnel vacuums out-clean Dyson vacuum cleaners*

The advertiser contended that the primary reason consumers purchase upright vacuum cleaners is to clean their carpeting and rugs, and that carpeting and rugs account for roughly two-thirds of the total floor covering market in the United States. Accordingly, the advertiser argued, the ability of a vacuum to clean carpets is the most meaningful measure of how well the machine works.

The advertiser's independently supervised testing, which used the ASTM F608, tested each of the upright Hoover WindTunnel vacuum cleaners against the Dyson DC07 model and the Dyson DC14. The advertiser's test results show each of its vacuums outperforming the Dyson models by at least 49.5%, and as much as 70.5%. The advertiser also tested Dyson's newest model, the DC15. According to The advertiser, the DC15 performed a near parity with the DC07, and therefore is also outperformed by the upright Hoover WindTunnel vacuums.

> b. *Consumers Union Agrees That Hoover WindTunnel Vacuum Cleaners Outclean Dyson Vacuum Cleaners*

The advertiser noted that Consumers Union reported generally similar results to those demonstrated by the advertiser's independently supervised ASTM F608 tests. Consumers Union rated two Hoover WindTunnel models as "excellent" for carpet cleaning, while it rated the Dyson DC07 and DC14 as merely "good"—the lowest rating given to any of the 33 vacuum cleaners tested. The advertiser contended that these results confirm the superior cleaning ability of the Self Propelled WindTunnel.

> c. *ASTM F608 is the appropriate standard*

ASTM F608 is a testing standard that evaluates the effectiveness of household and commercial vacuums for the removal of carpet-embedded dirt. According to the advertiser, it is the only method recognized in the United States for testing the cleaning efficacy of an upright vacuum cleaner. The advertiser also maintained that ASTM F608 is the American National Standard, as recognized by ANSI, which means that this standard takes precedence over the IEC 60312 procedure for evaluating carpet cleaning in the United States. The advertiser reasoned that since upright vacuum cleaners (such as the Hoover and Dyson models involved in this challenge) are primarily purchased by consumers to clean carpets and rugs, and since carpeting accounts for

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 14

roughly two-thirds of the total floor-covering market in the United States,[9] the ASTM F608 is the most consumer relevant measure for testing upright vacuums.

The advertiser then compared the ASTM F608 to the IEC 60312—the standard used by the challenger. According to the advertiser, there are several differences between the two testing procedures which support the advertiser's argument that the ASTM F608 is the more accurate and more relevant test method.

First, explained the advertiser, ASTMF608 procedure correlates to actual field results in American homes,[10] whereas IEC 60312 was not based upon field studies. ASTM F608 requires that the carpets and padding used in the testing conform to ASTM F655, which requires the use of multiple carpets representing the major styles found in American homes. Conversely, the IEC 60312 only uses Wilton wool carpet, which according to the advertiser, has been criticized by members of the IEC and the European Carpet Association ("ECA") because it is not representative of current carpets. According to the advertiser, ASTM F608 has an established statistical precision statement which details expected repeatability and reproducibility errors unlike the IEC test which has a "lack of reproducibility between laboratories and materials."[11] The advertiser explained that ASTM vacuum cleaner test methods require a minimum of three units per each tested model, each of which must meet the repeatability requirements. Furthermore, unless a 90% confidence interval for the units is less than 5% of the sample mean, additional units must be tested. The advertiser points out that the IEC method only requires testing of a single unit of any given model to determine a representative value for the entire population. Finally, argued the advertiser, ASTM F608 has specific rules for determining when a test carpet must be replaced. The advertiser argued that because the IEC test leaves carpet replacement up to the individual laboratory it creates the possibility for massive reproducibility errors between laboratories.

The advertiser also rejected the challenger's assertion that Dyson's testing, which combines the averages of both ASTM and IEC based tests, is more consumer relevant than the "well established standard" used by the advertiser.

Finally, the advertiser submitted consumer research conducted by *Good Housekeeping* magazine, which was conducted between June and October of 2005 at the request of the ASTM F11.93.05 Task Group to "determine what attributes of a vacuum cleaner were the most important influences in making a purchase decision." The research consisted of three separate surveys which the advertiser argued "confirmed that cleaning ability on carpets was the most important attribute to consumers and that the cleaning ability on bare (hard) floors was either 6 or 7 out of the 8 attributes."

---

[9] Carpet and Area Rugs account for 66.8% of the floor covering sales by volume. *Floor Covering Weekly*, July 18/25, 2005.
[10] The advertiser explained that ASTM F608 was based upon 27 field studies in which numerous vacuum cleaners were tested side-by-side in 25 houses per study, for a total of 675 homes. Additional field studies have been conducted since then to insure that the field conditions have not changed the correlation that was established between the laboratory and the field.
[11] Advertiser's Final Response, Page 7, ¶2.

THE HOOVER COMPANY
WindTunnel and Fusion Upright Vacuum Cleaners
Page: 15

>    d.  *Dyson's testing is unreliable and does not represent actual consumer use in the U.S.*

The advertiser raised several issues with the challenger's test procedures as well as the accuracy and consumer relevance of the test data. According to the advertiser, the challenger's testing included ASTM F608 tests on two of the four carpets specified by ASTM F655, along with the IEC hard surface crevice test and the IEC embedded soil removal test.

The advertiser contended that the challenger's tests were neither conducted nor supervised by an independent third party. The advertiser also asserted that the challenger did not follow proper testing procedures, or "good laboratory practice." The advertiser further objected to the challenger's use of only two of the four carpets required by the F608 test;[12] the challenger's failure to perform head-to-head performance evaluations;[13] the challenger's failure to meet strict statistical accuracy requirements of the F608, and the fact that the challenger's testing occurred over a five-year period. By conducting the tests over a period of five years, the advertiser argued, the challenger's testing utilized different carpets, dust supplies, and materials. The advertiser further argued that the challenger utilized different technicians, and changed the environments in which it evaluated the products' performance. According to the advertiser, these factors would impact the test results to a great degree and therefore render the test inaccurate.

Although the advertiser did not believe that the IEC 60312 test is relevant to consumers in the United States, it ran its own IEC 60312 testing. The advertiser averred that it conducted the IEC 60312 properly (head-to-head testing with the challenger's products, using the same technician, carpet and dust supply for all tests) and demonstrated that the WindTunnel outperformed each of the Dyson units. (The Self Propelled WindTunnel (U6439-900) achieved percent clean score of 88.5%, whereas the Dyson DC07, DC14, and DC15 received scores of only 79.1%, 78.3%, and 70.0% respectively.

According to the advertiser, three additional tests (a dust removal test from hard surfaces, a litter removal test, and an edge cleaning test) exist under the IEC 60312 standard, yet were not submitted to NAD by the challenger until the challenger's second submission. With respect to the timing of this testing, the advertiser noted that Section 2.4(C) of the NAD/NARB/CARU Procedures specify that a challenger is required to include in its initial challenge any data on which it intends to rely. As to the testing submitted to NAD in the challenger's original challenge, the advertiser argued that the crevice test chosen by the challenger uses a slot which is 1cm deep and 3mm wide and is most representative of a crack that would occur between two hardwood floor boards. The advertiser further asserted that the challenger failed to explain how

---

[12] According to the advertiser, the ASTM F608 requires that the testing include four carpets which are specified in the ASTM F655 standard. The ASTM F655 is the Standard Specification for Test Carpets and Pads for Vacuum Cleaner Testing. The ASTM F608 test method specifies that carpets and padding conforming to Specification F655 be used.
[13] The advertiser asserts that all ASTM and IEC vacuum cleaner performance test methods are intended to be head-to-head performance evaluations. The advertiser also asserts that the Dyson test results cannot be compared because they were not conducted head-to-head. See Sonex Corporation, NAD Case Reports, Case No.3656 (May 2002).

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 16

this surface is relevant to typical consumer use or what type of surface it is intended to represent, and that the July 18-25 issue of *Floor Covering Weekly* shows hardwood floors as representing 3.6% of total floor covering sales by volume. The advertiser stated that the majority of hard floor surfaces in the United States are smooth and therefore would be better represented by the IEC Dust Removal Test. The advertiser argued that of all of the IEC standards, the omitted tests were the most relevant to consumer use.

The advertiser concluded that the challenger's combination of the Wilton Carpet Test (based on a carpet that is not used in the United States), the IEC Crevice Test, and two of the four required ASTM Tests was created to achieve a favorable outcome for its products' performance.

> *e. Dyson's Claim That Hoover Vacuums Will Tear Out Carpet Fibers is False and Irrelevant To This Challenge*

The challenger created a test to show the "destructive" nature of the Hoover WindTunnel and other American vacuum cleaners compared to its DC07. The advertiser noted that this test utilized an English carpet consisting of 80% wool and 20% nylon, and argued that only two out of 3,275 different styles listed in the Carpet Directory Database for the fall of 2004 come close to matching this style in the United States. The advertiser further noted that because the carpets in England "do not hold up as well" as American carpets, the brushes used in its European models generally have less aggressive bristles.

The advertiser also argued that the DC14 and the DC15 are absent from this analysis, as is any indication of how or when the test was conducted. Assuming that the test was conducted on a continuous basis for 1,000 double strokes at 0.5 m/s over a stroke length of 1.2 m, the advertiser reasoned that the units were operated for 80 continuous minutes. The advertiser maintained that an 80-minute operation of continuous vacuuming over the exact same area in a home is highly unlikely. Finally, the advertiser noted that the preparation of the carpets is unknown.

> *f. The Hoover WindTunnel Continues to Outclean the Dyson Vacuum Even After Years of Use Under Typical Household Conditions*

The advertiser defended its reliance on the industry-approved ASTM F608 test despite the challenger's contention that the WindTunnel's performance declines with use. The advertiser maintained that *both* parties' testing demonstrates that the WindTunnel outperforms the Dyson even after being loaded with dust. Moreover, the advertiser emphasized that ASTM F608 is the agreed-upon industry standard for measuring the comparative cleaning efficacy of vacuum cleaners. While acknowledging that the performance of every vacuum cleaner declines to some degree with use, the advertiser maintained that this fact does not invalidate the ASTM F608 standard or the claim that Hoover vacuums outclean Dyson vacuums.

> *(i) Dyson's test results are flawed and its testing is not consistent with IEC 60312*

The advertiser noted that the challenger used testing from different years, conducted by different technicians, and did not test units head-to-head. In addition, the advertiser charged that the

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
**Page: 17**

challenger deviates from the stopping points that have been agreed to by the IEC task group and that will be included in the next draft of the IEC 60312 standard. The three stopping points specified by this standard are: (i) when the dust reached a maximum fill line or a bag check indicator activated; (ii) when 50g of dust per usable liter has been fed into the system; and (iii) when the suction reached 40% of its initial value. The advertiser maintained that throughout all of the challenger's testing for the loaded dust receptacle, the second stopping point of 50g per usable liter has been repeatedly ignored. The advertiser speculated that the deviation from this stopping point was clearly intended to overfill competitive products so as to create an unrealistic condition to prove a cleaning superiority that does not exist. In summary, the advertiser argued that the challenger's test results should be given no weight except to the extent that they demonstrate that the WindTunnel units tested continue to outperform the Dyson units even when the suction power of the former machines is reduced to 40%.

> *(ii) The Advertiser's Testing Confirms that WindTunnel Units Outclean Dyson Units Even When Suction Power is Reduced to 40% Of Its Original Suction*

The advertiser conducted additional independently supervised testing pursuant to ASTM F608 to evaluate the embedded soil removal capability of the Hoover SelfPropelled WindTunnel (bagged and bagless) vacuum cleaners, as well as the Hoover Fusion upright vacuum, against the Dyson units under dust-loaded conditions (the "Loaded Dust Receptacle Test"). The Hoover Self-Propelled vacuum cleaners were restricted to the worst-case scenario of 40% of the initial suction. The data clearly showed that even when "clogged" to 40% of its initial suction value, the WindTunnel cleans better than any of the Dyson upright vacuums.

> *(iii) The Challenger's Power Transference Test Actually Demonstrates That The Self Propelled WindTunnel Maintains Most Of Its Power After Years Of Ordinary Use*

The advertiser disputed the challenger's argument that the belts of WindTunnel upright vacuum cleaners wear out and result in reduced performance. Dyson created a test to measure the power transference of the belt as it ages. This test consisted of operating a single Self Propelled WindTunnel Bagless vacuum in a reciprocator and then periodically disassembling this unit to gain access to the belt. The advertiser noted that the belt when first measured transferred 200W of power—and that after 300 hours it continued to transfer 170W of power. The advertiser argued that the technician/engineer who wrote the report seemed impressed to find that "There is considerable physical degradation in the belt that has run for 300 hours <u>however it is still capable</u> <u>of transmitting 170 Watts</u>." (emphasis added by the advertiser.) The advertiser added that 300 hours of use represents approximately 10 years of use. The advertiser further noted that the technician stated that the loading of the belt would be quite different if done at home from that in the test. Finally, it noted that no effort was made to determine the effect on cleaning of this purported 15% reduction in power transfer. Thus, the advertiser argued that the Dyson test is unreliable, irrelevant to consumer use, and meaningless.

