UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DYSON, INC., <br><br> Plaintiff, <br><br> v. <br><br> MAYTAG CORPORATION, <br><br> Defendant. | Civil Action No. 06-CV-6576(DC) |

**DECLARATION OF GORDON THOM**

I, Gordon Thom, declare and state as follows:

1. I am currently employed as President of Dyson, Inc. ("Dyson"), a position I have held for about eight months. I joined the parent company in 1998, and since then have held numerous positions, including Chairman of Dyson K.K. in Japan, and International Managing Director of Dyson Ltd. Earlier in my career, I held positions with the British Foreign and Commonwealth Office in Tokyo and New Delhi, among other locations.

2. As President of Dyson, I am in charge of the company's U.S. operations, including sales, marketing and distribution. Through my position, I have gained intimate familiarity with sales in the United States of residential vacuum cleaners, and what we understand to be the impact of marketing campaigns by Dyson and Dyson's competitors on Dyson's sales performance in the United States. I provide the following testimony based on my personal knowledge and my inquiry of those responsible within the company for obtaining such information, except where stated on information and belief.

3.  Both Dyson and Maytag compete in the United States market for sales of upright residential vacuum cleaners. Other competitors in this category include Dirt Devil, Bissell and Eureka.

4.  Dyson first entered the United States market in 2002, and has enjoyed considerable commercial success. Since the U.S. launch of Dyson vacuum cleaners, Dyson vacuums have increased sales in a business that had been previously dominated by Hoover.

5.  Dyson markets its upright vacuum cleaners as the only vacuum cleaner that "Doesn't lose suction." Since its U.S. launch, Dyson has widely advertised this "No Loss of Suction" as a significant point of difference.

6.  Consumers will use a vacuum cleaner for a period of years, and then will replace it. A part of Dyson's growth in the U.S. upright residential vacuum cleaner business has depended on consumers "trading up" from their older products to new, premium priced and technologically-advanced vacuums.

7.  On information and belief, Dyson's share of U.S. residential upright vacuum cleaner sales (as measured by NPD Houseworld, in dollar volume sales, based on three month data) first surpassed that of Maytag/Hoover (the previous market leader) in December, 2004. Since that time, Dyson's dollar volume sales of residential upright vacuum cleaners have consistently exceeded those of Maytag/Hoover.

8.  In the most recent three month period ending June 2006, Dyson was the category leader with a 25.8 share of the upright category, based on dollar volume sales. Maytag/Hoover was in second place, with a 14.7 share.

9.  Based on these recent figures, Dyson and Maytag together account for 40.5% of the market share of upright vacuum cleaners in the United States.

10. Dyson and Maytag/Hoover are now and have been engaged in fierce competition for new customers and for customers of each others' products who may be looking to purchase a new (or additional) vacuum cleaner.

11. In May 2005, Maytag Corporation launched a new brand of vacuum under the name "Hoover Fusion." On the Hoover Fusion package and website, Maytag claimed and still claims that the Hoover Fusion has "No Loss of Suction."

12. In or around May of 2006, Maytag launched a highly similar product to the Fusion called the "Maytag Legacy," for which it also claims "No Loss of Suction."

13. I understand that the National Advertising Division ("NAD") of the Council of Better Business Bureaus has referred Hoover's false advertising of "No Loss of Suction" to the FTC for possible enforcement under federal false advertising laws. While Dyson awaits the outcome of any investigation the FTC may undertake, Dyson still must face the commercial consequences of Maytag/Hoover's continued dissemination of false advertising. The false and unsubstantiated claims for the Fusion and Legacy, if not stopped, likely will cause substantial competitive injury to Dyson's reputation in the marketplace of a nature that may be difficult to precisely quantify.

14. Undoubtedly, consumers will purchase the Legacy or Fusion products because they believe the false No Loss of Suction claims. Given Dyson's position in the U.S. market, in all likelihood, such consumers might otherwise have purchased one of the Dyson models. The amount of sales lost attributable to Maytag/Hoover's No Loss of Suction claims is difficult to

quantify because Dyson has no real ability to identify Fusion and Legacy customers and to query them regarding their reasons for purchase.

15.   Maytag/Hoover's continued use of these No Loss of Suction claims, in defiance of the NAD recommendations, also wrongfully erodes Dyson's own "No Loss of Suction" claim and therefore causes substantial injury to Dyson's reputation among U.S. consumers. Maytag/Hoover's predatory adoption of Dyson's well-known positioning for "No Loss of Suction" will likely confuse consumers who are familiar with Dyson's unique products regarding whether Dyson is the only brand to offer No Loss of Suction, and may induce consumers who are considering both Dyson and Maytag/Hoover to purchase a less expensive Maytag Legacy or Hoover Fusion instead.

16.   Maytag/Hoover's continued use of the No Loss of Suction claim also is highly likely to lead consumers to believe the Maytag Legacy and Hoover Fusion deliver equivalent suction performance over time to Dyson's models.

17.   In addition, Maytag/Hoover's newly adopted advertising language stating that "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability" threatens to compound the harm to Dyson by falsely telling consumers that suction over time does not matter. We have learned through a published interview of a Maytag executive that Maytag's intent in adopting this language was to inflict damage on Dyson.

18.   Finally, I believe that consumers who purchase the Maytag Legacy or Hoover Fusion because of the No Loss of Suction claim, and who are later disappointed by the real-world performance of those units despite the advertising promise, may lose confidence in the entire concept of "No Loss of Suction." Such consumers would be less likely to respond to Dyson's

*truthful* No Loss of Suction claim in the future, and would, as a result, be less likely to purchase a Dyson vacuum cleaner.

19. Once damaged, the reputation of a company and its products is hard to rebuild. If Maytag/Hoover is permitted to continue its false advertising campaign, which Maytag itself has admitted is designed to "hit" Dyson in the marketplace, Dyson's reputation may be gravely injured.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct, and that I executed this declaration on August 28th, 2006.

_____
Gordon Thom
President
Dyson, Inc.

30190634.1