IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |  |
|---|---|---|---|
| DYSON INC., | | ) | |
| | | ) | |
| | Plaintiff, | ) | |
| | | ) | |
| v. | | ) | Civil Action No. 06-654-GMS |
| | | ) | |
| MAYTAG CORPORATION, | | ) | |
| | | ) | |
| | Defendant. | ) | |

## SUBMISSION OF PRIOR-SERVED MEMORANDUM OF LAW

Defendant Maytag Corporation hereby files its Preliminary Memorandum of Law Regarding Issues Raised by Plaintiff's Motion for Preliminary Injunction, a document enumerated in the Scheduling Order entered by the transferor court.   The document was previously served upon plaintiff's counsel on October 13, 2006 (which was during the period after transfer had been granted, but before the case was docketed with this Court), and the revised version was served on October 17, 2006 (also during the transition period).

Respectfully submitted,

**MAYTAG CORPORATION**

By:    /s/ Francis DiGiovanni
        Francis DiGiovanni
        Connolly Bove Lodge & Hutz LLP
        The Nemours Building
        1007 N. Orange Street
        Wilmington, DE  19899
        Phone (302) 658-9141
        Fax (302) 658-5614

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn
Chicago, IL 60601
Phone (312) 558-5600
Fax (312) 558-5700

Ray L. Weber
Laura J. Gentilcore
Renner, Kenner, Greive, Bobak,
Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242
Fax (330) 376-9646

Dated:  November 21, 2006

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on November 21, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> C. Barr Flinn
> John W. Shaw
> Young Conaway Stargatt & Taylor LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801

I further certify that on November 21, 2006, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record, and by e-mail and first class mail on the following counsel of record:

> Garrard R. Beeney
> Richard C. Pepperman, II
> James T. Williams
> Keith McKenna
> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, NY 10004
>
> Steven F. Reich
> Jeffrey S. Edelson
> Manatt, Phelps & Phillips, LLP
> 7 Times Square
> New York, NY 10004

> /s/ Francis DiGiovanni
> Francis DiGiovanni (#3189)
> Connolly Bove Lodge & Hutz LLP
> The Nemours Building
> 1007 N. Orange Street
> Wilmington, DE 19899
> Phone (302) 658-9141

501178v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DYSON, INC. )
)
               Plaintiff, )
) Civil Action No. ____-____GMS
)
          v. ) (Pending Transfer from S.D.N.Y.
) formerly Civ. No. 06-6576 (DLC))
)
MAYTAG CORPORATION )
)
)
              Defendant. )

**DEFENDANT'S PRELIMINARY MEMORANDUM OF LAW REGARDING
ISSUES RAISED BY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

        This preliminary memorandum of law is submitted by defendant Maytag
Corporation ("Maytag"), pursuant to a Scheduling Order issued by the District Judge Denise
Cote (S.D.N.Y.) from whom this case has been transferred. This memorandum sets forth
Maytag's primary factual and legal contentions in an effort to frame the issues on the motion for
preliminary injunction filed by plaintiff Dyson, Inc. ("Dyson").

**Procedural Posture**

        Dyson commenced this false advertising action on August 31, 2006, against
Maytag in the Southern District of New York. Soon after filing the complaint, Dyson moved for
a preliminary injunction, seeking to restrain certain advertising claims from being made by
Maytag. Maytag promptly moved to transfer the case, pursuant to 28 U.S.C.§ 1404, to this
Court.

At a conference on September 18, 2006, Judge Cote directed the parties to proceed with briefing on Maytag's transfer motion and established a schedule for discovery and submissions with respect to Dyson's motion for a preliminary injunction. The Scheduling Order issued by Judge Cote provides for

1.    Discovery to be completed by December 4, 2006;

2.    Affidavits and exhibits to be filed by December 8;[1]

3.    Memoranda of Law filed by December 8 and any Reply Memoranda filed by December 13; and

4.    An evidentiary hearing to commence on December 18.

(Scheduling Order, attached hereto as Exhibit A).

To assist the parties in framing the issues for discovery on the preliminary injunction motion, the Court directed Maytag to serve this preliminary memorandum of law on October 13. Consequently, this memorandum does not constitute the entirety of Maytag's opposition to Dyson's preliminary injunction, which Maytag will provide on the dates set forth in Judge Cote's Scheduling Order or at any other date established by this Court.

On October 11, 2006, Judge Cote granted Maytag's motion to transfer the action to the District of Delaware, finding that the conveniences of the parties and witnesses and the interests of justice favored a transfer of this action to this Court. (October 11, 2006 Opinion & Order, attached hereto as Exhibit B). Now that this action is pending here, Maytag is prepared to follow whatever schedule and procedures are established by this Court but, in the meantime, it will continue to adhere to the Scheduling Order of Judge Cote.

---

[1]    With respect to expert witnesses, Maytag and Dyson agreed that Maytag would serve any expert declarations by November 15 so that Dyson could depose those experts prior to the December 4 discovery cut-off date.