> *(iv) The Challenger's Bristle Wear Test is also flawed, but demonstrates the superior cleaning efficacy of the WindTunnel*

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 18

The advertiser also took issue with the challenger's bristle wear test. The challenger's technicians operated a WindTunnel of unknown model in a continuous pattern in an automated reciprocator for 200 hours, measuring the embedded dirt removal capability per ASTM F608 every 50 hours and compared it to a Dyson DC07 undergoing the same test. The advertiser noted that at 50 hours, when a reduction in penetration of 2.5 mm for the WindTunnel was measured, the pick-up was reduced by 7.5 g, but after 100 hours, when the bristle penetration was reduced an additional 1.2 mm, the pick-up increased by 8.1 (the highest value during this test.)

Moreover, the advertiser argued that this data actually demonstrates that the air watts for the WindTunnel increased by 50% and the Dyson decreased by 14%. Thus, to the extent these results can be trusted, the advertiser claimed, the data actually shows an improvement in the performance of a WindTunnel over time, and a loss of suction for the Dyson DC07 over time. A 14% change in air power is outside the range of test error for the ASTM F558 procedure.

Finally, the advertiser noted that because the average usage of a vacuum cleaner in an American home is 30 hours per year, a 200 hour test represents approximately six years and eight months of use. Accordingly, the advertiser argued that the challenger's test demonstrates that even after approximately 6 years and 8 months, the WindTunnel still cleans better than the Dyson DC07 by a normalized value of 40.4%. The advertiser also noted that the carpet used for this test was a UK carpet, and that according to the test technician, U.S. carpets tend to have a longer pile and therefore less bristle wear should occur.

*III. The Advertiser's Commercial*

In response to the challenger's contention that the television commercial is misleading, the advertiser stated that the commercial's only express claim (that the self propelled WindTunnel out cleans Dyson) is true. The advertiser also argued that the to the extent that the claims could be interpreted as communicating that Dyson vacuums loose suction, this is also true.

According to the advertiser, there is nothing about the commercial which implies that the product is ineffective or which is disparaging to the product. Rather, it insisted that the message implied is that when choosing a vacuum, consumers should be concerned with its cleaning performance rather than its color. It argued that the consumer data submitted by the challenger does not support its argument. Furthermore, the advertiser insisted that the NAD cases cited by the challenger are distinguishable from the instant proceeding because the advertisements here at issue are not focused on any particular flaw of the challenger's product–but instead concentrate on the superiority of the advertiser's product. According to the advertiser, the responses provided by the challenger from its consumer perception survey show that those who saw an implied performance message took away a comparative superiority message. The advertiser insists that the statement: "Dyson thinks things should work properly. We couldn't agree more," (which is immediately followed by: "That's why our Hoover Self-Propelled WindTunnel picks up 56% more dirt than Dyson") is not interpreted by the reasonable consumer to mean that the one product is ineffective. Rather, the advertiser maintains that such a statement is taken to mean that one product is more effective than the other. This statement, according to the advertiser, implies

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 19

that the Hoover WindTunnel cleans *better* then the Dyson vacuum cleaners, and is substantiated by the data provided.

*IV. Other Challenged Claims*

    *a. The Advertiser Does Not Claim that the WindTunnel Does Not Lose Suction*

The advertiser took issue with the challenger's argument that the statement "Twin Chamber Bagless System helps maintain maximum cleaning power" implies that the WindTunnel does not lose suction. The advertiser noted that the challenger offered no support for this claim, and contended that the challenger confuses cleaning power with suction power. The advertiser maintained that suction power is *only one* element of cleaning power, and that a vacuum can offer maximum cleaning power even without maintaining its full suction power.

In fact, the advertiser noted, the WindTunnel vacuum cleaners with *full* bags and dirt cups clean better than the challenger's machines with *empty* dirt cups. In support of this statement, the advertiser pointed to an independently supervised internal test demonstrating that the Self Propelled WindTunnel uprights (bagged and bagless) clean better than the challenger's DC07, DC14, and DC15 vacuum cleaners. Although the cleaning effectiveness of the WindTunnel units drops as suction power declines, the advertiser emphasized that the cleaning effectiveness of the WindTunnel never drops below that of the challenger's machines. Accordingly, the advertiser argued that the Twin Chamber Bagless System does indeed help maintain maximum cleaning power.

    *b. The Claim that the Hoover Fusion Does Not Lose Suction is True and Properly Qualified*

The advertiser noted that its "Does not Lose Suction" claim is qualified by language appearing directly beneath the claim, stating: "Suction stays constant after picking up 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition composed of 70% mineral dust and 10% fibrous material." The advertiser submitted testing to this effect. This disclosure, argued the advertiser, renders this claim qualified and substantiated.

    *c. The WindTunnel Has a "No-Touch" Filter and Dirt Cups*

The Self Propelled WindTunnel Bagless Upright employs a two-chamber dirt cup with a lid. The lid has a small knob to allow the consumer to rotate the filter prior to opening the lid. The advertiser emphasized that in the course of typical cleaning, a consumer turns the knob prior to opening the lid, causing the filter still inside the dirt cup to rotate against a piece of plastic that causes the dust and dirt to fall off the filter and into the container. The consumer would then open the lid with her thumb while holding the cup's handle and pour out the dust and debris. The advertiser maintained that if individuals are removing the filter prior to spinning it, this is contrary to the instructions provided in the owner's manual. The advertiser did acknowledge, however, that there are times (such as when picking up large quantities of fine dust) that the filter

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 20

may require a more thorough cleaning in which the filter is removed from the frame and tapped against the side of a dust bin to dislodge any remaining dust.

> d. *The WindTunnel Utilizes a HEPA Filter That Traps 100% of Dust Mites, Ragweed and Common Grass Pollens*

The advertiser stated that its Self Propelled WindTunnel bagless utilizes a cartridge filter that is certified to meet the HEPA criteria of 99.97% efficient at 0.3 microns. The advertiser explained that this is the accepted criteria for HEPA in the United States and is also being pursued at ITC. Common pollen is generally between 15 and 25 microns. Dust mites are generally between 250 and 300 microns and even the dust mite allergens referred to by Dyson are generally between 10 and 20 microns. All of these allergens, the challenger noted, are significantly larger than 0.3 microns. Thus, the advertiser maintained, the HEPA filter on the Hoover will trap 100% of these allergens.

**DECISION**

Dyson challenged numerous performance claims and superiority claims made by the advertiser for its Hoover WindTunnel and Fusion upright vacuum cleaners. At the outset, NAD noted that both companies make effective upright cleaning products but rely on different kinds of testing to support their arguments and the performance capabilities of their respective products. A central dispute in this case involves the suitability of ASTM F608, the "Standard Test Method for Evaluation of Carpet Embedded Dirt Removal Effectiveness of Household/Commercial Vacuum Cleaners," as a basis for the advertiser's cleaning and "pick up" superiority claims. The advertiser argued that its testing, conducted pursuant to ASTM F608, supports its numerous cleaning superiority claims. The challenger, on the other hand, argued that ASTM F608 testing does not provide a reasonable basis for the challenged claims, and offered its own evidence to show that in fact its own Dyson vacuum cleaners outperform the Hoover units.

NAD is often called upon to review evidence of product testing based upon industry standards and then to assess the "fit" between the performance claims made by an advertiser and its supporting evidence.[14] Even when product testing is based on sound testing methodologies and industry-recognized protocols, NAD will typically examine the correlation between the testing and the real world experience of consumers in determining if the advertising claims are supported by the evidence. It is against this backdrop that NAD considered the claims in the challenged advertising.

*I.     NAD'S Jurisdiction*

NAD first considered the advertiser's argument that NAD should decline to exercise jurisdiction in this matter because a related dispute between the parties is simultaneously being litigated in

---

[14] The Valvoline Company (Zerex G-05 Extended Life Antifreeze) , Report #4375, *NAD Case Reports* (September 2005); Dow Chemical Company (Styrofoam Brand Insulation), Case # 4383, *NAD Case Reports* (August 2005); EuroPro-Corporation (Shark Bagless Stick Vacuum Cleaner, Case # 4216, *NAD Case Reports* (August 2004); Bausch & Lomb Incorporated (Renu), Case #4385, *NAD Case Reports* (August 2005).

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
**Page: 21**

Federal District Court. *NAD Procedure*s provide that if the advertising claims complained of are "the subject of pending litigation or an order by the court....NAD shall advise the challenger that complaint is not, or is no longer, appropriate for formal investigation in this forum."[15]

After carefully reviewing the complaint in the federal court proceeding, NAD determined that the claims challenged by Dyson, for WindTunnel and Fusion vacuum cleaners were not themselves the subject of the pending litigation.   Accordingly, NAD determined that *NAD Procedures* do not require NAD to close the case.   NAD recognized that the District Court may be adjudicating matters related to the proceeding (i.e., making findings on the testing methods) but this circumstance is not one that should divest the self-regulatory forum of its jurisdiction or charge to ensure that advertising is truthful, non-misleading and adequately substantiated. Accordingly, NAD proceeded with its review of the challenged advertising.

II.     *The Issue of False Disparagement*

      *A. Implied Claim in Television Commercial*

NAD first examined the challenged television commercial featuring the following dialogue:

- "My vacuum is purple. They say it doesn't loose suction."
- "My vacuum makes me look good."
- "My vacuum was in a fashion magazine."
- "Dyson thinks things should work properly. We couldn't agree more. That's why our Hoover Self-Propelled WindTunnel picks up 56% more dirt than Dyson."

The challenger argued that this commercial implies that Dyson vacuums are ineffective. In support of this argument, the challenger offered a consumer perception study which was completed by 265 adults throughout the United States over the age of 18, all of whom were actual or potential purchasers of vacuum cleaners. The respondents were asked open-ended questions about the overall message communicated by the commercial. 250 respondents (94%) knew the advertised brand was Hoover, and were asked questions about any messages communicated about the Hoover vacuum. 206 respondents (78%) were aware that the other brand in the commercial was Dyson, and were asked questions about any messages communicated about the Dyson vacuum. According to the challenger, 77% of the respondents surveyed took away superiority messages about Hoover vacuums, such as Hoover vacuums clean better than Dyson; Hoover is better than Dyson; Hoover is the best; and Hoover is better than the competition. Also according to the challenger, 46% of these respondents took away a variety of disparaging messages about the Dyson vacuum. After the survey was completed, the results were validated by an independent third-party validation company.

The advertiser argued that its commercial does not in fact imply that the Dyson vacuum is ineffective. It further contended that the consumer test data does not support the challenger's

---

[15] Section 2.2 (B)(i).

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 22

position. The advertiser argued that the commercial simply implies that consumers should be concerned with cleaning performance when deciding which vacuum to purchase—not with the color of the vacuum cleaner. This message, the advertiser maintained, is one of comparative superiority—not disparagement. Moreover, the advertiser distinguished the NAD cases sited by Dyson, arguing that the advertising here at issue does not focus on any particular flaw with Dyson cleaners. Finally, the advertiser noted that not one respondent in the challenger's consumer test indicated that the commercial implied that the Dyson vacuum cleaner is "ineffective" or "does not work properly." Rather, the verbatim responses reveal that the vast majority of those respondents who took away a performance message took away a comparative superiority message that is supported by the advertiser's evidence.

NAD agreed with the advertiser that the commercial conveyed a message of comparative superiority—and did not falsely disparage Dyson vacuum cleaners by suggesting they were ineffective or did not work properly. In reaching this conclusion, NAD first carefully reviewed the consumer perception survey. As to the purported 77% of respondents who took away superiority messages from the commercial, NAD noted that this percentage is not indicative of "false disparagement." Advertisers are of course free to make superiority comparisons, provided that they are supported, against competing products.

The issue here is whether the advertiser falsely disparaged the challenger by conveying the message that Dyson vacuum cleaners are somehow ineffective. On this point, NAD concluded that the consumer perception survey did not support the challenger's position. Although the challenger argued that 46% of respondents surveyed took away disparaging impressions of Dyson vacuum cleaners, NAD's own review of the survey responses revealed that relatively few respondents who saw the commercial took away the message that Dyson vacuum cleaners are ineffective or that they lose suction. The questionnaire employed a technique of "funneling" in which open-ended questions were followed by more specific questions including questions that specifically asked respondents to focus on the individual statement: "My vacuum is purple, they *say* it doesn't lose suction." Although *some* respondents, in response to such questioning, took away disparaging messages about Dyson vacuum cleaners, NAD concluded that the overwhelming majority of respondents took away no such messages.

NAD's analysis of the survey respondents yielded results that were consistent with its own takeaway of the commercial. Even if consumer perception evidence is not reliable or dispositive of the issues, NAD is authorized to stand in the shoes of consumers and determine what reasonable messages are conveyed by an advertisement. NAD, based upon its review of the commercial, determined that the commercial conveys a clear message of cleaning superiority, but does not reasonably communicate a message that Dyson cleaners are ineffective when it comes to cleaning.