## SUMMARY

Maytag submits that when discovery is completed and all the relevant testimony and documentary evidence is considered, Dyson's request for preliminary injunctive relief must fail. Dyson cannot provide any evidence that Maytag's advertising claim is false or misleading. As the evidence will show, Maytag's advertising claim, that its bagless cyclonic vacuum cleaners "Do Not Lose Suction," does not violate § 43(a) of the Lanham Act and any related state laws. The claim is literally true because it is supported by Maytag's independently supervised testing and even Dyson's own testing. The claim is not impliedly false either, because it is appropriately qualified by an unambiguous and comprehensible disclosure that, for up to 10 ounces of dirt, the vacuums do not lose suction. Dyson cannot establish irreparable injury because Dyson itself communicates to consumers that its vacuums do not lose suction (with no qualifications whatsoever) and Maytag's ads have been running for more than eighteen months.

## MAYTAG'S FACTUAL CONTENTIONS

Discovery to be taken with respect to Dyson's motion has only recently begun. Documents have not been produced and depositions have not yet been taken. Nevertheless, Maytag submits that the following facts will likely be established at the hearing on Dyson's motion:

### The "No Loss of Suction" Claim

1.    In 2002, Dyson introduced its brand of bagless cyclonic vacuum cleaners to the United States, and claimed that they never lose suction, ever. Three years later, after significant independent research and development, Maytag[2] introduced its own line of bagless cyclonic vacuum cleaners, namely the Hoover Fusion™ (the "Fusion") and the Maytag

---

[2]    Maytag's subsidiary, The Hoover Company ("Hoover"), is engaged in the design, manufacture, marketing, and nationwide sale of, among other things, Hoover brand vacuum cleaners.

3

Legacy™ (the "Legacy"). Maytag advertised that its bagless cyclonic vacuum cleaners, the Fusion™ and the Legacy™, do not lose suction for up to 10 ounces of dirt.

2.    Maytag's advertising campaign for the Fusion™ and the Legacy™ includes, among other claims, the "No Loss of Suction" claim. The evidence at the hearing will show that adjacent to every "No Loss of Suction" claim, Maytag currently includes an asterisk that directs the reader to the following clear and conspicuous disclaimer: "Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using the ASTM International F558 test method and dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material." This disclaimer succinctly and clearly communicates to consumers that Maytag's "No Loss of Suction" claim only applies to use for up to 10 ounces of dirt.

3.    The evidence will further demonstrate that the location of the disclaimer is prominently displayed on each form of advertising where it appears. On Hoover's website for the Fusion™, the disclaimer is located on the same page and in the same column as the "No Loss of Suction" claim.[3] Similarly, on the product packaging for the Fusion™ and the Legacy™, the "No Loss of Suction" claim is located near the top right corner of the packaging, while the disclaimer is located on the same side of the box near the bottom left corner. Regardless of the type of advertisement, the disclaimer is located in close proximity to the "No Loss of Suction" claim and always in plain view of the reader.

**Independent Testing Substantiates Maytag's Claim**

4.    Prior to Maytag's use of the "No Loss of Suction" claim, Maytag subjected the Fusion™ and the Legacy™ to extensive testing in order to ensure the accuracy of its claim. Dan Miller ("Miller"), a Senior Engineer at Hoover, will testify that Maytag enlisted

---

[3]    *See* http://www.hoover.com/db/xq/asp.hvrProductMain/CatID.1/SubID.1/ProdID.267/ModID.1959/qx/Fusion CyclonicBagless.htm.

4

Inter Basic Resources, Inc. ("IBR") to test the suction performance of its vacuum cleaners. IBR provides high-accuracy instrumentation and testing services for filter and filtration systems testing.

      5.      IBR conducted tests according to the ASTM F558 standard, clean and loaded with up to 10 ounces of dust, which is the standard test method for measuring air performance characteristics of vacuum cleaners in a dust-loaded condition. IBR's test results, which will be presented at the hearing, prove that the Fusion$^{TM}$ and the Legacy$^{TM}$ do not lose suction for up to 10 ounces of dirt. Consequently, before Maytag advertised its "No Loss of Suction" claim, Maytag unequivocally qualified its "No Loss of Suction" claim with the disclaimer discussed above.

      6.      In an effort to controvert Maytag's claim, Dyson also hired IBR to test the suction performance of the Fusion$^{TM}$ and the Legacy$^{TM}$. Susan Goldsmith ("Goldsmith"), the Director of IBR, has submitted a declaration in connection with Dyson's preliminary injunction motion (the "Goldsmith Declaration") that discusses tests conducted by IBR at the direction of Dyson. While Ms. Goldsmith has not yet been deposed or produced documents subpoenaed by Maytag, it appears from a reading of the Goldsmith Declaration that Dyson will contend that IBR purports to rely upon the International Electrotechnical Commission (the "IEC") 60312 standard to conduct its tests. The evidence will show that IBR did not adhere to IEC 60312, and that its deviation from that standard, among other things, has materially affected its test results.

      7.      Evidence at the hearing will show that IBR placed an excessive amount of fine dust particles in the vacuums it tested. It used an amount of dust that is (i) beyond that which would be representative in ordinary household conditions, (ii) substantially in excess of the amount that should have been used as per the IEC 60312 standard, and (iii) a multiple of the

5

10 ounce qualifier that is referenced in Maytag's advertising claim. Maytag will adduce evidence showing that a test properly conducted pursuant to IEC 60312 shows that the Fusion$^{TM}$ and the Legacy$^{TM}$ do not lose suction.