Moreover, NAD disagreed with the challenger's suggestion that the Hoover commercial is analogous to the advertising at issue in *The Clorox Company (Clorox Toilet Wand System)*.[16] In *The Clorox Company*, the advertiser depicted its competitor's product as a ragged and useless

---

[16] NAD Case # 4306 (April, 2005)

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
**Page: 23**

object that blows away in the wind. Based on this depiction, NAD concluded that the advertisement conveyed that the competing toilet brush was "ineffective." Unlike the *Clorox* commercial, the Hoover commercial does not show the competing product falling apart or otherwise breaking or failing to work. [17]    Rather, NAD determined that the Hoover commercial gently mocks its competition—but does not expressly or impliedly suggest that Dyson vacuum cleaners are ineffective.[18]

NAD concluded that the commercial conveys that the advertised vacuum cleaners outclean Dyson machines, and that, specifically, "the self-propelled WindTunnel by Hoover cleans carpet 56% better than Dyson." NAD addresses the whether the evidence supports this cleaning superiority claim in Section IV of this decision.

    *B. Other Advertising*

The challenger also took issue with two other Hoover advertisements it described as falsely disparaging.[19] First, the challenger pointed to what it described as the "false and misleading claim in the Hoover print advertising for the WindTunnel that Dyson vacuums do not clean properly." NAD presumes that the challenger is referencing the print advertisement that appears in Exhibit 3 of the challenge which reads "Dyson thinks things should work properly. We couldn't agree more. That's why our Hoover self-propelled WindTunnel picks up 56% more dirt than Dyson." NAD concluded that this claim, similar to the above-discussed commercial, communicates that the self-propelled WindTunnel picks up more dirt than Dyson—but does *not* convey to the reasonable consumer that Dyson machines are ineffective or do not work.

Finally, the challenger took issue with a WindTunnel hangtag which reads, in relevant part: "Patented WindTunnel™ Technology picks up more dirt than any other brand, including Dyson. Some vacuums pick up dirt, only to scatter it back down into your carpet." On this point, NAD agreed with the challenger that the challenged hangtag does indeed imply that Dyson vacuums— as the only competing vacuum mentioned by name on the hangtag—is among the vacuums that "scatter [dirt] back down into your carpet." NAD noted that the record lacks any reliable evidence that demonstrates that Dyson vacuums scatter dirt onto carpet. Accordingly, NAD recommended that the advertiser discontinue the claim that "Patented WindTunnel™ Technology picks up more dirt than any other brand, including Dyson. Some vacuums pick up dirt, only to scatter it back down into your carpet."

---

[17] In <u>Clorox,</u> NAD also found that the advertiser provided no evidence that its own product cleaned toilets more effectively than the challenger's. <u>*Id.*</u>
[18]  Likewise, NAD determined that the present advertising is not analogous to the advertising reviewed in *McNeil Consumer Healthcare (St. Joseph Adult Low-Strength Aspirin)* NAD Case # 3871 (February, 2002). Although the advertiser correctly cited *McNeil* for the proposition that "[e]ven an otherwise literally accurate statement may be misleading if it falsely disparages a competing product," NAD concluded—for the reasons discussed above—that the instant commercial does not falsely disparage another product.  Similarly, NAD determined that the Better Business Bureau's *Advertising Review Handbook and Guidelines,* which prohibit false disparagement, were not violated by the advertiser's commercial.

[19] The challenger did not submit consumer perception research relating to these two advertisements.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
**Page: 24**

*III. "These results are based on ASTM International Test F608, the only recognized industry standard test representing real-life conditions found in American homes."*

The challenged performance claims include qualified language stating that ASTM F608 is "the only recognized industry standard test representing real-life conditions found in American homes." In support of this claim, the advertiser noted that ASTM F608 was developed with the cooperation of leading vacuum cleaner manufacturers, consumer organizations, academia, and general interest members, at the strong urging of the Federal Trade Commission ("FTC"). Moreover, the advertiser stated that F608 test methodology was based upon 27 field studies, in which numerous vacuum cleaners were tested side-by-side in 675 homes. It also noted that additional field studies have been conducted since the standard was originally established in the early 1970s, to insure that the standard remains current.

Given that the standard is indeed based upon ongoing field tests in which vacuum cleaners are tested in American homes, NAD was satisfied that ASTM F608 is indeed based upon "real-life conditions found in American homes." NAD then considered whether ASTM F608 is the "only" industry recognized standard that fits this description—or whether IEC 60312 is also a "recognized industry standard test representing real-life conditions found in American homes."

The challenger argued that the IEC 60312 is "equally accepted" as ASTM F608. In support of its argument, the challenger sited two NAD cases: *Euro-Pro Corporation (Shark Bagless Stick Vacuum Cleaner)[20]* and *Euro-Pro Corporation (Fantom Twister Vacuum Cleaners)[21]*, in which NAD determined that the advertiser's evidence, consisting of testing pursuant to ASTM F-55803, was not sufficient to support its suction claims. NAD was not persuaded by this argument. Contrary to the challenger's position, NAD did not opine in these cases as to the relative importance or reputability of ASTM F608 versus IEC 60312, nor did NAD find that "the two methods coexist side-by-side," or that they are "equally accepted." At most, NAD implicitly acknowledged that the IEC testing submitted by the challenger was not irrelevant to the issues it reviewed in that proceeding.

The challenger also argued for IEC's relevance by citing certain statements made by ANSI, ASTM, and the U.S. National Institute of Standards and Technology ("NIST") in which these bodies endorse the internationalization of standards. For example, the challenger noted ANSI's mission statement, which emphasizes the importance of global standards. The advertiser also pointed to recent minutes of the ASTM subcommittee on vacuum cleaners, in which the committee chairman discusses the goal of "bring[ing] together ASTM with relevant international standards." Finally, the challenger highlighted a statement made by the director of NIST, which stresses that "[b]oth government and the private sector in the United States have worked actively in the [IEC]."

While these statements perhaps make the case that American standards organizations seek to harmonize their own standards with those of the IEC, NAD noted that the question at issue here

---

[20] Case # 4216 (August, 2004)
[21] Case # 4217 (August, 2004)

THE HOOVER COMPANY
WindTunnel and Fusion Upright Vacuum Cleaners
Page: 25

is not whether the respective standards can be harmonized, but whether IEC 60312 currently qualifies as a "recognized industry standard test *representing real-life conditions found in American homes*."[22] NAD determined that the above-described statements by ANSI, ASTM, and NIST fall short of establishing that IEC 60312 is a recognized industry standard test "representing real-life conditions found in American homes."

The challenger's principle basis for the proposition that IEC testing standards represent "real-life conditions found in American homes" is a statement made by Mr. Capron-Tee, who is the chairman and member of various ASTM and IEC Committees and Sub-Committees relating to vacuum cleaner testing. The challenger relies upon Mr. Capron-Tee's statements that with respect to IEC testing, "the results obtained are representative of performance in the home," and that "the results show a proportionate performance in the home and can differentiate between the performance of different vacuum cleaners when used in the home." Mr. Capron-Tee also stated that "[t]his was tested against much field data collected from the USA and Europe." These representations directly contradict the statements made by the advertiser's expert, Mr. Miller, who stated that IEC 60312 does not correlate to any consumer studies.

NAD concluded that Mr. Capron-Tee's assertions that IEC 60312 represented (American) in-home vacuum cleaner performance were not sufficient to rebut the advertiser's claim regarding ASTM F608. First, NAD noted that Mr. Capron-Tee acknowledged that IEC test carpeting (Wilton carpet) is only found in a "tiny minority of homes," and that the dust used in the IEC testing is "also not found in many homes." NAD also noted the absence of any explanation (by the challenger or by Mr. Capron-Tee himself) as to how a test using both carpet and dirt that is found only in the minority of actual homes could accurately represent actual conditions in American homes. Mr. Capron-Tee's only basis for this argument was the bald assertion that "this was tested against much field data collected from the USA and Europe." Given the lack of supporting evidence as to the nature of this field data, or as to the proportion of this data that was collected, respectively, from the USA versus Europe (two regions in which carpet styles differ significantly), NAD concluded that Mr. Capron-Tee's statement was insufficient to establish that IEC standards correlate strongly with real-life conditions in American homes.

In contrast, the advertiser submitted detailed information as to the nature of the in-home field tests on which ASTM F608 was based. As discussed above, ASTM F608 was based on 27 field studies in which numerous vacuum cleaners were tested side-by-side in 675 homes.[23] Moreover, the advertiser provided NAD with a chart demonstrating the correlation between in-home field tests and ASTM laboratory tests. Indeed, the very language of ASTM F 608-9 reflects the fact that the standard is designed to be representative of American homes; Section 4.1 of F 608-9 reads, in relevant part: "This test method is based upon results of home cleaning tests so that, in most cases, a reasonable correlation exists between home and laboratory results." The language of IEC 60312 as quoted by the challenger, however, refers to no field testing whatsoever—no

---

[22] Emphasis added
[23] Additional field studies have been conducted since F608 was originally established in the early 1970s to insure that the standard remains current.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 26

less field testing conducted primarily in American homes.[24] Accordingly, NAD concluded that the challenger did not overcome the advertiser's reasonable basis for its claim that ASTM F608 is "the only recognized industry standard test representing real-life conditions found in American homes."

Finally, the challenger maintained that "[a]ll of Hoover's advertising that states that the ASTM test is the only industry test to measure vacuum cleaner performance are... false on their face." Importantly, however, the claim presently at issue is not that ASTM F608 is "the only recognized industry standard test" for measuring vacuum cleaner performance—but that it is the only recognized industry standard "representing real-life conditions found in American homes." For the reasons outlined above, NAD found this claim to be properly qualified and supported.

*IV.    Cleaning Superiority Claims*

In support of its numerous cleaning superiority claims as to both the WindTunnel and the Fusion, the advertiser submitted testing conducted pursuant to ASTM F608.[25] As a preliminary matter, NAD noted the parties' dispute as to whether the challenged superiority claims were limited to the Self Propelled WindTunnel, or whether they extended to other Hoover models as well. While it is true that some claims are limited to the Self Propelled WindTunnel, NAD observed that other claims clearly apply to other models. For example, as noted by the challenger, the claim "picks up more dirt than any other bagless brand" appears on product packaging for the Hoover WindTunnel Bagless. Likewise, the claim "picks up more dirt than any other upright... period," appears on packaging for the Hoover Self Propelled WindTunnel Bagless. Similar claims appear in catalogue advertising for the Self Propelled WindTunnel Bagless, the Self Propelled WindTunnel Ultra, the WindTunnel Bagless, and the WindTunnel Bagless Plus. Accordingly, NAD determined that the advertiser must not only substantiate its claims with respect to the Self Propelled WindTunnel, but must also provide evidence supporting those claims relating to other Hoover models.

   *A) The Advertiser's ASTM Testing*

In support of its cleaning superiority claims as to both the WindTunnel and the Fusion, the advertiser submitted two independently supervised tests conducted pursuant to ASTM Test Method F608, the "Standard Test Method for Evaluation of Carpet Embedded Dirt Removal Effectiveness of Household/Commercial Vacuum Cleaners." The first test compared the challenger's DC07 and DC14 models against seven different models of Hoover vacuum cleaners.

---

[24] As quoted by Mr. Capron-Tee, the stated purpose of IEC 60312 is "to specify essential performance characteristics of vacuum cleaners being of interest to the users and to describe methods for measuring these characteristics."

[25] The evidence discussed in this section was offered as substantiation for numerous cleaning superiority claims—both general and specific—identified by the challenger, including: "Picks up more dirt than any other brand;" "outcleans all competitive bagless cleaners;" "clean to the highest power;" "picks up more dirt than any other brand;" "The Hoover Self-Propelled WindTunnel Vacuum has been proven to extract more embedded dirt from horizontal floor surfaces than any other upright." "The Hoover® Self-Propelled WindTunnel™ picks up 56% more dirt than Dyson." "The self-propelled WindTunnel™ by Hoover cleans carpet 56% better than Dyson." The Hoover® Fusion™ Cyclonic Bagless Upright Vacuum Outcleans Dyson by 13%"

THE HOOVER COMPANY
WindTunnel and Fusion Upright Vacuum Cleaners
Page: 27

As prescribed by ASTM, all vacuum cleaners were tested on four different types of carpeting: plush, multi-level, shag, and level loop. The test also used dirt as specified in ASTM F608. This testing demonstrated that the advertiser's WindTunnel machines outcleaned the DC07 and the DC14 by at least 49.5% and by as much as 70.5%.

The second test, conducted several months later, compared the DC07, the DC14, and Dyson's recently introduced DC15 model—all with empty dirt cups—with Hoover WindTunnel vacuum cleaners operating with a full bag or dirt cup. This test, the advertiser noted, shows that the DC15 is no more effective at cleaning carpet than the DC07, and is significantly less effective at cleaning carpet than the WindTunnel vacuum cleaners tested in both tests.

As further support for its cleaning superiority claims, the advertiser noted that Consumers Union reported similar results to those found by its own ASTM F608 testing. The advertiser further noted that Consumers Union rated two models of Hoover vacuum cleaners "excellent" for carpet cleaning—while it rated the DC07 and DC14 models as merely "good."