**The NAD Proceeding**

8.    On July 29, 2005, Dyson challenged Maytag's "no loss of suction" claim before the National Advertising Division of the Better Business Bureau ("NAD"). An NAD proceeding is a voluntary dispute resolution forum for advertisers, wherein the NAD makes recommendations based on submissions from each party. There is no discovery allowed in a NAD proceeding and there are no adjudicatory hearings where witnesses are required to testify under oath and are subject to the rigors of cross-examination. An NAD hearing lacks any of the procedural safeguards of the Federal Rules of Civil Procedure or the Federal Rules of Evidence.[4]

9.    A careful analysis of the NAD decision demonstrates that it undercuts, rather than supports, Dyson's request for interim injunctive relief here.

10.    In the NAD proceeding, Dyson challenged a variety of advertising claims by Maytag. The primary focus involved cleaning superiority claims by Maytag with regard to Dyson's vacuum cleaners. Maytag claimed that its vacuum cleaned more effectively then Dyson's product. Maytag substantiated that claim before the NAD by submitting testing, conducted in accordance with industry standards, that demonstrated cleaning superiority *vis-à-vis* Dyson models.

11.    Dyson attacked Maytag's cleaning tests in two respects, neither of which persuaded the NAD. First, it argued that Maytag's testing methodology was flawed. The NAD

---

[4]    Further, the NAD employs an entirely different burden of proof than the Lanham Act. The NAD places the burden on the advertiser to substantiate its claims, whereas the Lanham Act requires the challenger to prove that the claims are false or misleading, or lack adequate substantiation. *See L & F Prods., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*, 845 F. Supp. 984, 1001 (S.D.N.Y. 1994), aff'd, 45 F.3d 709, 711 (2d Cir. 1995).

rejected this contention, concluding that the tests conducted by Maytag represented "real-life conditions found in American homes."

12.    Next, Dyson contended that Maytag's test could not support cleaning superiority claims because it did not purport to measure suction power. The NAD also dismissed this contention, reasoning that while suction may be an important attribute in the design of a vacuum cleaner, it is not determinative with respect to the cleaning efficacy of a vacuum cleaner. Consequently, the NAD concluded that Maytag was entirely justified in claiming by way of advertising that its product cleaned better than Dyson's product.

13.    However, when it came to deciding the merits of Maytag's related advertising claim that the Fusion experiences "no loss of suction" up to ten ounces of dust, the NAD inexplicably ignored its conclusions regarding the cleaning claim. First, it stated that Maytag's suction test, though based on industry standards, was not sufficient to substantiate the claim because a laboratory test was not "representative of real-world conditions. This statement, however, ignores the fact that Maytag's "no loss of suction" claim was being made in conjunction with a cleaning claim that was supported by tests that the NAD agreed were representative of real-world conditions.

14.    The NAD also remarked that suction claims imply a "meaningful" performance attribute, such as cleaning efficacy, to consumers that may not, in fact, exist. In short, the NAD believed that suction claims have the potential to mislead consumers into believing that cleaning efficacy has been demonstrated . The NAD's fear was entirely misplaced with regard to Maytag's claim. Maytag's suction claims were tied to a cleaning efficacy claim that was substantiated. Because the NAD already agreed that Maytag had a valid basis to claim

7

cleaning superiority over Dyson, there was no danger that consumers would be misled into believing that "no loss of suction" implies a performance attribute that does not exist.

15.    In sum, the NAD's rationale on Maytag's suction claims was flatly contradicted by its conclusions on Maytag's cleaning claims.

**The Qualifying Language in Maytag's Ads**

16.    In light of the NAD's decision, Maytag has made and is in the process of making certain modifications to its suction claim to completely eliminate any possibility of consumer confusion. Maytag included the following explicit language, which appears directly after the "No Loss of Suction" claim in the same size and font: "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability." Additionally, Maytag added the following statement to its disclaimer: "No testing has established a correlation between suction performance and carpet cleaning ability in the home. Household results may vary." These additional disclosures were added by Maytag in a good faith effort to address the concerns raised by the NAD.

17.    Dyson contends that the qualifying language used by Maytag is insufficient because consumers either will not notice it or will not understand it. In support of this argument, Dyson submits a consumer survey conducted by a putative expert, Michael Mazis.

18.    Mazis has not been deposed yet and has only recently produced documents to Maytag relating to his work. Nevertheless, it appears from his declaration that he only showed the survey participants the packaging for Maytag's product. That is not representative of the totality of information that a consumer typically would have at the point of sale. Consumers would have access to information on the manufacturer's website that they would look at before going out to purchase a vacuum. Consumers would also be exposed to

8

product tags and labels that are placed on floor models at the store. All of these sources of information also contain the qualifiers to the "no loss of suction" claim. Thus, they are unquestionably relevant to the issue of what a consumer would recall and understand about Maytag's qualified advertising claim. Mazis' study, however, ignores this information.

19.    Maytag anticipates submitting a declaration from an expert in the field of consumer surveys who will address Mazis' study. To date, based on its own review by people at Maytag with experience in consumer perception, Maytag has identified further deficiencies in the Mazis study. These defects include the fact that Mazis' questions to participants were biased, the survey process was insufficiently controlled and the results insufficient to support a claim of deception. In sum, the evidence will show that Mazis' study provides no support for Dyson's Lanham Act claim.