The challenger disputed the appropriateness of ASTM F608 as substantiation for the challenged claims. First, the challenger noted that this standard only measures pick-up of test dirt on four types of carpeting, and does not measure pick-up on hard floor surfaces or other commonly vacuumed surfaces. The challenger also noted that ASTM F608 does not measure suction power, and that the standard only calls for testing to be performed on brand new vacuums with new drive belts and new bristles. For these reasons, the challenger contended that the advertiser must not only test its machines using ASTM F608, but must also test them against another industry standard: IEC 60312 "Vacuum cleaners for household use—Methods of measuring the performance."

In an NAD proceeding, the advertiser has the initial burden of presenting a reasonable basis for its claims.[26] Accordingly, NAD first considered the advertiser's evidence.
As a preliminary matter, NAD appreciated that ASTM F608 is a widely accepted industry standard that was developed with the cooperation of leading vacuum cleaner manufacturers, consumer organizations, and academia. NAD further noted that ASTM F608 is the American National Standard as recognized by the American National Standards Institute ("ANSI"). NAD too has recognized the legitimacy of ASTM F608 as a basis for cleaning superiority claims; In a previous proceeding, NAD determined that testing conducted pursuant to this standard constituted a reasonable basis for an advertiser's claim that its vacuum cleaner "gets more dirt out of a carpet than any other cleaner."[27]

Indeed, ASTM F608 enjoys legitimacy for good reason. Based on in-home field tests, the standard incorporates a variety of methodological safeguards, such as requiring the testing of a minimum of three units for each model, the utilization of a statistical precision statement,[28] and the use of multiple carpets representing the major styles found in American homes.

---

[26] *Johns Manville (Formaldehyde-Free Insulation)*, Case # 4395 (October, 2005)
[27] *The Hoover Company (Vacuum Cleaners)*, Case # 3044 (August, 1993)
[28] The advertiser explained that ASTM F608's statistical precision statement details potential repeatability and reproducibility errors.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 28

The challenger, however, highlighted several purported limitations of ASTM F608, and argued that these shortcomings render the advertiser's testing insufficient to support its claims. As a preliminary matter, NAD noted that its task here was to determine whether the advertiser's ASTM testing provided a reasonable basis for its cleaning superiority claims—not whether the testing constituted "perfect" evidence.[29] With this standard in mind, NAD considered the challenger's criticisms in turn.

(i) *The Argument that ASTM F608 Only Calls For Testing on Carpeting*

First, the challenger argued that ASTM F608, which calls for testing only on carpeted surfaces (not on hard flooring or other non-carpeted surfaces), does not support the challenged superiority claims—which are not limited to carpet cleaning. The advertiser countered that consumers' primary reason for purchasing upright vacuum cleaners is to clean carpeting and rugs. Accordingly, the advertiser argued that the ability of an upright vacuum cleaner to clean carpets is the true and most meaningful measure of how well it works.

Both parties cited statistics to bolster their respective arguments about the importance of carpeting versus hard flooring. The challenger pointed to a report showing that only 37.8% of flooring sold in the US last year[30] consisted of carpet. The advertiser cited research suggesting that carpets and area rugs account for 66.8% of floor covering sales by volume. NAD determined that the statistical evidence submitted was not dispositive to the issue at hand, which concerns the purposes for which consumers use vacuum cleaners and the way in which they will interpret the challenged cleaning superiority claims. Statistics simply speaking to the relative percentages of carpeting and rugs versus hard flooring does not shed light on which of these floor surfaces vacuum cleaners are commonly used.

NAD also considered but was not ultimately persuaded by the three *Good Housekeeping* surveys that were submitted by the advertiser in an effort to show that carpet cleaning is most important to consumers of vacuum cleaners. As noted by the challenger, these surveys fell short in several methodological respects. The first poll received responses from only 14 out of 100 respondents and contained no information regarding test methodology—and no explanation of why the sample size was so small. The second poll was deemed "unusable" because "Respondents appeared to rate each attribute on a 1-8 scale individually rather than as part of one question." Finally, in the third poll, the survey sample was not representative of the U.S. population with respect to variables such as gender, age, marital status, and education. Thus, to the extent that this consumer research was offered to show that consumers understand the challenged advertising claims to apply only to *carpet* cleaning, NAD was not persuaded.[31]

---

[29] As noted by the advertiser, NAD has held that "[i]n advertising claim substantiation, perfection is not required but, rather, advertising claim substantiation is based on a determination of whether an advertiser has provided a reasonable basis for its claims." *The Valvoline Company*, NAD Case # 4375 (August 2005)

[30] The year ending in March, 2005

[31] Moreover, NAD found that even if these polls had convincingly established that a vacuum cleaner's carpet cleaning ability ranks first in importance to consumers, such a showing would still not prevent consumers from taking away the unsupported message that the challenged superiority claims apply to all floor surfaces. Thus, even if

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 29

It is well-established that there must be a good fit between an advertiser's claims and the evidence offered to support those claims.[32] Thus, absent reliable consumer research demonstrating otherwise, NAD determined that the advertiser's unqualified cleaning superiority claims[33] did not sufficiently "fit" with its evidence, which was based on carpet cleaning alone. Accordingly, NAD recommended that the advertiser modify its cleaning superiority claims—both as to its WindTunnel and its Fusion—by disclosing that this claim applies only to carpeted surfaces.[34]

### (ii) The Argument that ASTM F608 Does Not Measure Suction

The challenger also argued that the ASTM F608 standard does not measure performance as well as the IEC 60312, because it does not measure suction. NAD was not persuaded by this argument. Although suction power is an important attribute in the design of vacuum cleaners (some more than others), NAD noted that the claims at issue here involve vacuum cleaners' ability to "pick up dirt," and "clean." Whether this cleaning ability is achieved via a vacuum cleaner's suction power, its bristle action, or by other means is not directly material to the claims at hand. Accordingly, NAD found that the advertiser's reliance on ASTM F608 was not fatally flawed on the grounds that the standard does not measure suction.

### (iii) The Argument that ASTM F608 Only Calls For Testing on Brand New Vacuum Cleaners

The challenger also objected to the advertiser's reliance on ASTM F608 because this standard only tests vacuum cleaners in a brand new state. The challenger noted that consumers continue to use their vacuum cleaners for years after their first cleaning, and argued that the WindTunnel's performance rapidly declines with use. As support, the challenger pointed to (i) testing purportedly showing the pick-up efficiency of the WindTunnel declines, on average by 25%, as dust enters the vacuum; (ii) testing purportedly showing that the WindTunnel's performance

---

it were true that consumers are primarily concerned with a vacuum cleaner's carpet cleaning ability, consumers are still entitled to know the extent to which the advertiser's superiority claim is supported. Short of reliable and methodologically sound evidence showing that reasonable consumers would not interpret the advertiser's cleaning superiority claims to apply *only* to carpeted surfaces, the advertiser remains obliged to disclose that its claims are limited to carpet cleaning only.

[32] *Avon Products, Inc. (ANEW Clinical Line and Wrinkle Corrector)* Case # 4250 (November, 2004)

[33] NAD acknowledged that some of the advertiser's claims are expressly limited to carpet-cleaning (such as the claim that *"The self-propelled WindTunnel™ by Hoover cleans carpet 56% better than Dyson.")* The instant recommendation, of course, does not apply to these claims in which the advertiser already limits its claims to carpeted surfaces only.

[34] NAD was not persuaded, however, by the challenger's argument that the advertiser improperly fails to disclose the *types* of carpeting on which the vacuum cleaners were tested. NAD noted that ASTM F608 is based upon ongoing field tests in American homes, and that the types of carpeting called for by the standard were chosen because they are representative of real-world homes. Moreover, NAD was confident that consumers understand that no testing standard could conceivably test vacuum cleaners on *all* types of carpeting that may be found in homes. Therefore, NAD concluded that the advertiser is under no obligation to inform consumers as to which types of carpeting were used in the tests.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 30

decreases as its belt wears; and (iii) testing purportedly showing that the WindTunnel's performance decreases as its bristles wear.

NAD addressed these concerns in turn. NAD first considered the challenger's testing purporting to show that pick-up efficiency of the WindTunnel declines as dust enters the vacuum. The challenger argued that as the WindTunnel's paper filter becomes coated with dust, less air is able to pass through the filter, causing a reduction in suction power. A reduction in suction power, the advertiser added, causes a decline in performance. As support for this argument, the advertiser points to testing results purportedly showing that Hoover vacuum cleaners experience a decline in pick-up efficiency as dust enters the vacuum.

NAD did not find this testing persuasive. First, NAD was troubled by the fact that this testing utilized only two of the four carpeting types (ASTM plush and ASTM "level loop") that are specified by ASTM. The challenger then averaged together the results of these to ASTM carpeting types with the results of testing conducted upon two flooring surfaces specified by the IEC standard, presuming that this average reflected an overall measure of pick-up decline over time.

While NAD values testing performed in accordance with ASTM standards, NAD noted that these testing standards are of limited value when only certain aspects of the standards are adhered to. Thus, NAD concluded that choosing only certain flooring types on which to test pick-up is a significant deviation from ASTM and IEC protocol, and produces results of limited value. Accordingly, NAD concluded that this testing did not overcome the advertiser's reasonable basis for its cleaning superiority claims.

Second, NAD considered the challenger's belt-wear test. NAD was not persuaded that this belt-wear test demonstrated that the WindTunnel declined in performance over time in any meaningful manner. First, NAD was not convinced that a vacuum cleaner's performance after having been used for 300 hours—which the advertiser estimated to approximate 10 years of use—is a consumer-relevant measure of its overall performance. Moreover, NAD noted that no effort was made to determine the effect on cleaning of this purported 15% reduction in power transfer. Perhaps most importantly, NAD took note of the significant limitations of the study that are acknowledged in the study's own conclusion section: "In applying this data to machines in the marketplace one must consider that the loading this belt has been subjected to is quite different to that which would be expected in a home environment. This belt has been run on a push-pull rig for the majority of its life whereas in a home the belt would be subject to many more stops and starts and generally a more varied load. This is sure to affect the rate at which the performance decays. It is also worth noting that this is a very limited sample with only one belt in each condition tested, for these reasons the performance figures may not necessarily be representative of all similar belts." Given the self-acknowledged significant limitations of the test, together with the above-mentioned concerns, NAD concluded that the bristle-wear test failed to demonstrate that the advertiser's WindTunnel vacuums decrease in performance by any meaningful measure.

THE HOOVER COMPANY
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 31

NAD next turned to the challenger's bristle wear test. In this test, the challenger's technicians operated a WindTunnel in a continuous pattern in an automated reciprocator for 200 hours, measuring the embedded dirt removal capability per ASTM F608 every 50 hours and compared it to a Dyson DC07 undergoing the same test. Here again, NAD was not persuaded that the bristle-wear testing demonstrated that the WindTunnel declines in performance by any meaningful measure. First, as noted by the advertiser, this test reveals that reduction in bristle penetration is not correlated to reduction in pick-up. Specifically, at 50 hours, when a reduction in penetration of 2.5 mm for the WindTunnel was measured, the pick-up was reduced by 7.5 g, but after 100 hours, when the bristle penetration was reduced an additional 1.2 mm, the pick-up increased by 8.1 (the highest value during this test.) Moreover, NAD noted the acknowledgement in the test report that: "The carpet used in the life test part of this project was a short pile nylon, which is known to be relatively tough. This type of carpet is popular with UK consumers... In the event that the machine does not spend its entire life on such carpet, the bristle wear and pick up reduction values quoted in this report represent a worst case. USA carpets are likely to be a longer pile resulting in less bristle wear." Given the use of carpeting that is not representative of typical carpeting found in the US, NAD concluded that the test is of limited value.

>    *(iv) The Argument that the Advertiser's Own ASTM F608 Testing Undermines its "56%" Claim*

The challenger argued that the advertiser's own test results undermine its claim that the Hoover Self-Propelled WindTunnel outcleans Dyson DC07 vacuum by 56%. The challenger noted that the advertiser submitted two sets of testing: one conducted on unclogged Self-Propelled WindTunnel machines, the other comparing clogged Self-Propelled WindTunnels with unclogged Dyson machines. The challenger argued that while the first set of testing indeed demonstrated that the Hoover Self-Propelled WindTunnel outcleans Dyson DC07 vacuum by 56%, the second set of testing showed that a "clogged" Hoover SelfPropelled WindTunnel only outcleans the Dyson DC07 by 39%.

NAD was not persuaded by the challenger's argument. NAD noted that the second test compared Dyson vacuum cleaners *with empty dirt cups* to Hoover WindTunnels *with full bags or dirt cups.* Thus, this testing was compared the Hoover machines at their least effective against Dyson machines at their top performance. (Even testing the respective vacuum cleaners under such disparate circumstances, the Hoover still outperformed the Dyson machines by a significant margin.) NAD determined that a test which subjected the competing units to such disparate circumstances was not sufficient to negate the 56% advantage established by the advertiser's first set of ASTM testing.

>    *B) The Challenger's Argument that Hoover vacuums are designed "at the expense of consumers' carpets"*

In addition to criticizing the advertiser's ASTM F608 testing, the advertiser argued that Hoover vacuum cleaners are designed "at the expense of consumers' carpets." The advertiser maintained that Hoover vacuums have stiffer bristle bars which beat carpeting harder than Dyson vacuum

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 32

cleaners—thereby tearing three times as many fibers out of carpet as compared with the Dyson DC07 vacuum cleaner.