## MAYTAG'S LEGAL CONTENTIONS

### I.    Standards Applicable To Preliminary Injunctive Relief In Lanham Act Cases

To obtain a preliminary injunction under the Lanham Act, a plaintiff must show: (1) either (a) "a likelihood of success on the merits," or (b) "a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in plaintiff's favor;" and (2) "irreparable harm absent injunctive relief." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 113-14 (2d Cir. 2006); *Morningside Supermarket Corp. v. New York State Dept. of Health*, No. 05 Civ. 9950 (DLC), 2006 WL 680469 at *1 (S.D.N.Y. March 17, 2006). In order to demonstrate a likelihood of success on the merits of a false advertising claim under the Lanham Act, a plaintiff must show that either: (1) "the challenged advertisement is literally false," or (2) "although literally true, that it is still likely to mislead or confuse consumers." *L & F Prods., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*, 45 F.3d 709, 711 (2d Cir. 1995); *see also Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995).

9

Furthermore, courts have long recognized that preliminary injunctive relief is "an extraordinary and drastic remedy which should not be routinely granted." *Medical Soc'y of the State of New York v. Toia*, 560 F.2d 535, 538 (2d Cir. 1977); *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., Inc.*, 906 F. Supp. 178, 180 (S.D.N.Y. 1995); *see also JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir. 1990). Where, as here, a plaintiff fails to show irreparable harm and a likelihood of success on the merits, the court should deny the drastic relief of a preliminary injunction. *See Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42 (2d Cir. 1983) (reversing district court's grant of preliminary injunctive relief where plaintiff could not demonstrate a likelihood of success on the merits of its Lanham Act claim); *Procter & Gamble Pharmaceuticals, Inc. v. Hoffmann-La Roche, Inc.*, No. 06 Civ. 0034 (PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 6, 2006) (denying preliminary injunction because plaintiff could not prove that defendant's advertisements were false or misleading and therefore no likelihood of success on the merits).

In the present case, Dyson will not be able to satisfy these rigorous requirements.

**A.    Dyson Cannot Prove That Maytag's "No Loss of Suction" Claim Is Literally False**

Dyson contends that Maytag's "No Loss of Suction" claim is literally false because: (1) Maytag's tests do not establish the "No Loss of Suction" proposition, (2) Dyson's testing proves that Maytag's Fusion™ and Legacy™ vacuums lose suction by about 35%; and (3) the NAD has already concluded that Maytag's suction claim was literally false.

Courts have stated that in order to prove literal falsity, the plaintiff must demonstrate that defendant's tests are "not sufficiently reliable to permit one to conclude with *reasonable certainty* that they established the claim made." *Procter & Gamble Co. v. Chesebrough-Pond's, Inc.*, 747 F.2d 114, 119 (2d Cir. 1984). In other words, Maytag's tests

10

NY:1063379.1

need only establish with a *reasonable certainty* that Maytag's vacuums do not lose suction for up to 10 ounces of dirt. *See e.g., L & F Prods., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.,* 845 F. Supp. 984, 1001 (S.D.N.Y. 1994) (finding tests sufficiently reliable to support a superiority claim even though tests were not perfect).

At the hearing, Maytag will prove that its tests are more than sufficient to substantiate the "No Loss of Suction" claim. Maytag retained the same independent testing service that Dyson uses, IBR. IBR tested the Fusion™ and the Legacy's™ suction performance under the appropriate industry standards. The exhaustive testing determined that the Fusion™ and the Legacy™ do not lose suction for up to 10 ounces of dirt collected in its bin.

Dyson's contention that the tests submitted by Maytag to the NAD do not constitute "real world conditions" ignores the fact that Maytag has also tested its vacuums using the IEC standard. The evidence will show that, under those tests, the vacuums do not lose suction.

The evidence adduced at the hearing will further demonstrate that Dyson's own sponsored tests conducted by IBR are entirely faulty. If Goldsmith testifies consistently with her declaration, she will have to concede that she did not adhere to the existing IEC standard and that she used a quantity of fine dust in the tests that substantially exceeds the amount referenced in the advertising claim and the amount that would be representative of typical household use. The evidence will further show that even under Goldsmith's test, the Maytag vacuum did not lose suction at 10 ounces of dust and indeed considerably beyond that measure.

Dyson's reliance upon the NAD decision is misplaced. Because the NAD is not an adjudicating body, with evidentiary rules or hearings with the examination of live witnesses under oath, its findings are not entitled to any collateral estoppel effect in any subsequent civil

11

litigation. *GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, No. 05-4566, 2006 WL 1792856 at \*1 (3d Cir. June 29, 2006) ("Participation in NAD proceedings is voluntary, and the results are non-binding."); *Millennium Import Co. v. Sidney Frank Importing Co., Inc.*, No. Civ. 03-5145 JRT/FLN, 2004 WL 1447915 at \*2 (D. Minn. June 11, 2004) (recognizing that NAD decisions are not binding); *Mead Johnson & Co. v. Abbott Laboratories*, 41 F. Supp. 2d 879, 905 (S.D. Ind. March 18, 1999) (stating that NAD decisions are not binding and that federal courts remain the legal forum for adjudicating Lanham Act claims). Nor is the NAD an agency of the federal government whose views would be entitled to deference under the *Chevron Doctrine. See Chevron USA v. National Resources Defense Council*, 467 U.S. 837 (1984). Therefore, the NAD decision is not entitled to any weight here.