At issue in this proceeding is the truth and accuracy of advertising claims made by Hoover. Outside of its findings relating to the claims here at issue, it is not in NAD's purview to make determinations as to extraneous advantages or disadvantages of Hoover machines. NAD concluded that this testing did not overcome the advertiser's reasonable basis for its cleaning superiority claims.

  ### C) The Challenger's IEC Testing

Once a claim is determined to have a reasonable basis, the burden shifts to the challenger to show either that the advertiser's evidence is fatally flawed or that it possesses more reliable evidence reaching a different result.[35] Having determined that the advertiser has provided a reasonable basis for its cleaning superiority claims (as modified by the above recommendation), NAD next considered whether this evidence is "fatally flawed," or whether the challenger's evidence qualifies as "more reliable."

The challenger submitted testing that was based upon both ASTM F608 and IEC 60312 ("Vacuum cleaners for household use—Methods of measuring the performance") to show that Dyson, in fact, performs *better* than Hoover.[36] The challenger tested several of its own Dyson vacuums against several WindTunnels along with a number of other upright vacuum cleaner models. Specifically, the challenger performed two types of tests: (i) ASTM tests conducted only on plush and "level loop" carpeting, and (ii) IEC tests conducted on hard-wood floors w/ crevices and on Wilton carpet.[37]

With respect to the results of the ASTM tests, the challenger argued that while its DC07 model (which is featured in various Hoover advertisements) does not perform as well as the premiere WindTunnel model on plush carpet, it performs "much better" on the level loop carpet. These test results further showed that the challenger's DC14 model also performed better on level-loop carpet than on plush carpet.

With respect to the IEC tests, the challenger noted that its DC07 was shown to outperform all competitors (including the WindTunnel) on hard wood floors, and that it offers performance comparable to the WindTunnel on Wilton carpeting. The challenger noted that when the IEC results are combined, the DC07's pick-up results are vastly superior to the WindTunnel's—82% vs 51%. The challenger further argued that when results from ASTM and IEC are combined (to represent actual consumer use), the Dyson outperforms the WindTunnel. The DC14 has an average 77.9% pick-up efficacy, the DC07 has an average 70.9% pick-up; the WindTunnel has an average pick-up efficacy of only 66.3%.

---

[35] *Johns Manville (Formaldehyde-Free Insulation)* Case # 4395 (October, 2005)
[36] The challenger noted that ASTM measures cleaning efficacy (F608) and suction power (F558) using two separate ASTM standards, but that the IEC standard addresses both cleaning efficacy and suction power in a single standard (60312).
[37] The challenger submitted more exhaustive IEC testing in its second submission to NAD.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 33

Once again, the question for NAD is whether the challenger's evidence is "more reliable" than the advertiser's ASTM F608 testing. As a preliminary matter, NAD was troubled by the challenger's deviation from the standards set forth by both ASTM and IEC. First, as noted by the advertiser, the challenger only conducted ASTM F608-based tests on two of the four carpets specified by ASTM F655. NAD noted that ASTM specified four carpet types for a reason: because they were deemed representative of the array of carpeting seen in actual American homes. Failure to test its vacuum cleaner on half the required carpet types rendered the test of highly limited value.

Nor was NAD persuaded that the challenger's IEC testing is "more reliable" than the advertiser's ASTM testing. As discussed above, NAD noted that the ASTM standard—unlike IEC 60312—is based upon and represents real-life conditions found in American homes. NAD also determined that the advertiser's attempt to piece together portions of results from different test methodologies was not a meaningful exercise.

NAD was further troubled by the excessive variability in the challenger's testing. As noted by the advertiser, the challenger's testing took place over a five-year period and utilized different carpets for different vacuum cleaners, as well as different technicians. Accordingly, NAD found that the challenger's testing was of limited value in terms of head-to-head comparisons.

Accordingly, NAD was not persuaded that the challenger's evidence was "more reliable" than the advertiser's ASTM F608 testing. NAD therefore determined that the advertiser's ASTM testing provided a reasonable basis for its WindTunnel and Fusion cleaning superiority claims— provided that the advertiser modifies its superiority claims, as discussed above, to clearly and conspicuously disclose that its cleaning superiority claims are limited to cleaning carpeting.

*V.        The Claim that Fusion Offers "NO LOSS OF SUCTION"*

The challenger contended that the advertiser's claim that its Fusion cleaner offers "NO LOSS OF SUCTION" is false because the design of the Hoover vacuum which permits dirt and dust to clog the pores of the filter. Dyson maintained that suction is reduced with repeated use. In support of its argument, Dyson submitted data indicating that there is a decline in suction as the bin fills with dust.[38] The advertiser, on the other hand, maintained that the claim is truthful because it is properly qualified through the use of the following disclosure: "Suction stays constant after picking up 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition composed of 70% mineral dust and 10% fibrous material." The challenger objected to the appropriateness of the disclosure arguing that the results of a narrow ASTM test do not support the advertiser's broad claims and, moreover, does not measure a vacuum's performance over time.

The claim "No loss of suction" is a broad claim that reasonably communicates to consumers a performance attribute that occurs over time and with repeated use of their vacuum cleaners.

---

[38] Suction was examined by measuring air flow and Air Watts.

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 34

Accordingly, NAD was concerned as to whether the disclosure was adequate to qualify the claim.[39] It is not unusual for a performance claim to be qualified with language indicating that the claim is based on laboratory testing or that the touted measure of performance occurs only under some limited set of conditions. While such qualifying language may, in some circumstances, be perfectly appropriate, NAD must assess the correlation between the test conditions and the real world experience of consumers to ensure that the performance claim is meaningful and not misleading to consumers.[40]

The support for the claim "No Loss of suction" consisted of a laboratory test, based on ASTM F558, which purportedly demonstrated that the suction power of the Fusion model remained constant in certain laboratory conditions. NAD was not persuaded that there was sufficient correlation between the laboratory testing and consumer experience in the real world to support a "No Loss of Suction Claim." NAD noted that limitations of the test to support claims for consumer use are addressed in the test itself. Section 4.1 of the Test, under the heading "Significance and Use," provides as follows:

> The test results allow the comparison of the maximum potential air power available for cleaning tasks when tested under the conditions of this method. The test results do not indicate the actual air power present during the cleaning process due to the effects of the various tools in use and surfaces being cleaned.[41]

NAD also noted that although the test was based on an industry test standard, ASTM F558, the test method conducted by the advertiser, the standard does not provide for measuring the suction of a cleaner in a dust-loaded condition. NAD appreciates that the advertiser sought to measure suction in a cleaner that was not in a new condition but was not persuaded that the protocol utilized by the advertiser, which involved dust loading the machine with 10 ounces of dirt composed of 70% mineral dust and 10% fibrous material, was representative of real world experience of consumers or a representative measure of how vacuum cleaners perform over time. NAD therefore determined that the claim "No Loss of Suction" was not adequately substantiated and recommended that the claim be discontinued.

*VI.    The Remaining Claims*

---

[39] The qualifying language appeared as follows: "Suction stays constant after picking up 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition composed of 70% mineral dust and 10% fibrous material." On the product packaging, the qualifying language appeared in a disclosure on a separate panel.

[40] The Valvoline Company (Zerex G-05 Extended Life Antifreeze) , Report #4375, *NAD Case Reports* (September 2005); Dow Chemical Company (Styrofoam Brand Insulation), Case # 4383, *NAD Case Reports* (August 2005); EuroPro-Corporation (Shark Bagless Stick Vacuum Cleaner, Case # 4216, *NAD Case Reports* (August 2004); Bausch & Lomb Incorporated (Renu), Case #4385, *NAD Case Reports* (August 2005).

[41] ASTM F558-03. In contrast, NAD observed that the test methodology for ASTM 608, which evaluates the dirt removal effectiveness of vacuum cleaners, specifically provides for a correlation with real world use by consumers:

> This test method provides an indication of the capability of the vacuum cleaner to remove embedded dirt from carpeting. This test method is based upon results of home cleaning tests so that, in most cases, a reasonable correlation exists between home and laboratory results. (Section 4.1).

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 35

*A. Dirt Disposal Claims*

The challenger also challenged the advertiser's description of its filter cleaning procedure for the WindTunnel vacuum as "no-touch" filter cleaning false, because in order to clean the paper filter, consumers must remove the filter by hand and spin it against an attached piece of plastic to remove the dust and dirt. The challenger also objected to the claim "No Mess" and "hygienic dirt disposal" because, argued the challenger, in order to empty the advertiser's vacuums' dirt cups, consumers must open the dirt cups and empty the loose dirt and dust into a garbage can, a process that may result in dirt flying into the hands and face of the consumer.

As set forth by the advertiser, the Self Propelled WindTunnel Bagless Upright employs a two-chamber dirt cup with a lid. The lid has a small knob to allow the consumer to rotate the filter prior to opening the lid. In the course of typical cleaning, a consumer turns the knob prior to opening the lid, causing the filter still inside the dirt cup to rotate against a piece of plastic that causes the dust and dirt to fall off the filter and into the container. The consumer may then open the lid with her thumb while holding the cup's handle and pour out the dust and debris.

NAD acknowledged that to ensure a thorough cleaning, a consumer may periodically need to remove the filter and tap it against a dustbin. Nevertheless, because the ordinary cleaning procedure does not require the consumer to come in contact with the filter, NAD determined that the advertiser established a reasonable basis for its use of the claim "no touch" filter cleaning. Similarly, NAD determined that the advertiser provided a reasonable basis for its claims "No Mess" and "hygienic dirt disposal." NAD appreciates that there remains a potential for messiness in cleaning a filter and emptying a dust bin and that the claim might not be supported in comparative context. NAD determined however, that the advertiser's dirt disposal claims, in a monadic context, were adequately supported.

*B. HEPA filter/allergen claims*

Dyson challenged the advertiser's claims of total allergen filtration, including the advertising claim "Allergen Filtration traps 100% of dust mites, ragweed and common grass pollens," and the claim packaging claim "Allergen Filtration traps 100% dust mites, 99.98% ragweed and common grass pollens." Although the advertiser stated that its Self Propelled WindTunnel bagless utilizes a cartridge filter that is certified to meet the HEPA criteria of 99.97% efficient at 0.3 microns[42], the claims are misleading, according to the challenger, because there is a significant difference between making a claim for a filter and for a vacuum cleaner as whole.

Although the advertiser established that the advertiser utilizes a cartridge filter that is certified to meet the HEPA criteria of 99.7% efficient at .3 microns, NAD determined that the advertiser's

---

[42] According to the advertiser, common pollen is generally between 15 and 25 microns. Dust mites are generally between 250 and 300 microns and even the dust mite allergens referred to by Dyson are generally between 10 and 20 microns. All of these allergens, the challenger noted, are significantly larger than 0.3 microns. Thus, the advertiser maintained, the HEPA filter on the Hoover will trap 100% of these allergens

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 36

claims of total allergen filtration were broader than could be supported by the evidence. NAD agreed with the challenger's contention that the filter capability is not the sole measure of a vacuum cleaner's ability to trap allergens and that the vacuum's sealing system and efficiency of its filter system may strongly influence a vacuum's capacity for trapping allergens and consequently, potential health benefits. Evidence submitted by the challenger indicated that the Hoover cleaners emit a significant quantity of dust, a result which may limit the ability of a HEPA filter to trap or remove allergens. Accordingly NAD recommended that the advertiser discontinue its allergen claims or alternatively, modify the claims to clearly indicate that they are claims limited to the component filter and not for the vacuum cleaner unit as a whole.

### C. Twin Chamber Bagless System Helps Maintain Maximum Performance

The challenger argued that the claim "Twin Chamber Bagless System helps maintain maximum cleaning power," which appears in the Sears brochure for the WindTunnel, implies that the WindTunnel does not lose suction. The challenger previously noted that WindTunnel was shown to lose significant suction power when tested in accordance with the IEC dust-loaded test. The advertiser maintained however, that the statement "Twin Chamber Bagless System helps maintain maximum cleaning power" does not imply that the WindTunnel does not ever lose suction. Suction power, argued the advertiser, is only one element of the cleaning performance of a vacuum cleaner. NAD agreed and determined that the claim "helps maintain maximum performance" does not communicate to the reasonable consumer that the vacuum never loses suction. Accordingly, NAD determined that the advertiser provided a reasonable basis for the claim.

### D. Cyclone Logo

The challenger also contended that the advertiser's use of cyclone logo, appearing in conjunction with cleaning performance claims for WindTunnel technology, gives rise to the impression that the cleaner uses "cyclone technology." Dyson argued that unlike its own cyclone filtration technology, the advertiser's WindTunnel technology has absolutely nothing to do with the vacuum's method of filtration and contributes little to the cleaning performance of the unit. NAD considered the advertiser's cleaning performance claim in Section IV of this decision and notes here that there was no evidence that the use of the cyclone logo conveys or contributes to any misimpression about the performance of the WindTunnel. Consequently, NAD found the advertiser had a reasonable basis for the use of the logo in its advertising.