Moreover, Maytag will demonstrate at the hearing that the NAD's decision is internally inconsistent insofar as it pertains to the "no loss of suction" claim. Under the NAD's reasoning, Maytag's "no loss of suction" claim should pass muster because it is coupled with a cleaning claim that is supported by testing that comports with "real world conditions. " Also, there is no danger here that consumers will mistakenly believe that suction power falsely implies cleaning efficacy. Maytag's suction claims are accompanied by cleaning claims that are well-substantiated.

**B.    Dyson Cannot Prove That Maytag's Claim Is Impliedly False**.

Dyson contends that, if Maytag's claim is literally true, it is still misleading because the qualifiers are legally insufficient. This contention must fail.

Disclaimers in advertising are commonplace and are extremely useful at dispelling the possibility of consumer confusion. *See e.g., Upjohn Co. v. American Home Prods. Corp.*, 598 F. Supp. 550, 561 (S.D.N.Y. 1984) (holding that a disclaimer countered any misleading effect of the advertisement). Courts have routinely held that explanatory disclaimers

12

are an appropriate means of alleviating the possibility that a claim might mislead consumers. *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 832 F.2d 1325, 1329-30 (2d Cir. 1987); *Consumers Union of United States v. General Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983); *Thompson Medical Co. v. CIBA-GEIGY Corp.*, 643 F. Supp. 1190, 1199 (S.D.N.Y. 1986).

In fact, courts have regularly expressed preference that the advertiser use an explanatory disclaimer over enjoining the claims at issue. *See e.g., Thompson Medical*, 643 F. Supp. at 1199 (refusing to enjoin language so long as advertiser included an explanatory disclaimer); *Consumers Union*, 724 F.2d at 1053 ("Absolute prohibitions of speech...are improper where there is any possibility that an explanation or disclaimer will suffice"); *Soltex Polymer*, 832 F.2d at 1329-30 (preferring the use of a disclaimer over issuing an injunction). Even further, courts have held that to "enjoin language where there is a reasonable possibility that a disclaimer would suffice would violate the first amendment." *Upjohn*, 598 F. Supp. at 561 (S.D.N.Y. 1984). Likewise, in *In re R.M.J.*, the Supreme Court held that absolute prohibitions of speech are improper where there is any possibility that an explanation or disclaimer will suffice. 455 U.S. 191, 203 (1982) (regarding advertising for professional services); *compare Consumer Union*, 724 F.2d at 1053 ("The First Amendment demands use of a disclaimer where there is a reasonable possibility that it will suffice to alleviate consumer confusion.").

Accordingly, Maytag employs an explanatory disclaimer that for up to 10 ounces of dirt the Fusion[TM] and the Legacy[TM] will not lose suction and thereby eliminates any possibility that Maytag's claim could be misleading. *See e.g., Thompson Medical*, 643 F. Supp. at 1199 (finding that defendants' claim was not false and misleading where an asterisk directed the reader to a proper "explanatory disclaimer"). Maytag's disclaimer leaves no doubt that its "No Loss of Suction" claim is qualified, i.e., that the vacuum will eventually lose suction as its

13

dirt cup approaches capacity. Moreover, Dyson's cases that oppose disclaimers are either readily distinguishable to the instant facts or provide no discernible support.[5]

Dyson principally relies on *JR Tobacco* and *SmithKline*. (Pl. Mem. at 16-17.) In *JR Tobacco*, the defendant was a discount imitator of brand-name cigars that attempted to "disabuse the unwary customer." *JR Tobacco of America, Inc. v. Davidoff of Geneva (CT), Inc.*, 957 F. Supp. 426, 437 (S.D.N.Y. 1997). The defendant advertised that its cigars were "identical" to or "duplicates" of the plaintiff's brand-name cigars, and included a disclaimer renouncing any affiliation between the two parties. Id. at 430. The court held that disclaiming an affiliation between the parties did not rectify, let alone clarify, the defendant's false claim of duplication. Id. at 438.

The circumstances of this case are in stark contrast to those relevant in *JR Tobacco*. The disclaimer in *JR Tobacco* served no valuable purpose other than to expressly contradict the claim, Maytag's disclaimer does not contradict the claim, it conspicuously explains and qualifies the "No Loss of Suction" claim. Moreover, unlike Maytag's claim, a claim that a product is "identical" to another product allows no room for interpretation, and thus no justifiable need for a disclaimer. On the other hand, claims of suction performance, such as Maytag's claim, necessarily implicate questions of duration, which naturally require additional explanation. Maytag's disclaimer provides just such information.