**CONCLUSION:**

NAD concluded that the advertiser provided a reasonable basis for its cleaning superiority claims, provided that the advertiser clearly and conspicuously limit these claims to the vacuum cleaner's performance on carpeting. NAD also concluded that the challenged television commercial did not falsely disparage the Dyson vacuum, but that a certain hangtag advertisement conveyed the impression that Dyson was an ineffective vacuum cleaner. NAD therefore recommended that that advertisement be discontinued. NAD further determined that the claim

**THE HOOVER COMPANY**
**WindTunnel and Fusion Upright Vacuum Cleaners**
Page: 37

that the Fusion cleaner offers "No Loss of Suction" was not adequately supported by the evidence and NAD recommended that it be discontinued.

**ADVERTISER'S STATEMENT:**

Maytag Corporation ("Maytag") is pleased that NAD acknowledged that ASTM F608 is the only recognized industry standard test representing real life conditions found in American homes and agreed that the ASTM F608 testing submitted by Maytag provided a reasonable basis for it's Hoover WindTunnel™ and Hoover Fusion™ cleaning superiority claims. Maytag believes that consumers understand that cleaning superiority claims for upright vacuum cleaners apply to cleaning of carpeted surfaces in the context of the Maytag advertising. Notwithstanding, Maytag agrees to clarify its cleaning superiority claims (where necessary) to communicate that the claims apply only to cleaning of carpeted surfaces.

Maytag is also pleased that NAD agreed that the challenged television commercial conveyed a message of comparative superiority (which was substantiated by Maytag's F608 testing) and did not falsely disparage Dyson vacuum cleaners.

Maytag is also pleased that NAD determined that the "no touch filter" and other dirt disposal claims were adequately supported; that Maytag provided a reasonable basis for the claim that the WindTunnel's "Twin Chamber Bagless System helps maintain maximum cleaning power"; and that Maytag's use of the WindTunnel logo is not misleading.

Maytag agrees to address NAD's concerns regarding other claims at issue in the challenge in future advertising.

Maytag supports NAD and the self regulatory approach of the industry and appreciates the opportunity to participate in the process. (#4467 JF, closed 04/05/2006)

Exhibit I



manatt | phelps | phillips

**Jeffrey S. Edelstein**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4533
E-mail: jedelstein@manatt.com

May 10, 2006

Client-Matter: 27699-030

**BY HAND**

Jennifer Fried, Esq.
National Advertising Division
Council of Better Business Bureaus, Inc.
70 West 36th Street
New York, NY 10018

> **Re:    Advertising for WindTunnel and Fusion Upright Vacuum Cleaners**

Dear Ms. Fried:

On behalf of Dyson, Inc. ("Dyson"), this constitutes a compliance challenge regarding the failure of Maytag Corporation ("Maytag") to comply with NAD Case Report #4467 (April 2006) regarding advertising for its WindTunnel and Fusion Upright Vacuum Cleaners. Dyson was the challenger in that proceeding.

In its decision, NAD recommended that Maytag's superior cleaning claims for the WindTunnel be modified "to clearly and conspicuously disclose that its cleaning superiority claims are limited to carpet cleaning." NAD also found that Maytag's "no loss of suction" claim for the Fusion was not adequately substantiated and recommended that it be discontinued. Finally, NAD recommended that Maytag "discontinue its allergen claims or alternatively, modify the claims to clearly indicate that they are claims limited to the component filter and not for the vacuum cleaner as a whole." Contrary to Maytag's assurances to NAD in its Advertiser's Statement, Maytag has not made NAD's recommended modifications to its Web site located at www.hoover.com (the "Site").

Enclosed as Exhibit 1 are copies of pages from the Site that make the following claims for the WindTunnel:

- "The Hoover® Self propelled WindTunnel™ picks up 56% more dirt than Dyson."

- "With its advanced technology and power, the Self-Propelled WindTunnel™ bagless picks up more dirt than any other upright on the market."

- "Allergen filtration – traps 100% dust mites and their eggs and 99.98% of ragweed and common grass pollens."[1]

---

[1] Maytag continues to make this and similar broad allergen filtration claims for other products on the Site, such as the Tempo Widepath, the Bagged Tempo Widepath, the Bagless Tempo Widepath, and the Fold Away Widepath. Copies of these Web pages are enclosed as Exhibit 4.



**manatt**
manatt | phelps | phillips

Jennifer Fried, Esq.
May 10, 2006
Page 2

Enclosed as Exhibit 2 is a copy of Maytag's brochure for the WindTunnel, which is available on the Site, that makes the following claim for the Wind Tunnel:

- "The Hoover® Self propelled WindTunnel™ picks up 56% more dirt than Dyson."

Enclosed as Exhibit 3 is a copy of a page from the Site that makes the following claim for the Fusion:

- "Cyclonic technology offers powerful cleaning with no loss of suction."

Section 4.1(B) of the *NAD/NARB Procedures* requires than an advertiser, "after a reasonable amount of time, [make] a bona fide attempt to bring its advertising into compliance with NAD's recommendations." As the above claims illustrate, Maytag has not brought its advertising into compliance with NAD's recommendations. It is also our understanding that other advertising materials and product packaging that make these claims continue to be disseminated. Maytag's failure to comply with NAD's recommendations is especially egregious considering that Web sites can easily be revised in a matter of hours.

We request that NAD conduct a compliance investigation pursuant to Section 4.1 of the *NAD/NARB Procedures*. Maytag should be asked to submit copies of all advertising, packaging, and promotional materials for the WindTunnel and Fusion Upright vacuum cleaners in order for NAD to determine whether the same or similar claims are also still being made on the Site and in other media. In accordance with that Section, if NAD determines that Maytag has not brought its advertising for the WindTunnel and Fusion vacuum cleaners into compliance with NAD's recommendations and its representations in its Advertiser's Statement, NAD should (a) refer this matter to the appropriate government agency and (b) release information about the referral to the press, the public, and to the media in which the advertising has appeared, and report the referral in the next issue of NAD Case Reports.

Thank you for your prompt attention to this matter.

Sincerely,

*Jeffrey S. Edelstein*

Jeffrey S. Edelstein

JSE:lms
Enclosures
cc:   Shai Halivni, Esq.

80363294.3

# EXHIBIT 1

The Hoover Company

▷ Home ▷ Products ▷ Customer Service ▷ Innovations ▷ About Us ▷ Shop

## Time for Hoover™

**A HISTORY OF INNOVATION**

This is the very first Hoover, the Model O invented in 1907 by Murray Spangler, who was a janitor in a local department store.

LEARN MORE

**FIND PARTS FOR YOUR HOOVER**

Model number:

Part number:

SUBMIT

**NEED SOME HELP?**

Looking for a manual or instructions on how to replace your belt? Find the answer to these questions and many more.

GET HELP

UPRIGHTS | CANISTERS | FLOOR MATS | SPEC ALTY | CENTRAL VAC | STEAM VACS



**INTRODUCING THE WORLD'S FIRST SPORT UTILITY VACUUM.**

**Hoover Self Propelled WindTunnel™ Upright**

The Hoover® Self Propelled WindTunnel™ pickups up 56% more dirt than Dyson.

These results are based on ASTM International Test F608, the only recognized test representing real-life conditions found in American homes.

Find out more!

**Hoover Self Propelled WindTunnel™ Ultra Upright**

Rated #1 by a leading consumer magazine.

Self-Propelled in Forward and Reverse directions. Dirt stays in the Filtrete™ HEPA Filter bag– part of the highly efficient Filtrete™ Filtration System from 3M.

Find out more!

**Product Registration**

**Buy Parts and Accessories Online**

Need parts or accessories for your Hoover product? Go for the convenience and efficiency of online shopping.

View parts or accessories.

▸ Copyright Notice ▸ Contact Us

▸ Product Safety Recall ▸ Site Index ▸ Search ▸ Service / Parts Locator

▸ Privacy Policy ▸ Terms of Service

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.



GOOD HOUSEKEEPING

5/10/2006



HOOVER

▷ Home ▷ Products ▷ Customer Service ▷ Innovations ▷ About Us ▷ Shop

UPRIGHTS • DEEP CLEANERS • HARD FLOOR CLEANERS • CANISTERS • SPECIALTY • CENTRAL VAC. • COMMERCIAL • CLEANING SOLUTIONS ▸

VIEW FEATURES:

- QUICK START
- FAQ
- BUY ONLINE

- COMPARE
- PARTS

SELF PROPELLED BAGLESS
WINDTUNNEL™

THE HOOVER® SELF PROPELLED WINDTUNNEL™
PICKS UP 56% MORE DIRT THAN DYSON.

These results are based on NSTM International Test, P602, the only recognized test representing realistic conditions found in diverse homes.

PRINT EXCHANGE


GOOD HOUSEKEEPING

» Product Safety Recall  » Site Index  » Search  » Service / Parts Locator        » Privacy Policy  » Terms of Service

» Copyright Notice  » Contact Us

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.

Hoover® Self Propelled WindTunnel™ Bagless Vacuum



**PDF Download Specifications**

# Powerful

Want to be assured that your carpet is truly clean? With its advanced technology and power, the Self-Propelled WindTunnel™ Bagless picks up more dirt than any other upright on the market.







## 1 12-Amp Motor

Powerful Hoover®-Designed 12-AMP motors are combined with patented Hoover® Cleaning technologies to provide superior cleaning performance.

## 2 Patented WindTunnel™ Technology

Patented WindTunnel™ Technology uses computer designed air ducts to provide a powerful dual air stream, increasing the amount of dirt you can remove from your carpeting. more...

## 3 Embedded Dirt FINDER™ System

The Embedded Dirt FINDER™ (EDF) helps you find the dirt you cannot see. more...

## 4 Dual Brush Cleaning

The dual brush agitator with brush edge-cleaning whisks dust, dirt and lint into the air stream.

## 5 Cleaning Performance

Hoover Cleaning Performance™ = 31.0. This rating measures the true cleaning performance built into all Hoover® uprights.

Bagged WindTunnel™

Page 1 of 1

◻ Home ◻ Products ◻ Customer Service ◻ Innovations ◻ About Us ◻ Shop

| UPRIGHTS ▪ | DEEP CLEANERS ▪ | HARD FLOOR CLEANERS ▪ | CANISTERS ▪ | SPECIALTY ▪ | CENTRAL VAC. ▪ | COMMERCIAL ▪ | CLEANING SOLUTIONS ▪ |

**BAGGED FILTRATION UPRIGHTS:**

» Bagged Tempo™ Widepath™

» Bagged WindTunnel™

» Self Propelled WindTunnel™
Ultra Upright
U6439900
U6454900

» Tempo™ Widepath™

◁ PREV          NEXT ▷





Model number: U5468900

# Bagged WindTunnel™

- Embedded DirtFinder™ Display alerts the user to areas of the carpet that may need more cleaning attention
- 12 amp motor provides powerful cleaning performance
- Patented Wind Tunnel® Technology that produces excellent cleaning effectiveness
- Exclusive covered up-front tool storage places the tools within easy reach
- Removable, washable final filter
- Edge groomers to remove dirt from carpet near baseboards and furniture
- 15" cleaning width helps get the job done
- Dual brush agitator
- Tool set included: attached hose, 2 extension wands, dusting brush, upholstery nozzle, and crevice tool
- 31 ft. cord for large area vacuuming
- Allergen filtration - traps 100% dust mites and their eggs and 99.98% of ragweed and common grass pollens
- Expected retail range: $129.99 - $149.99

▸ COMPARE
PARTS
USER GUIDE
QUICKSTART
FAQ

» Copyright Notice  » Contact Us          » Product Safety Recall  » Site Index  » Search  » Service / Parts Locator          » Privacy Policy  » Terms of Service

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.



http://www.hoover.com/db/xq/asp.hvrProductMain/CatID.1/ProdID.249/ModID.1927/qx/BaggedWindTunnel.htm          5/10/2006

# EXHIBIT 2



The Hoover  Self Propelled WindTunnel picks up 56% more dirt than Dyson.

These results are based on ASTM International Test, F608, the only recognized test representing real-life conditions found in American homes.

# Self Propelled WindTunnel™ Bagless Upright Vacuum

## Product Features:

(a) **Self Propelled**
Self propelled in forward and reverse. Makes cleaning nearly effortless.

(b) **Embedded Dirt Finder™**
Sensing technology that tells you when your carpet is clean - gives you the confidence to know your job is done. Carpet is clean when light turns green!™

(c) **HEPA Filter with Allergen Filtration**
Long lasting 3-year HEPA filter with allergen filtration traps 100% of dust mites, ragweed and common grass pollen.

(d) **Pet Hair Cleaning Tool**
Powerful WindTunnel Technology and rotating brushes easily remove pet hair and dirt from stairs and upholstery.

(e) **Twin Chamber™ Bagless System**
Helps maintain maximum performance. No need to buy bags.

(f) **Edge Groomers**
Dual edge groomers provide edge to edge cleaning.

(g) **Brush Roll Stop**
Brush automatically stops when using tools. Manual brush shut-off for hard floor cleaning.

(a) Self Propelled  (e) Twin Chamber™ Bagless System  (d) Pet Hair Cleaning Tool  (c) HEPA Filter with Allergen Filtration

## Patented WindTunnel™ Technology

Patented WindTunnel™ Technology uses computer designed dual air ducts and a vertical air pattern that direct the airflow along the front and rear of the agitator cavity and across the full width of the nozzle. They not only lift the dirt but trap it so it won't fall back into your carpet.