---

[5] Dyson incorrectly cites two cases for the proposition that a disclaimer is ineffective to cure literal falsity. (Pl. Mem. at 17.) Nowhere in the opinion in *Coca-Cola Co. v. Tropicana*, 690 F.2d 312 (2d Cir. 1982), does the court make such a holding. In *Coca-Cola*, the defendant's television commercial represents that its orange juice is produced only by pouring freshly-squeezed juice directly into the carton, with a voice-over stating: "pasteurized juice as it comes from the orange." *Coca-Cola*, 690 F.2d at 318. The defendant did not attach a disclaimer to any portion of its advertising. The only part of the court's opinion that may be construed to refer to a disclaimer was dictum. The court opined that even if consumers understood that "pasteurized" juice does not come from oranges, the commercial remains false because the defendant may also freeze the juice before packaging. Id. Dyson's erroneous citation to *George Washington Mint, Inc. v. The Washington Mint, Inc.*, 349 F. Supp. 255 (S.D.N.Y. 1972), is even more egregious. Nothing in the court's opinion can even be construed to reference a disclaimer.

14

The circumstances in *SmithKline* are equally dissimilar to the circumstances of this case. In *SmithKline*, the defendant advertised that doctors prescribed its heartburn medicine over two hundred million times more than they prescribed the plaintiff's heartburn medicine. *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., Inc.*, 906 F. Supp. 178, 186 (S.D.N.Y. 1995). The court found that the advertisement implied that prescriptions were measured over an "equal time period." Id. However, according to the disclaimer, the defendant did not measure prescriptions over an equal time period. Instead, defendant's calculations included an extra nine years of prescriptions, which artificially inflated defendant's numbers. Therefore, the disclaimer in *SmithKline* did not qualify the claim, it revealed that the claim was deceptive. Here, Maytag's disclaimer limits the "No Loss of Suction" claim by explaining to the reader that "no loss of suction" occurs during a period of usage (i.e., the collection of 10 ounces or less of dirt).

Dyson will also not be able to prove implied falsity by relying upon the Mazis declaration. Courts have held that "survey evidence need not automatically be accepted as dispositive; instead the value of a survey is only as good as the objectivity of the survey." *SmithKline Beecham*, 906 F. Supp. at 181. To assess the objectivity of a survey, the court must determine whether the survey was "properly filtered to screen out those who got no message from the advertisement...[and] whether the questions are leading or suggestive." Id. (citations omitted).

At the hearing, Maytag will submit evidence demonstrating the numerous flaws in the Mazis survey. These will include, among others, that the survey failed to provide participants with the same amount of information that consumers would have access to at the

15

point of sale; and that the survey was biased, not adequately controlled and its results are wholly ambiguous.

### C.    <u>Dyson Cannot Demonstrate Irreparable Harm</u>

Dyson argues for the use of an incorrect standard to determine whether irreparable harm has been proven for preliminary injunctive relief. Dyson contends that because Dyson and Maytag are competitors in a relevant market and that a logical connection exists between Maytag's claim and Dyson's sales, that irreparable injury should be presumed. (See Pl. Mem. at 21) (citing *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190-91 (2d Cir. 1980)). This contention is meritless.

In order to prove irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (reversing district court's issuance of preliminary injunction where evidence did not establish that plaintiff faced irreparable injury). In other words, a preliminary injunction must be the only way of protecting the plaintiff from harm. <u>Id.</u>

In addition, establishing a risk of irreparable harm is not enough. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (reversing district court's issuance of preliminary injunction where plaintiff failed to meet its burden of establishing irreparable injury). A plaintiff has the burden to make a "clear showing of immediate irreparable injury." <u>Id.</u> (citations omitted). The "requisite feared injury or harm must be irreparable-not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." <u>Id.</u> (citations omitted).

Thus, the Third Circuit has specifically rejected the standard advocated by Dyson. The Third Circuit held that the court in *Carter-Wallace* did not establish a standard for

16

evaluating whether irreparable harm has been proven. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co.*, 290 F.3d 578, 595 (3d Cir. 2001). Instead, the Third Circuit stated that *Carter-Wallace* merely addresses the requirement that injury from false advertising be proven to establish a Lanham Act violation. *Id.* Clearly, the irreparable injury standard -- potential harm that cannot be redressed following trial -- differs from the injury element for a Lanham Act claim -- *i.e.*, a reasonable basis for believing that a plaintiff is likely to suffer injury. *Id.* Dyson's allegations that Maytag and Dyson are direct competitors and a causal connection exists between Maytag's advertising and Dyson's sales falls well short of the Third Circuit's irreparable injury standard.

Dyson will also be unable to show irreparable injury because it has been making "no less of suction" claims in an unqualified manner in the marketplace for years. Having made this claim itself, Dyson cannot be heard to complain that the claim causes irreparable injury to others.

Further, the fact that Maytag has been making its qualified claims since May, 2005 shows that Dyson has not been irreparably injured. *See e.g., Pharmacia Corp. v. Alcon Laboratories, Inc.*, 201 F. Supp. 2d 335, 382-84 (D.N.J. 2002) (delay of one year in bringing trademark infringement action against competitor precluded finding of irreparable injury); *Warner Lambert Co. v. McCrory's Corp.*, 718 F.Supp. 389, 393 (D.N.J. 1989) (holding that a seven-month delay "conclusively refutes" claim of irreparable harm). Dyson has a remedy at law in damages and, in fact, its Complaint seeks damages to redress the alleged harm it suffered from Maytag's advertisements.