EXHIBIT 3

Fusion™ Cyclonic Bagless Upright

UPRIGHTS ▸ | DEEP CLEANERS ▸ | HARD FLOOR CLEANERS ▸ | CANISTERS ▸ | SPECIALTY ▸ | CENTRAL VAC. ▸ | COMMERCIAL ▸ | CLEANING SOLUTIONS ▸

▫ Home ▫ Products ▫ Customer Service ▫ Innovations ▫ About Us ▫ Shop

BAGLESS FILTRATION UPRIGHTS:

▸ Bagless Tempo™ Widepath™
U5155900
U5156900

▸ Elite™ Rewind™ Upright Bagless

▸ Fold Away™ Widepath™
U5170900
U5172900
U5175900
U5179900

▸ Fusion™ Cyclonic Bagless Upright

▸ Hoover EmPower™
U5262910
U5265900
U5268970
U5269900

▸ Hoover 2™ Bagless Upright
U9125900
U9145900

▸ Savvy™
U8171900
U8174900
U8181900

▸ Self Propelled WindTunnel™ Bagless
U6630900
U6634900

▸ WindTunnel™ Bagless Upright
U5753900
U5760900



PREV | NEXT

Model number: U5180900

## Fusion™ Cyclonic Bagless Upright

- Cyclonic technology offers powerful cleaning with no loss of suction*
- Super-powerful cyclonic air movement - spins dirt and dust away
- No filters to replace - permanent washable filters last the life of your vacuum
- Adjustable Handle height - telescoping handle adjusts to varying heights for convenient use and storage
- 32' Cleaning Reach - with a 24' power cord and a 8' stretch hose, you can vacuum several rooms without having to reposition the power plug
- On-board tool set included - everything you need to reach every corner of the house - including a pet hair cleaning tool, two 14" extension wands, crevice tool and dusting brush for delicate surfaces
- Powered hand tool - brings power right to the spot you're cleaning - like stairs and upholstery
- E-Z Access™ Belt Change
- No filters to replace - no need to buy or replace filters, ever. Simply remove, clean and use again
- Extension wands - two extension wands provide more than 10' of reach with the stretch hose for cleaning ceiling corners and around high windows
- 15" Widepath™ Nozzle - one of the widest cleaning paths available, so you'll finish the job faster
- Available exclusively at Wal-Mart
- *Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using ASTM F558 test method and a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material.

COMPARE
PARTS
USER GUIDE
QUICKSTART
FAQ

- Brochure




Fusion™ Cyclonic Bagless Upright

» Copyright Notice  » Contact Us          » Product Safety Recall  » Site Index  » Search  » Service / Parts Locator          » Privacy Policy  » Terms of Service

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.

GOOD HOUSEKEEPING

EXHIBIT 4

UPRIGHTS • DEEP CLEANERS • HARD FLOOR CLEANERS • CANISTERS • SPECIALTY • CENTRAL VAC. • COMMERCIAL • CLEANING SOLUTIONS •

□ Home □ Products □ Customer Service □ Innovations □ About Us □ Shop

BAGGED FILTRATION
UPRIGHTS:

» Bagged Tempo™ Widepath™

» Bagged WindTunnel™

» Self Propelled WindTunnel™
  Ultra Upright            U6439900
                           U6454900

» Tempo™ Widepath™

[PREV]  [NEXT]







Model number: U5145900

## Tempo™ Widepath™

- Allergen filtration traps 100% dust mites, 99.98%
  ragweed and common grass pollens
- 15" cleaning path - gets the job done quickly
- Powerful 12 amp motor provides powerful cleaning
  performance
- Filter bag check for optimum cleaner performance
- Brilliant headlight illuminates cleaning path
- On-board tool set places the attachments
  conveniently within reach
- Expected retail range: $59.99 - $79.99

[COMPARE]
[USER GUIDE]
[FAQ]

» Copyright Notice  » Contact Us        » Product Safety Recall  » Site Index  » Search  » Service / Parts Locator        » Privacy Policy  » Terms of Service

a division of **MAYTAG**

GOOD HOUSEKEEPING

© 1998-2006 The HOOVER Company. All rights reserved.

□ Home □ Products □ Customer Service □ Innovations □ About Us □ Shop

| UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC. ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾ |

**BAGGED FILTRATION UPRIGHTS:**

» Bagged Tempo™ Widepath™

» Bagged WindTunnel™

» Self Propelled WindTunnel™
Ultra Upright
U6439900
U6454900

» Tempo™ Widepath™

‹ PREV     NEXT ›

Model number: U5140900

## Bagged Tempo™ Widepath™



- Allergen filtration - traps 100% dust mites, 99.98% ragweed and common grass pollens
- Powerful 12 amp motor - provides powerful cleaning performance
- Filter bag check for optimum cleaner performance
- 15" cleaner width - gets the job done quickly
- On-board tool set places the attachments conveniently within reach
- Expected retail range: $59.99 - $79.99

COMPARE

PARTS

USER GUIDE

FAQ

» Copyright Notice » Contact Us     » Product Safety Recall » Site Index » Search » Service / Parts Locator     » Privacy Policy » Terms of Service

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.

GOOD HOUSEKEEPING

Bagless Tempo™ Widepath™

▷ Home ▷ Products ▷ Customer Service ▷ Innovations ▷ About Us ▷ Shop

| UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC. ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾ |

**BAGLESS FILTRATION UPRIGHTS:**

» Bagless Tempo™ Widepath™
U5155900
U5156900

» Elite™ Rewind™ Upright Bagless

» Fold Away™ Widepath™
U5170900
U5172900
U5175900
U5179900

» Fusion™ Cyclonic Bagless Upright

» Hoover EmPower™
U5262910
U5265900
U5268970
U5269900

» Hoover Z™ Bagless Upright
U9125900
U9145900

» Savvy™
U8171900
U8174900
U8181900

» Self Propelled WindTunnel™ Bagless
U6630900
U6634900

» WindTunnel™ Bagless Upright
U5753900
U5760900

Model number: U5155900

# Bagless Tempo™ Widepath™

- Easy empty dirt cup - no bags to buy or replace
- Powerful 12 amp motor - provides powerful cleaning performance
- Allergen filtration
- Brilliant headlight illuminates cleaning path
- Wide 15" cleaning path - gets the job done quickly
- On-board tool set places the attachments conveniently within reach
- Expected retail range: $59.99 - $79.99

COMPARE
PARTS
USER GUIDE
FAQ

Page 2 of 2

Bagless Tempo™ Widepath™



» Copyright Notice » Contact Us         » Product Safety Recall » Site Index » Search » Service / Parts Locator         » Privacy Policy » Terms of Service

a division of **MAYTAG**



© 1998-2006 The HOOVER Company. All rights reserved.

Fold Away™ Widepath™

◻ Home ◻ Products ◻ Customer Service ◻ Innovations ◻ About Us ◻ Shop

| UPRIGHTS ▪ | DEEP CLEANERS ▪ | HARD FLOOR CLEANERS ▪ | CANISTERS ▪ | SPECIALTY ▪ | CENTRAL VAC. ▪ | COMMERCIAL ▪ | CLEANING SOLUTIONS ▪ |

**BAGLESS FILTRATION UPRIGHTS:**

» Bagless Tempo™ Widepath™
U5155900
U5156900

» Elite™ Rewind™ Upright Bagless

» Fold Away™ Widepath™
U5170900
U5172900
U5175900
U5179900

» Fusion™ Cyclonic Bagless Upright

» Hoover EmPower™
U5262910
U5265900
U5268970
U5269900

» Hoover Z™ Bagless Upright
U9125900
U9145900

» Savvy™
U8171900
U8174900
U8181900

» Self Propelled WindTunnel™ Bagless
U6630900
U6634900

» WindTunnel™ Bagless Upright
U5753900
U5760900

Model number: U5175900

## Fold Away™ Widepath™

- Bonus Hand Tool - Perfect for pet hair, stairs and upholstery
- No Assembly Required - Just fold up the handle and it's ready to clean. Handle folds down for easy storage.
- Lightweight - Easy to carry and clean stairs
- Triple-Stretch Hose - Provides extra-long reach
- Bagless - E-Z Empty™™ Dirt Cup - No bags needed
- Allergen Filtration - Traps 100% dust mites, 99.98% ragweed and common grass pollens
- 12 AMP Motor - Powerful but quiet
- 15" Cleaner Width - For fast cleaning
- On-Board Tool Set - places the attachments conveniently within reach
- Full One Year Warranty
- Expected Retail Range: $79.99 - $99.99

COMPARE
PARTS
USER GUIDE
FAQ



Fold Away™ Widepath™



» Copyright Notice  » Contact Us          » Product Safety Recall  » Site Index  » Search  » Service / Parts Locator          » Privacy Policy  » Terms of Service

a division of **MAYTAG**

© 1998-2006 The HOOVER Company. All rights reserved.

GOOD HOUSEKEEPING



**manatt**
manatt | phelps | phillips

**Jeffrey S. Edelstein**
Manatt, Phelps & Phillips, LLP
Direct Dial: (212) 790-4533
E-mail: jedelstein@manatt.com

May 16, 2006

Client-Matter: 27699-030

**BY HAND AND E-MAIL**

Jennifer Fried, Esq.
National Advertising Division
Council of Better Business Bureaus, Inc.
70 West 36th Street
New York, NY 10018

Re:    Advertising for WindTunnel and Fusion Upright Vacuum Cleaners

Dear Ms. Fried:

We are writing as a follow-up to the compliance challenge we submitted on May 10, 2006 on behalf of Dyson, Inc. ("Dyson") about the failure of Maytag Corporation ("Maytag") to comply with NAD Case Report #4467 (April 2006) regarding advertising for its WindTunnel and Fusion Upright Vacuum Cleaners. We appreciate that NAD opened its compliance investigation promptly on May 11, 2006.

After we submitted the letter to you, Maytag made some modifications to the Hoover Web site. However, these modifications do not constitute compliance with the NAD decision.

First, Maytag made a minor modification to the claim on its Web site for the Fusion that "Cyclonic technology offers powerful cleaning with no loss of suction." This claim was modified to state:

> Cyclonic technology offers powerful cleaning with no loss of suction*
> *Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability**
>
> ***Suction stays constant for up to 10 ounces of dirt using a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material. No testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary.

A copy of the Web page with this revised claim is attached as Exhibit 5.

Maytag modified the claim by adding the disclaimers "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability" and "No testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary." Maytag also modified the disclaimer "Suction stays constant after picking up 10 ounces of dirt,

7 Times Square, New York, New York 10036  Telephone: 212.790.4500  Fax: 212.790.4545

Albany | Los Angeles | Mexico City | New York | Orange County | Palo Alto | Sacramento | Washington, D.C.



**manatt**
manatt | phelps | phillips

Jennifer Fried, Esq.
May 16, 2006
Page 2

as tested by an independent laboratory using ASTM F558 test method and a dirt composition composed of 70% mineral dust and 10% fibrous material." to "Suction stays constant for up to 10 ounces of dirt using a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material."

As discussed in our May 10 letter, NAD found Maytag's "no loss of suction" claim for the Fusion to be unsubstantiated and recommended that it be discontinued. Not only do Maytag's minor revisions not comply with NAD's recommendations, but they represent a disingenuous attempt to comply at best.

Rather than discontinuing the unsubstantiated "no loss of suction" claim, Maytag simply attempted to qualify this false claim with a two-part disclaimer. This is not sufficient. It is well established NAD precedent that disclosures cannot be used to cure a false claim. *See, e.g., Windjammer Barefoot Cruises, Ltd./Bring A Friend – Sail Free Offer*, NAD Case Report # 3734 (Feb. 2001); *Thane International/BioSlim Weight Loss Program*, NAD Case Report #3557 (June 1999).

Moreover, the disclaimer refers to the Fusion's ability to clean carpet and whether there is a correlation between suction performance and carpet cleaning. Such information is totally irrelevant. Although NAD recommended that Maytag limit its unqualified superior cleaning claims for the WindTunnel to carpet, this recommendation did not apply to Maytag's "no loss of suction" claim for the Fusion. NAD clearly recommended that Maytag discontinue this false claim.

Rather than trying to correct its false advertising claim, Maytag's revised disclaimer appears to be a transparent attempt to attack and discredit Dyson's "no loss of suction" claims for its vacuum cleaners. Maytag's disclaimer now states: "No testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary." As NAD knows, Maytag challenged a number of advertising claims, including a "no loss of suction" claim, for Dyson vacuums. These challenges were moved from the NAD forum and are counterclaims in a pending patent infringement lawsuit filed by Dyson.

Second, Maytag deleted the word "allergen" from its filtration claim for the WindTunnel. Maytag changed the claim from "Allergen filtration – traps 100% dust mites and their eggs and 99.8% of ragweed and common grass pollens" (Exhibit 1 to compliance challenge letter) to "Filtration traps 100% dust mites and their eggs and 99.98% of ragweed and common grass



**manatt**
manatt | phelps | phillips

Jennifer Fried, Esq.
May 16, 2006
Page 3

pollens." A copy of the Web page with the revised claim is attached as Exhibit 6.[1] This modification does not comply with the NAD decision.