### D.    Equities Demand That Preliminary Injunctive Relief Be Denied

The balance of equities will weigh heavily in favor of Maytag here. Dyson has been making a "No Loss of Suction" claim without any qualifying language. Granting Dyson a

preliminary injunction would provide an unjust, competitive advantage for Dyson. *See L & F Prods.*, 845 F. Supp. at 1004 (denying preliminary injunction where plaintiff did not show likelihood of success on the merits and plaintiff would have gained a significant competitive advantage over defendant).

## **CONCLUSION**

For the foregoing reasons, Maytag submits that this Court should deny Dyson's request for preliminary injunctive relief.

Originally Dated:    October 13, 2006
Corrected:    October 17, 2006

Respectfully submitted,

Kimball R. Anderson
Stephen P. Durchslag
Ronald Y. Rothstein
WINSTON & STRAWN
35 West Wacker Drive
Chicago, Illinois 60601-9703
(312) 558-5600

-and-

Anthony DiSarro
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

-and-

Francis DiGiovanni
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building - 8th Floor
1007 N. Orange Street
Wilmington, Delaware 19801

**Attorneys for Defendant Maytag
    Corporation**

NY:1063379.1

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
DYSON, INC.,                            :     06 CIV. 6576 (DLC)
                                        :
                    Plaintiff,          :     SCHEDULING ORDER
                                        :
        -v-                             :
                                        :
MAYTAG CORPORATION,                     :
                                        :
                    Defendant.          :
----------------------------------------X

DENISE COTE, District Judge:

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 9-21-06

    As set forth at the pretrial conference held on September
18, 2006, the following schedule shall govern the further conduct
of pretrial proceedings in this case:

    IT IS HEREBY ORDERED that the defendant having filed a
motion to transfer, plaintiff's opposition shall be served by
**September 29, 2006** and defendant's reply shall be served by
**October 6, 2006.**

    IT IS FURTHER ORDERED that at the time any Reply is served
the moving party shall supply two courtesy copies of all motion
papers to Chambers by delivering them to the Courthouse Mailroom,
8th Floor, United States Courthouse, 500 Pearl Street, New York,
New York.

    IT IS FURTHER ORDERED that, on consent of the parties,
discovery taken in either the Delaware action or this action may
be used in either case.

    IT IS FURTHER ORDERED that defendant's memorandum in
opposition to the motion for a preliminary injunction shall be
due by **October 13, 2006.**

    IT IS FURTHER ORDERED that discovery for the preliminary
injunction hearing shall be completed by **December 4, 2006.**

    On **December 8, 2006**, by **5:00 p.m.**, the following documents
are to be submitted:

1.  Proposed Findings of Fact and Conclusions of Law.

2.  All direct testimony shall be by affidavit, except for
    testimony of an adverse party, a person whose attendance
    must be compelled by subpoena, or a witness for whom a party
    has requested and the Court has agreed to hear the direct
    testimony at hearing.  The affidavits shall be served, **but
    not filed.**

3.  Those portions of depositions that are being offered as substantive evidence, along with a one page synopsis (with transcript citations) of such testimony for each deposition.

4.  Memorandum of law.

5.  Counsel will provide the Court, by delivery directly to Chambers, with two (2) courtesy copies of all these documents at the time they are served, as well as one set of hearing exhibits, pre-marked and assembled sequentially I) in a looseleaf binder, or ii) in separate manila folders labeled with the exhibit numbers and placed in a suitable container or box for ready reference.

6.  By **December 11, 2006**, counsel for each party shall submit a list of all affiants that he or she intends to cross-examine at the hearing. Affiants for whom such notice is not given are not required to be present at the hearing.

7.  By **December 13, 2006,** any Reply memorandum of law must be received by the Court.

    IT IS FURTHER ORDERED that the final prehearing conference is scheduled for **December 15, 2006** at **9 a.m.** in Courtroom 11B, 500 Pearl Street.

    IT IS FURTHER ORDERED that the preliminary injunction hearing will begin at on **December 18, 2006** at **9:30 a.m.**

    IT IS FURTHER ORDERED that the following procedures shall govern the conduct of the hearing.

1.  All exhibits must be pre-marked.

2.  At the start of the hearing each party will present the Court with three copies of a complete exhibit list.

3.  Counsel should make certain that they have custody of all original exhibits, including the affidavits composing the direct testimony. The Court does not retain them and the Clerk is not responsible for them.

    SO ORDERED:

Dated:    New York, New York
          September 20, 2006

                                        _____
                                        DENISE COTE
                                        United States District Judge

# Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                         :
DYSON, INC.,                             :        06 CIV. 6576 (DLC)
                                         :
                  Plaintiff,             :        OPINION & ORDER
                                         :
        -v-                              :
                                         :
MAYTAG CORPORATION,                      :
                                         :
                  Defendant.             :
                                         :
----------------------------------------X

DENISE COTE, District Judge:

        Defendant Maytag Corporation ("Maytag") has moved to

transfer this lawsuit to the District of Delaware, where related

patent and Lanham Act litigation between these same parties has

been pending since 2005.  Pursuant to 28 U.S.C. § 1404, this

motion to transfer is granted.