NAD determined that the claim that the Hoover WindTunnel "traps 100% dust mites, 99.98% ragweed and common grass pollens" was unsubstantiated because "the advertiser's claims of total allergen filtration were broader than could be supported by the evidence. NAD agreed with the challenger's contention that the filter capability is not the sole measure of a vacuum cleaner's ability to trap allergens and that the vacuum's sealing system and efficiency of its filter system may strongly influence a vacuum's capacity for trapping allergens and consequently, potential health benefits." NAD found that "Evidence submitted by the challenger indicated that the Hoover cleaners emit a significant quantity of dust, a result which may limit the ability of a HEPA filter to trap or remove allergens."

Therefore, NAD "recommended that the advertiser discontinue its allergen claims or alternatively, modify the claims to clearly indicate that they are claims limited to the component filter and not for the vacuum cleaner unit as a whole." Simply deleting the word "allergen" does not comply with these recommendations. By stating "Filtration traps 100% dust mites and their eggs and 99.98% of ragweed and common grass pollens," Maytag continues to make claims of total allergen filtration for the vacuum cleaner unit as a whole, contrary to NAD's recommendations.

Maytag has taken six weeks to make any modification to its Web site, even though such changes could be made in a matter of hours. As the above claims clearly illustrate, Maytag has not made a bona fide attempt to discontinue its false claims for the Fusion and the WindTunnel and bring its advertising into compliance with NAD's recommendations. We request that NAD add the revised claims to its compliance investigation pursuant to Section 4.1 of the *NAD/NARB Procedures*. Maytag should be asked to submit copies of all advertising, packaging, and promotional materials for the WindTunnel and Fusion Upright vacuum cleaners in order for NAD to determine whether the same or similar claims are also still being made on the Site and in other media. In accordance with that Section, if NAD determines that Maytag has not brought its advertising for the WindTunnel and Fusion vacuum cleaners into compliance with NAD's recommendations and its representations in its Advertiser's Statement, NAD should (a) refer this matter to the appropriate government agency and (b) release information about the referral to the press, the public, and the media in which the advertising has appeared, and report the referral in the next issue of NAD Case Reports.

---

[1] Maytag made the same change to the filtration claims for other products on the Site, such as the Tempo Widepath, the Bagged Tempo Widepath, the Bagless Tempo Widepath, and the Fold Away Widepath. Copies of the revised Web pages are attached as Exhibit 7.



**manatt**
manatt | phelps | phillips

Jennifer Fried, Esq.
May 16, 2006
Page 4

Thank you for your prompt attention to this matter.

Sincerely,

*Jeffrey S. Edelstein*

Jeffrey S. Edelstein

JSE:lms
Enclosures
cc:  Shai Halivni, Esq.

80363800.2

# EXHIBIT 5

▷ Home ▷ Products ▷ Customer Service ▷ Innovations ▷ About Us ▷ Shop

UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC. ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾

**BAGLESS FILTRATION UPRIGHTS:**

» Bagless Tempo™ Widepath™
U5155900
U5156900

» Elite™ Rewind™ Upright Bagless

» Fold Away™ Widepath™
U5170900
U5172900
U5175900
U5175900

» Fusion™ Cyclonic Bagless Upright

» Hoover EmPower™
U5262910
U5265900
U5268870
U5269900

U8145900

» Hoover Z™ Bagless Upright
U8171900
U8174900
U8181900

» Savvy™

» Self Propelled WindTunnel™ Bagless
U6030900
U6634900

» WindTunnel™ Bagless Upright
U5753900
U5760900




PREV.    NEXT ▷

Model number: U5180900

# Fusion™ Cyclonic Bagless Upright

COMPARE
PARTS
USER GUIDE
QUICK START
FAQ

- Brochure

- Cyclonic technology offers powerful cleaning with no loss of suction* *Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability**
- Super-powerful cyclonic air movement - spins dirt and dust away
- No filters to replace - permanent washable filters last the life of your vacuum
- Adjustable Handle height - telescoping handle adjusts to varying heights for convenient use and storage
- 32' Cleaning Reach - with a 24' power cord and a 8' stretch hose, you can vacuum several rooms without having to reposition the power plug
- On-board tool set included - everything you need to reach every corner of the house - including a pet hair cleaning tool, two 14" extension wands, crevice tool and dusting brush for delicate surfaces
- Powered hand tool - brings power right to the spot you're cleaning - like stairs and upholstery
- E-Z Access™ Belt Change
- No filters to replace - no need to buy or replace filters, ever. Simply remove, clean and use again
- Extension wands - two extension wands provide more than 10' of reach with the stretch hose for cleaning ceiling corners and around high windows
- 15' Widepath™ Nozzle - one of the widest cleaning paths available, so you'll finish the job faster
- Available exclusively at Wal-Mart
- ***Suction stays constant for up to 10 ounces of dirt using a dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material. No testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary.

# Fusion™ Cyclonic Bagless Upright

» Copyright Notice » Contact Us

» Product Safety Recall » Site Index » Search » Service / Parts Locator

» Privacy Policy » Terms of Service

a division of **MAYTAG**



GOOD HOUSEKEEPING

© 1998-2006 The HOOVER Company. All rights reserved.

# EXHIBIT 6

Bagged WindTunnel™                                                                                                          Page 1 of 1





□ Home □ Products □ Customer Service □ Innovations □ About Us □ Shop

UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC. ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾

**BAGGED FILTRATION UPRIGHTS:**

» Bagged Tempo™ Widepath™

» Bagged WindTunnel™

» Self Propelled WindTunnel™ Ultra Upright
U6439900
U6454900

» Tempo™ Widepath™

PREV.          NEXT



Model number: U5468900

# Bagged WindTunnel™

- Embedded DirtFinder™ Display alerts the user to areas of the carpet that may need more cleaning attention
- 12 amp motor provides powerful cleaning performance
- Patented Wind Tunnel® Technology that produces excellent cleaning effectiveness
- Exclusive covered up-front tool storage places the tools within easy reach
- Removable, washable final filter
- Edge groomers to remove dirt from carpet near baseboards and furniture
- 15" cleaning width helps get the job done
- Dual brush agitator
- Tool set included: attached hose, 2 extension wands, dusting brush, upholstery nozzle, and crevice tool
- 31 ft. cord for large area vacuuming
- Filtration traps 100% dust mites and their eggs and 99.98% of ragweed and common grass pollens
- Expected retail range: $129.99 - $149.99

· COMPARE

PARTS

USER GUIDE

QUICKSTART

FAQ

» Copyright Notice  » Contact Us          » Product Safety Recall » Site Index » Search  » Service  Parts Locator          » Privacy Policy » Terms of Service

a division of **MAYTAG**



GOOD HOUSEKEEPING

© 1998-2006 The HOOVER Company. All rights reserved.

# EXHIBIT 7

Tempo™ Widepath™                                                                    Page 1 of 1





□ Home □ Products □ Customer Service □ Innovations □ About Us □ Shop

UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾

**BAGGED FILTRATION UPRIGHTS:**

» Bagged Tempo™ Widepath™

» Bagged WindTunnel™

» Self Propelled WindTunnel™ Ultra Upright
U6439900
U6454900

» Tempo™ Widepath™

PREV.     NEXT



Model number: U5145900

# Tempo™ Widepath™

- Filtration traps 100% dust mites, 99.98% ragweed and common grass pollens
- 15" cleaning path - gets the job done quickly
- Powerful 12 amp motor provides powerful cleaning performance
- Filter bag check for optimum cleaner performance
- Brilliant headlight illuminates cleaning path
- On-board tool set places the attachments conveniently within reach
- Expected retail range: $59.99 - $79.99

COMPARE
USER GUIDE
FAQ

» Copyright Notice  » Contact Us        » Product Safety Recall  » Site Index  » Search  » Service / Parts Locator        » Privacy Policy  » Terms of Service

a division of MAYTAG


GOOD HOUSEKEEPING

© 1998-2006 The HOOVER Company. All rights reserved.

Bagless Tempo™ Widepath™                                                                    Page 1 of 1



▫ Home ▫ Products ▫ Customer Service ▫ Innovations ▫ About Us ▫ Shop

UPRIGHTS ▾   DEEP CLEANERS ▾   HARD FLOOR CLEANERS ▾   CANISTERS ▾   SPECIALTY ▾   CENTRAL VAC. ▾   COMMERCIAL ▾   CLEANING SOLUTIONS ▾

## BAGLESS FILTRATION UPRIGHTS:

» Bagless Tempo ™ Widepath™
        U5155900
        U5156900

» Elite ™ Rewind™ Upright Bagless

» Fold Away™ Widepath™
        U5170900
        U5172900
        U5175900
        U5179900

» Fusion™ Cyclonic Bagless Upright

» Hoover EmPower™
        U5262910
        U5265900
        U5268970
        U5269900

» Hoover Z™ Bagless Upright
        U9125900
        U9145900

» Savvy™
        U8171900
        U8174900
        U8181900

» Self Propelled WindTunnel™ Bagless
        U6630900
        U6634900

» WindTunnel™ Bagless Upright
        U5753900
        U5760900

PREV.          NEXT



Model number: U5155900

# Bagless Tempo™ Widepath™

- Easy empty dirt cup - no bags to buy or replace
- Powerful 12 amp motor - provides powerful cleaning performance
- Brilliant headlight illuminates cleaning path
- Wide 15" cleaning path - gets the job done quickly
- On-board tool set places the attachments conveniently within reach
- Expected retail range: $59.99 - $79.99

COMPARE

PARTS

USER GUIDE

FAQ

» Copyright Notice » Contact Us          » Product Safety Recall ^ Site Index » Search » Service / Parts Locator          » Privacy Policy » Terms of Service

a division of **MAYTAG**



GOOD HOUSEKEEPING

© 1998-2006 The HOOVER Company. All rights reserved.





▫ Home ▫ Products ▫ Customer Service ▫ Innovations ▫ About Us ▫ Shop

UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾

**BAGGED FILTRATION UPRIGHTS:**

» Bagged Tempo™ Widepath™

» Bagged WindTunnel™

» Self Propelled WindTunnel™ Ultra Upright
          U6439900
          U6454900

» Tempo™ Widepath™

PREV.          NEXT



Model number: U5140900

# Bagged Tempo™ Widepath™

- Filter traps 100% dust mites, 99.98% ragweed and common grass pollens
- Powerful 12 amp motor - provides powerful cleaning performance
- Filter bag check for optimum cleaner performance
- 15" cleaner width - gets the job done quickly
- On-board tool set places the attachments conveniently within reach
- Expected retail range: $59.99 - $79.99

COMPARE

PARTS

USER GUIDE

FAQ

» Copyright Notice  » Contact Us        » Product Safety Recall  » Site Index  » Search  » Service ↕ Parts Locator        » Privacy Policy  » Terms of Service

a division of **MAYTAG**



GOOD HOUSEKEEPING

© 1998-2006 The HOOVER Company. All rights reserved.

Fold Away™ Widepath™                  Page 1 of 1





▫ **Home** ▫ **Products** ▫ **Customer Service** ▫ **Innovations** ▫ **About Us** ▫ **Shop**

| UPRIGHTS ▾ | DEEP CLEANERS ▾ | HARD FLOOR CLEANERS ▾ | CANISTERS ▾ | SPECIALTY ▾ | CENTRAL VAC. ▾ | COMMERCIAL ▾ | CLEANING SOLUTIONS ▾ |

**BAGLESS FILTRATION UPRIGHTS:**

..........................................

» **Bagless Tempo™ Widepath™**
         U5155900
         U5156900

..........................................

» **Elite™ Rewind™ Upright Bagless**

..........................................

» **Fold Away™ Widepath™**
         U5170900
         U5172900
         U5175900
         U5179900

..........................................

» **Fusion™ Cyclonic Bagless Upright**

..........................................

» **Hoover EmPower™**
         U5262910
         U5265900
         U5268970
         U5269900

..........................................

» **Hoover Z™ Bagless Upright**
         U9125900
         U9145900

..........................................

» **Savvy™**
         U8171900
         U8174900
         U8181900

..........................................

» **Self Propelled WindTunnel™ Bagless**
         U6630900
         U6634900

..........................................

» **WindTunnel™ Bagless Upright**
         U5753900
         U5760900

..........................................

**PREV.**        **NEXT**

Model number: U5170900

# Fold Away™ Widepath™

- Fully assembled - just lift the fold-down handle and this cleaner is ready to go right out of the box
- Easy empty dirt cup - no bags to buy or replace
- Powerful 12 amp motor - provides powerful cleaning performance
- Filters out 100% of dust mites and 99.98% of ragweed and common grass poliens
- 15" cleaner width - getrs the job done faster
- On board tool set places the attachments conveniently within reach
- Expected retail range: $69.99 - $89.99

· COMPARE

⌕ PARTS

· USER GUIDE

· FAQ

» Copyright Notice  » Contact Us     » Product Safety Recall  » Site Index  » Search  » Service / Parts Locator     » Privacy Policy  » Terms of Service

a division of **MAYTAG**



© 1998-2006 The HOOVER Company. All rights reserved.