                            Background

        Dyson, Inc. ("Dyson") filed a patent infringement action

against Maytag in June 2005, in the District of Delaware, based

on Maytag's Hoover Fusion brand vacuum cleaner (the "Fusion").

In August 2005, Maytag filed counterclaims against Dyson pursuant

to the Lanham Act, asserting that Dyson had made false and

misleading advertising claims about the suction powers of its

vacuums, among other things.  Document discovery in that

litigation is scheduled to close later this year; the District

Judge in Delaware has already construed the patent claims for the

parties.

        On August 31, 2006, Dyson filed this Lanham Act lawsuit,

alleging that Maytag has made false advertising claims concerning the suction power of the Fusion and the Maytag Legacy vacuums. A preliminary injunction hearing is scheduled for December 18, 2006. With the parties' consent, discovery taken in either the Delaware or New York action is admissible in the other litigation, and the New York schedule for merits discovery will track the Delaware schedule.

These two lawsuits are not the only litigation that has been ongoing between these parties about the suction power of their vacuums. Before Dyson filed its patent action in Delaware, Maytag had filed a claim before the National Advertising Division of the Council of Better Business Bureaus ("NAD") about Dyson's advertising. Maytag discontinued the challenge after being sued in Delaware, and filed its Lanham Act counterclaims within the patent action. In contrast, after filing its lawsuit in Delaware, Dyson filed its own NAD claim against Maytag. In April and August 2006, the NAD issued rulings critical of Maytag. Dyson filed this action after obtaining the second of those rulings.

Neither party has any special connection to New York. They are incorporated elsewhere and have their principal places of business elsewhere. Neither party has identified a witness that resides in New York. The testing programs that are at issue here were undertaken in laboratories outside New York. Even the advertising campaigns that are at issue followed decisions made in business locations outside of New York.

2

## Discussion

The standard for a motion to transfer pursuant to 28 U.S.C. § 1404 is well established. Section 1404 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court has broad discretion to grant or deny motions to transfer and makes its determination based on "notions of convenience and fairness on a case-by-case basis." In re Cuyahoga Equip. Corp., 980 F.2d 110, 117 (2d Cir. 1992); see also Int'l Bus. Mach. Corp. v. Fair Isaac Corp., 05 Civ. 10296 (DLC), 2006 WL 726034, at *1-2 (Mar. 23, 2006). The movant bears the burden of establishing that transfer is warranted. Fair Isaac, 2006 WL 726034, at *1. If the transferee court also has jurisdiction over the case, the Court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. The factors a court considers in making that determination include

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances.

Berman v. Informix Corp., 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998). A court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that

3

the balance of convenience favors defendants' choice." <u>Id.</u> at
656.

Most of the Section 1404 factors may be quickly assessed.
New York has no connection to the operative facts. Retaining the
litigation in New York or transferring it to Delaware will have
no impact on the availability of process to compel the attendance
of witnesses. The parties, each of whom is a substantial
corporation, are equally able to litigate the litigation in New
York or Delaware. Access to documents will not be affected by
retaining or transferring the litigation. Both fora are familiar
with the governing law.

The witnesses for this litigation have no connection to
either New York or Delaware. While New York may be slightly more
convenient to witnesses because it is a major travel hub, the
court in Delaware is close to its own major airport, the
Philadelphia airport. Moreover, most of the witnesses who will
need to travel to trial for this litigation will also have to
travel to Delaware for the patent and Lanham Act litigation that
is ongoing there. From that perspective, it will be far more
convenient for those witnesses to have this litigation
transferred to Delaware because there is a possibility that the
litigation will be consolidated for trial, and that only one trip
to provide testimony will be necessary.

Despite Dyson's protests, Delaware is a more convenient
forum for all of the parties because of the ongoing related
litigation. Dyson chose Delaware as the forum for its patent

4

litigation over vacuums and is hard pressed now to explain why Delaware would be an inconvenient forum for its Lanham Act claims.

Issues of trial efficiency and the interests of justice strongly favor a transfer to Delaware. The Delaware court is already addressing Maytag's Lanham Act vacuum claims, and the claims Dyson brings in this lawsuit are largely a mirror image of the Lanham Act Delaware litigation. It would be a profound waste of judicial and party resources to conduct two trials where one could suffice. While it remains to be seen whether the claims are properly consolidated for trial, at this point it would seem highly likely that that would be done if the claims were pending before the same judicial officer. If this lawsuit is transferred, the Delaware court may assess the issue of consolidation at the appropriate time.

In sum, each of these factors is neutral regarding a transfer or favors a transfer. While a plaintiff's choice of forum is usually entitled to considerable weight, and should not be disturbed unless the balance of factors weighs strongly in favor of the defendant, this is not the usual case. Dyson itself filed the related litigation in Delaware, which has been ongoing there for over a year. Maytag has shown that in these circumstances, Dyson's prior choice of Delaware as a forum trumps its more recent choice of New York for related litigation.

5

<u>Conclusion</u>

The motion by Maytag Corporation to transfer this lawsuit to the District of Delaware is granted.

SO ORDERED:

Dated:    New York, New York
          October 11, 2006

                                        _____
                                              DENISE COTE
                                        United States District Judge

6