# YOUNG CONAWAY STARGATT & TAYLOR, LLP

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

JOHN W. SHAW
DIRECT DIAL: (302) 571-6689
DIRECT FAX:    (302) 576-3334
jshaw@ycst.com

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(302) 571-1253 FAX
(800) 253-2234 (DE ONLY)
www.youngconaway.com

April 18, 2007

**BY E-FILE AND BY HAND DELIVERY**

The Honorable Gregory M. Sleet
United States District Court
for the District of Delaware
844 N. King Street
Wilmington, DE 19801

Re:     *Dyson, Inc. v. Maytag Corporation*, C.A. No. 06-654-GMS

Dear Judge Sleet:

Pursuant to Local Rule 7.1.4, Plaintiff Dyson, Inc. hereby requests that the Court set oral argument on Dyson's Motion for Preliminary Injunction at the Court's earliest convenience and that the Court set a shortened briefing schedule on the Motion.  Absent this relief, Defendant Maytag Corporation ("Maytag") will effectively have mooted the Motion through delay tactics, obfuscation, and, unfortunately, repeated misrepresentations to the New York Court and Your Honor.

As Your Honor will recall, this case was filed by Dyson in New York Federal Court in September, 2006 after the NAD had found not only that Maytag's "No Loss of Suction" advertising claim was false and unsubstantiated, but also after Maytag had failed to comply with its own promise in mid-2006 to cease the ad campaign, and after the NAD had completed "non-compliance" proceedings, finding against Maytag.  When Maytag moved to transfer that case to this Court, it urged that the two cases should be consolidated and expressly promised the New York Court: "the parties will be able to litigate Dyson's motion for a temporary injunction in Delaware promptly upon a transfer to that Court."  [D.I. 25-62, Reply Memorandum in Support of Maytag Corporation's Motion to Transfer Venue at 9, Fn. 4.]  While that did not happen, principally because of Maytag's about-face in opposing even a briefing schedule on the Motion, what Dyson has learned since the March 15 hearing before this Court is even more troubling.

At the March 15, 2007 Scheduling Conference, counsel for Maytag argued that Dyson's Preliminary Injunction Motion was moot because the two vacuum cleaners at issue in the motion are no longer being manufactured, and one of the vacuum cleaners – the Hoover Fusion – "is in fact no **longer** being shipped to retailers." [Transcript of March 15, 2007 Conference at p. 4:12-13, attached hereto as Exhibit A.]  Thereafter, and in light of counsel's representations regarding Maytag's product, Dyson agreed to defer scheduling the motion for one week while meeting and conferring in good faith in an attempt to reach a private resolution of Dyson's Preliminary

YOUNG CONAWAY STARGATT & TAYLOR, LLP

The Honorable Gregory M. Sleet
April 18, 2007
Page 2

Injunction Motion.  After the Scheduling Conference, on March 20, 2007, Dyson sent a draft limited settlement agreement to Maytag for its consideration.  On March 23, 2007, Maytag's counsel sent a letter to counsel for Dyson refusing to engage in any substantive discussion regarding a private resolution of the motion and simply reiterating Maytag's position that the issue is moot due, in part, to the fact that "the Hoover Fusion is no longer being shipped to retailers." [*See* March 23, 2007 letter from Lisa Parker to Chad Hummel, attached hereto as Exhibit B.]

Maytag then again opposed scheduling the motion before Your Honor during the March 29, 2007 status conference regarding Dyson's Preliminary Injunction Motion.  Maytag again represented that sales of its Fusion were nearly over.  [Transcript of March 29, 2007 Conference at p. 9:9-10; *see also id.* at 13:17-14:3, attached hereto as Exhibit C.].  Maytag also hotly resisted discovery about its plans for future sales of its Fusion and Legacy products – insisting that any remaining sales would be minimal.  Your Honor nonetheless ordered Maytag to respond to special interrogatories within seven days instead of a short Rule 30(b)(6) deposition.  [*id.* at 19:15-20:21.]  After the conference, Maytag insisted that it could not respond to Dyson's interrogatories (served on April 2, 2007) within the promised seven day response period and stated that they would respond four days later, on Friday, April 13, 2007.

We learned when Maytag finally served its interrogatory responses that Maytag's representations to the Court and counsel were untrue.

Specifically, Maytag **does** in fact plan to ship additional Hoover Fusion vacuums – the very product that on March 15 Maytag represented "is in fact no longer being shipped to retailers" – with the offending, literally false advertising claims which had previously been found false and unsubstantiated by the NAD.  [Defendant's Objections and Responses to Plaintiff's Special Interrogatories Regarding Plaintiff's Motion for Preliminary Injunction ("Special Interrogatory Responses") Response No. 7(b), attached hereto as Exhibit D.]  Maytag also revealed that it would be shipping up to 8,314 additional units of the Maytag Legacy vacuums this month – nearly 50% of the Maytag Legacy vacuums sold between the six month period between September 1, 2006 and March 31, 2007).  [*Id.*, Response Nos. 4, 7(b).]  Finally, Maytag's interrogatories do not reveal how many of the offending products remain in the marketplace in addition to these two shipments.[1]

Dyson and the Court have lost precious time due to Maytag's incorrect representations.  Maytag's counsel was either misinformed, or it was intentionally attempting to delay the process just long enough to make these remaining large shipments.  By engaging in substantial and calculated delay tactics, making misrepresentations to Dyson and to the Court, and refusing to answer directly the questions posed in the interrogatories, Maytag has ensured that the Preliminary Injunction Motion will not be resolved until *after* Maytag has made its allegedly "final" shipments of vacuums containing the false advertising.

---

[1]    Manufacturers like Maytag also typically have sufficient control over products in the marketplace so as to recall them or to cure false advertising, even when the products are in the hands of the retailer.

Y̲oung C̲onaway S̲targatt & T̲aylor, LLP

The Honorable Gregory M. Sleet
April 18, 2007
Page 3

      In light of the new information made available to Dyson for the first time in the interrogatory responses served on April 13 (after Maytag's counsel had made sure of a protracted stipulated briefing schedule), it is critical that Dyson immediately have an opportunity to prevent this additional false advertising from entering the market. Maytag estimates that the cost of removing its false advertising is approximately $200,000, and Dyson is willing to bond that amount if Dyson is not successful in demonstrating that these claims constitute actionable false advertising at trial. Dyson seeks immediate relief from the Court directing that Maytag be required to remove or "sticker over" the false "No Loss of Suction" claims before the shipments go out. Dyson will file its renewed Preliminary Injunction Motion today, in advance of the current deadline, seeking this relief.

      For all of these reasons, Dyson requests that the Court schedule oral argument on the Motion for Preliminary Injunction at the Court's earliest convenience and that the remaining briefing schedule be accelerated to accommodate the hearing date.

                     Respectfully submitted,

                     John W. Shaw (No. 3362)

JWS:mg
Attachments

cc:     Clerk of the Court (by CM/ECF)
        Francis DiGiovanni, Esquire (by CM/ECF and hand delivery)
        Anthony DiSarro, Esquire (by Federal Express)

# Exhibit A

1

1    IN THE UNITES STATES DISTRICT COURT

2    IN AND FOR THE DISTRICT OF DELAWARE

3    - - -

4    DYSON, INC.,                    :        Civil Action
                                     :
5            Plaintiff,              :
                                     :
6        v.                          :
                                     :
7    MAYTAG CORPORATION,             :
                                     :
8            Defendant.              :        No. 06-654-GMS

9    - - -

10   Wilmington, Delaware
     Thursday, March 15, 2007
11   9:30 a.m.
     Conference
12
     - - -
13

14   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

15   APPEARANCES:

16       JOHN W. SHAW, ESQ., and
         MONTE T. SQUIRE, ESQ.
17       Young Conaway Stargatt & Taylor, LLP
                 -and-
18       CHAD S. HUMMEL, ESQ., and
         KATHRIN WANNER, ESQ.
19       Manatt, Phelps & Phillips, LLP
         (Los Angeles, CA)
20
                         Counsel for Plaintiff
21
         FRANCIS DiGIOVANNI, ESQ.
22       Connolly Bove Lodge & Hutz LLP
                 -and-
23       ANTHONY DiSARRO, ESQ., and
         STEPHEN P. DURCHSLAG, ESQ.
24       Winston & Strawn
         (Chicago, IL)
25
                         Counsel for Defendant

1    is not moot.  If they are prepared, obviously, to enter into

2    a stipulated injunction, given their representation, we will

3    entertain that and are prepared to negotiate appropriate

4    language to try to ease the burden on Your Honor of having

5    to deal with the preliminary injunction.  Frankly, that

6    might not be a problem, given what they have said they are

7    going to do.

8              That is our position.

9              THE COURT:  Counsel.

10             MR. DiSARRO:  Your Honor, there are two vacuum

11   cleaners at issue, the Fusion and the Legacy.  Neither are

12   manufactured anymore.  The Fusion is in fact no longer being

13   shipped to retailers.  So there is no loss-of-suction claim

14   being made in connection with the Fusion today.  As I

15   understand, it has been removed from the website.

16             THE COURT:  As to the Fusion.

17             MR. DiSARRO:  As to the Fusion.  That's correct.

18             As to the Legacy, the last shipment containing a

19   no-loss-of-suction claim on the packaging will be done in

20   April, and that there are no no-loss-of-suction claims being

21   made anywhere else.

22             Regarding the NAD decision, which is a

23   nonbinding adjudication, not even an adjudication because it

24   has no adjudicative authority, but a nonbinding mediation,

25   they indicated that the no-loss-of-suction claim was

# Exhibit B

# WINSTON & STRAWN LLP

| | | |
|---|---|---|
| 43 RUE DU RHONE<br>1204 GENEVA, SWITZERLAND | 35 WEST WACKER DRIVE<br>CHICAGO, ILLINOIS 60601-9703 | 200 PARK AVENUE<br>NEW YORK, NEW YORK 10166-4193 |
| 99 GRESHAM STREET<br>LONDON EC2V 7NG | (312) 558-5600 | 25 AVENUE MARCEAU<br>75116 PARIS, FRANCE |
| 333 SOUTH GRAND AVENUE<br>LOS ANGELES, CALIFORNIA 90071-1543 | FACSIMILE (312) 558-5700 | 101 CALIFORNIA STREET<br>SAN FRANCISCO, CALIFORNIA 94111-5894 |
| | www.winston.com | 1700 K STREET, N.W.<br>WASHINGTON, D.C. 20006-3817 |

LISA J. PARKER
(312) 558-3203
lparker@winston.com

March 23, 2007

**VIA E-MAIL**

Manatt Phelps & Phillips LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064
Attention: Chad S. Hummel

Re:    **Dyson Inc. v. Maytag Corporation**, No. 06-CV-654 GMS

Dear Chad:

I write in response to your proposed Limited Settlement Agreement to resolve Plaintiff Dyson, Inc.'s Motion for Preliminary Injunction, which is pending in the above-referenced matter. As you stated in your proposed agreement and as we have represented to Dyson and the Court: 1) the Hoover Fusion and Maytag Legacy vacuums are no longer being manufactured; 2) the Hoover Fusion is no longer being shipped to retailers; 3) "no loss of suction" advertising claims for the Hoover Fusion no longer appear on any Maytag and/or Hoover website; 4) the last shipment of Maytag Legacy vacuum cleaners containing a "no loss of suction" claim on the packaging will be made in April 2007; and 5) "no loss of suction" advertising claims for the Maytag Legacy no longer appear on any Maytag and/or Hoover website.

While we maintain that the advertising for the Hoover Fusion and Maytag Legacy were properly substantiated, in light of the decision to no longer make "no loss of suction" claims for the Fusion and Legacy, Dyson's request for preliminary injunction cannot proceed in good faith. Further, our clients are willing to attest to the above facts in a sworn affidavit to be filed with the Court. As such, we believe the Limited Settlement Agreement you propose is moot and not necessary to resolve this matter.

Sincerely,

Lisa J. Parker

CHI:1883444.1

WINSTON & STRAWN LLP

Manatt Phelps & Phillips LLP
C. Hummel
March 23, 2007


cc:    Kimball R. Anderson
       Stephen P. Durchslag
       Anthony DiSarro
       Ronald Y. Rothstein
       Frank DiGiovanni
       John Shaw
       Christopher Cole
       Kathrin Wanner

# Exhibit C

1

```
1                IN THE UNITES STATES DISTRICT COURT

2               IN AND FOR THE DISTRICT OF DELAWARE

3                           -   -   -

4    DYSON, INC.,                    :        Civil Action
                                     :
5              Plaintiff,            :
                                     :
6         v.                         :
                                     :
7    MAYTAG CORPORATION,             :
                                     :
8              Defendant.            :      No. 06-654-GMS

9                           -   -   -
                      Wilmington, Delaware
10                  Thursday, March 29, 2007
                           3:30 p.m.
11                   Telephone Conference
                            -   -   -
12


13   BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

14   APPEARANCES:

15           JOHN W. SHAW, ESQ., and
             MONTE T. SQUIRE, ESQ.
16           Young Conaway Stargatt & Taylor, LLP
                         -and-
17           CHAD S. HUMMEL, ESQ., and
             KATHRIN WANNER, ESQ.
18           Manatt, Phelps & Phillips, LLP
             (Los Angeles, CA)
19
                               Counsel for Plaintiff
20
             FRANCIS DiGIOVANNI, ESQ.
21           Connolly Bove Lodge & Hutz LLP
                         -and-
22           ANTHONY DiSARRO, ESQ.,
             RONALD Y. ROTHSTEIN, ESQ., and
23           LISA J. PARKER, ESQ.
             Winston & Strawn
24           (Chicago, IL)

25                             Counsel for Defendant
```

1    success demonstrates that Dyson, even though it would have

2    the Court believe otherwise, is firmly entrenched in the

3    United States vacuum cleaner market.

4            "The Court's finds that Dyson's argument is

5    premised on a potential loss of market share.  However, the

6    potential loss of market share is insufficient to finding

7    irreparable injury."

8            That was a year ago, when the sales were

9    actively being made of the Fusion.  Now it's a year later,

10   and the sales have wound down or are winding down.

11           So it is crystal-clear that there is no

12   irreparable injury here.  And we pointed out at the last

13   conference that their briefs were filed in New York under

14   Second Circuit law, arguing for a presumption of irreparable

15   harm.  That had been flatly rejected by the Third Circuit.

16   And they agreed that their brief was defective and needed to

17   be retooled.  They still haven't done that, because they

18   know that they cannot satisfy the irreparable injury

19   element.

20           So, frankly, the motion at this stage doesn't

21   even surpass the minimum requirements of Rule 11.  Frankly,

22   it should be denied outright.

23           They argue that they need additional discovery.

24   What discovery could possibly cure the absence of the

25   irreparable injury element to their claim?  That is only

1          Either way, once the brief goes in, the

2    discovery is taken, it will be easy to make that call.  You

3    should be able to make that call on a full record.  Not on,

4    at this point, a teleconference, with Mr. DiSarro simply

5    asserting irreparable harm isn't there.

6               THE COURT:  Okay.  Well, then, the other

7    questions that he poses, let's assume for a moment that I

8    accept your position that the effort there was to deflect my

9    attention onto an irrelevant concern.  What will the

10   (30)(b)(6) deposition provide this record and how will it

11   aid the Court in its ability to decide the matter, other

12   than the 30(b)(6) is apparently prepared to be briefed,

13   ready to be briefed?

14               MR. SHAW:  Anticipating you might ask that

15   question, I was working on some of those issues.  I did not

16   get completed on those.  Mr. Hummel will jump in.

17               The first one is exactly the urgency question,

18   how much more product is coming into the market and how long

19   will it be there and where is it going to be.  In addition,

20   for the product that is no longer being shipped, how much

21   remains in the marketplace at retailers and how long will

22   that take to be exhausted out of the marketplace.

23               Maytag has been very coy about saying anything

24   on those two points.  They only say they stopped

25   manufacturing and as to the one product stopped shipping,

1    but when pressed further, Your Honor, at the scheduling

2    conference did admit the products will remain in the retail

3    space for some time.  How long, we don't know.

4            That is question number one.

5            Mr. Hummel, you may have other things.

6            MR. HUMMEL:  I do, Your Honor.  If you would

7    permit me, very briefly.

8            THE COURT:  Yes.

9            MR. HUMMEL:  As you know, there has been a

10   corporate reorganization.  We need to understand exactly

11   what entity it is we are seeking to join, who is doing the

12   manufacturing and who is doing the advertising.

13           We have asked for a simple statement from the

14   Maytag side as to what entity it is precisely, what legal

15   entity is doing this conduct in the United States.  And we

16   don't have a document that shows that.  We don't know what

17   company is actually doing the offending conduct and what

18   company has inherited the liability, if any, from the prior

19   entity.

20           So that's another very significant topic, as we

21   go forward with the injunction motion and actually the case

22   itself.

23           But as I said before, we are willing to limit

24   this to three hours, to be as unintrusive as possible.

25   Those are the two primary areas we need the discovery in.

1    to such interrogatories?

2              MR. DiSARRO:  Interrogatories on sales or

3    numbers of products?

4              THE COURT:  Well, no.  He is talking about the

5    corporate change.

6              MR. DiSARRO:  Absolutely.  We could do that.

7              THE COURT:  Go ahead, Mr. Hummel.

8              MR. HUMMEL:  I was going to suggest the same

9    thing with respect to the second topic.

10              THE COURT:  How about the second topic, Mr.

11    DiSarro?

12              MR. DiSARRO:  The second topic being --

13              THE COURT:  Sales.

14              MR. DiSARRO:  Units and sales, fine.

15              THE COURT:  All right.  Do we want to agree,

16    counsel, so I don't have to hear from you again on this

17    until your briefs are filed, on a number of interrogatories

18    and subparts?  Or can you gentlemen figure that out on your

19    own?

20              MR. HUMMEL:  I am hopeful we can figure it out,

21    but we won't make it burdensome, Your Honor.

22              THE COURT:  Mr. DiSarro.

23              MR. DiSARRO:  That is fine.  I will rely on Mr.

24    Hummel's representations.

25              THE COURT:  All right.  Now, do you want --

1    perhaps it's premature, then, given this is going to take

2    place, to attempt to identify a briefing schedule.  I don't

3    think we have one.  Right?

4                MR. HUMMEL:  We do not, Your Honor.  We are

5    working to get the brief on the Third Circuit law done, but

6    we would like to get the factual information and we need the

7    interrogatories.  Circumstances have changed since we filed

8    it.

9                THE COURT:  This is the brief that Mr. DiSarro

10   discusses that needs to be retooled.

11               MR. HUMMEL:  That's correct.

12               THE COURT:  When do you propose, Mr. Hummel, to

13   get these special interrogatories out to Mr. DiSarro?

14               MR. HUMMEL:  We can serve them Monday.

15               THE COURT:  Mr. DiSarro, obviously, there are

16   provisions within the Rules of Civil Procedure that provide

17   for time frames to respond.  Do you want to take full

18   advantage of that, or are you willing to answer these

19   interrogatories in a more expeditious fashion?

20               MR. DiSARRO:  If they are truly limited to those

21   topics, we will answer them in a week.

22               THE COURT:  All right.  Then, Mr. Hummel, is

23   that acceptable?

24               MR. HUMMEL:  Yes, Your Honor.

25               THE COURT:  All right.  Then, counsel, I am

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 06-654-GMS |
| | ) | |
| | ) | |
| MAYTAG CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OBJECTIONS AND RESPONSES
TO PLAINTIFF'S SPECIAL INTERROGATORIES REGARDING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Defendant ("Hoover")[1], by and through its counsel, hereby submits the following objections and responses to the Special Interrogatories regarding Plaintiff's Motion for Preliminary Injunction ("Special Interrogatories") served by Plaintiff ("Dyson").

## I.     GENERAL OBJECTIONS

1.      To the extent these Special Interrogatories may be construed as calling for the production of information that is subject to a claim of privilege, including, without limitation, the attorney-client privilege or the work product doctrine, Hoover asserts that privilege and objects on that basis. To the extent any information protected by the attorney-client privilege or the work product doctrine or by any other applicable privilege is produced inadvertently, Hoover has not authorized such production, and no waiver of any privilege shall be inferred from such inadvertent production.

---

[1] Subsequent to the filing of the complaint and motion for preliminary injunction in this case, substantially all of the assets and liabilities of The Hoover Company, which was operated as a division of The Maytag Corporation at the time of suit, were sold to a newly formed corporation called "Hoover, Inc." and to entities owned by Hoover, Inc., including Hoover General LLC, Hoover Limited LLC and The Hoover Company I, L.P. Counsel for Defendant has notified counsel for Plaintiff of this transfer of assets and liabilities.

      2.      Hoover objects to Dyson's Special Interrogatories to the extent they impose upon Hoover obligations which exceed those imposed by the Federal Rules of Civil Procedure and the Local Rules.

      3.      To the extent these Special Interrogatories call for the production of information of a non-public, confidential, or proprietary nature, including trade secrets and/or commercial, financial or other information that has not been disseminated publicly, or any other matter protected by any commercial information or similar privilege, Hoover hereby asserts the confidentiality of such information.  Hoover's answers to these Special Interrogatories are hereby designated as Highly Confidential under the terms of the parties' agreed upon Protective Order and any letter or oral agreements among the parties regarding the confidentiality of documents and other information.

      4.      Hoover objects to these Special Interrogatories to the extent they seek information not reasonably calculated to lead to the discovery of admissible evidence; which is unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome or less expensive; or which Dyson has ample opportunity to obtain from other sources.

      5.      Hoover objects to these Special Interrogatories to the extent they seek overly broad information over which Hoover exercises no control or has no knowledge.

      6.      Hoover objects to these Special Interrogatories to the extent they encompass topics and seek information beyond the scope of the Court order which permitted Dyson to serve these interrogatories.  *See* Telephone Conference Tr. at 18-19 (Mar. 29, 2007).

      7.      Hoover objects to these Special Interrogatories to the extent Dyson intends to equate from Hoover's responses any legal conclusions or determination of liability related to this lawsuit.

8.    Hoover's responses are based on information currently in its possession. Investigation continues, and Hoover reserves the right to supplement its responses to these Special Interrogatories.

## II.    RESPONSES AND OBJECTIONS TO SPECIAL INTERROGATORIES

1.    **Identify the corporate entity that is presently responsible for any manufacture, distribution, and/or marketing (including advertising, packaging, or promotional activities) of the Hoover Fusion vacuum cleaner.  (For purposes of this interrogatory, "identify" means state the precise corporate name, the state by which it is incorporated, and its principal place of business.  "Presently" means as of the date of the response to this interrogatory.)**

Hoover, Inc., a Delaware corporation, presently is responsible for the manufacture, distribution and/or marketing (including advertising, packaging, or promotional activities) of the Hoover Fusion vacuum cleaner.  Hoover, Inc's principal place of business is located at 7005 Cochran Road, Glenwillow, Ohio 44139

2.    **Identify the corporate entity that is presently responsible for any manufacture, distribution and/or marketing (including advertising, packaging, and promotional activities) of the Maytag Legacy vacuum cleaner.  (For purposes of this interrogatory, "identify" means state the precise corporate name, the state by which it is incorporated, and its principal place of business.  "Presently" means as of the date of the response to this interrogatory.)**

Hoover, Inc., a Delaware corporation, presently is responsible for the manufacture, distribution and/or marketing (including advertising, packaging, or promotional activities) of the Maytag Legacy vacuum cleaner.  Hoover, Inc's principal place of business is located at 7005 Cochran Road, Glenwillow, Ohio 44139

3.    **State the total volume of sales of the Hoover Fusion vacuum cleaner in the United States between September 7, 2006 and the present.  (For purposes of this interrogatory, "volume of sales" means the number of units and total revenues from such sales, and "present" means as of the date of the response to this interrogatory.)**

Between September 1, 2006 and March 31, 2007, 105,879 Hoover Fusion and Hoover Fusion Plus vacuum units were sold in the United States.  We presently do not know the

number of units sold during the month of April 2007. The total revenues for these sales amount to $9,083,308.

      4.    **State the total volume of sales of the Maytag Legacy vacuum cleaner in the United States between September 7, 2006 and the present. (For purposes of this interrogatory, "volume of sales" means the number of units and total revenues from such sales, and "present" means as of the date of the response to this interrogatory.)**

      Between September 1, 2006 and March 31, 2007, 17,252 Maytag Legacy vacuum units were sold in the United States. We presently do not know the number of units sold during the month of April 2007. The total revenues for these sales amount to $1,601,638.

      5.    **State the precise date on which all manufacturing and marketing (including any advertising, packaging or promotional activities) of the Hoover Fusion vacuum cleaner, and which included any claims with the words "No Loss of Suction" or words of substantially similar meaning or import, ceased.**

      <u>Manufacturing and Marketing</u>: During March 2007, all manufacturing of the Hoover Fusion or Hoover Fusion Plus vacuum cleaners ceased.

      As of April 30, 2007, Hoover will cease distribution of any marketing, including any advertising, packaging or promotional activities related to claims with the words "No Loss of Suction" or words of substantially similar meaning or import related to the Hoover Fusion and Maytag Legacy.

      6.    **State the precise date on which all manufacturing and marketing (including any advertising, packaging or promotional activities) of the Maytag Legacy vacuum cleaner, and which included any claims with the words "No Loss of Suction" or words of substantially similar meaning or import, ceased.**

      <u>Manufacturing and Marketing</u>: During March 2007, all manufacturing of the Maytag Legacy vacuum cleaner ceased.

      As of April 30, 2007, Hoover will cease distribution of any marketing, including any advertising, packaging or promotional activities related to claims with the words "No Loss of

4

Suction" or words of substantially similar meaning or import related to the Hoover Fusion and

Maytag Legacy.

       7.   **In connection with any planned or anticipated manufacture and sales of any Hoover Fusion or Maytag Legacy vacuum cleaners after the date of the response to this interrogatory, state the following:**

> **(a)   all advertising, packaging, or promotional claims that will be made about the products, including, but not limited to, claims of "No Loss of Suction" or words of substantially similar meaning or import, and/or that the product has been shown by testing under the ASTM F558 standard to have constant suction, or no loss of suction up to 10 ounces of dirt;**
>
> **(b)   the presently planned number of units to be manufactured and shipped containing such claims;**
>
> **(c)   the sales outlets or channels into which such products will be shipped; and**
>
> **(d)   the estimated costs that would be incurred in removing or covering by sticker on all packaging for these products any words or visual images that state or otherwise communicate that these products have "No Loss of Suction" and removing all displays, including in-store displays, that state or otherwise communicate that these products have "No Loss of Suction."**

     (a) <u>Future Claims</u>:  Hoover does not intend to manufacture the Hoover Fusion

or the Maytag Legacy vacuums after the date of these Special Interrogatories with the claims

identified in this subsection (a) above.

     As of April 30, 2007, Hoover does not intend to distribute the Hoover Fusion

or the Maytag Legacy vacuums with the claims identified in this subsection (a) above.

     (b) <u>Manufacturing and Shipments</u>:  The presently planned vacuums to be

manufactured with the claims identified in subsection (a) above is zero.

     As of April 30, 2007, the presently planned vacuums to be shipped with the

claims identified in subsection (a) is zero.  Hoover is unable to calculate the number of

vacuums to be shipped between the date of these Special Interrogatories and April 30, 2007

as Hoover will not receive this shipment information until the end of this month. However, the amount will not be greater than the present amount of inventory, approximately 1,228 units of Fusion/Fusion Plus and 8,314 units of the Maytag Legacy. After April 30, 2007, no Hoover Fusion/Fusion Plus or Maytag Legacy units will be shipped with the claims identified in subsection (a) above.

(c) <u>Sale Outlets and Channels of Sale</u>: Any Hoover Fusion/Fusion Plus or Maytag Legacy products shipped after the date of these Special Interrogatories may be shipped to the following sale outlets: Home Depot, Home Shopping Network , Odd Lots and Big Lots.

(d) <u>Estimated Costs</u>: Hoover estimates that the "costs which would be incurred in removing or covering by sticker on all packaging for these products any words or visual images that state or otherwise communicate that these products have 'No Loss of Suction' and removing all displays, including in-store displays, that state or otherwise communicate that these products have 'No Loss of Suction'" to be approximately $200,000.

8.    **Identify any and all steps taken by Maytag, including any of its affiliated entities and successors, between September 7, 2006 and the present, to substantiate or otherwise validate advertising or marketing claims made about either the Hoover Fusion or Maytag Legacy products to the effect that the products have "No Loss of Suction." (For purposes of this interrogatory, "identify" means state the date such steps were taken, describe the "steps," state the names and corporate affiliations of all persons who took and or who were responsible for taking such "steps," and state the results of such "steps.")**

Hoover strongly objects to this Special Interrogatory as it encompasses topics and seek information beyond the scope of the Court order which permitted Dyson to serve these interrogatories. *See* Telephone Conference Tr. at 18-19 (Mar. 29, 2007). Consequently, Hoover will not respond to Special Interrogatory 8 at this time.

9.    **Identify any and all communications with either the National Advertising Division of the Better Business Bureau or the Federal Trade Commission regarding advertising claims made about the Hoover Fusion or the Maytag Legacy between August 2006 and the present. (For purposes of this interrogatory, "identify" means state the date,**

**persons involved in, and substance of each such communication. "Present" means as of the date of the response to this interrogatory.)**

Hoover strongly objects to this Special Interrogatory as it encompasses topics and seek information beyond the scope of the Court order which permitted Dyson to serve these interrogatories. *See* Telephone Conference Tr. at 18-19 (Mar. 29, 2007). Consequently, Hoover will not respond to Special Interrogatory 9 at this time.


Respectfully submitted,

**MAYTAG CORPORATION**


Dated:  April 13, 2007

/s/ Francis DiGiovanni
Francis DiGiovanni
James Heisman
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

Kimball R. Anderson
Stephen P. Durchslag
Anthony DiSarro
Lisa J. Parker
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601
Phone (312) 558-5600
Fax (312) 558-5700

## CERTIFICATE OF SERVICE

I, Francis DiGiovanni, hereby certify that on April 13, 2007, I caused a copy of the foregoing document to be served by e-mail and hand-delivery on the following counsel of record:

> C. Barr Flinn
> John W. Shaw
> Young Conaway Stargatt & Taylor LLP
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801

I, Francis DiGiovanni, hereby certify that on April 13, 2007, I caused a copy of the foregoing document to be served by e-mail and by U.S. Mail on the following counsel of record:

> Chad S. Hummel
> Kathrin A. Wanner
> Manatt Phelps & Phillips, LLP
> 11355 West Olympic Boulevard
> Los Angeles, CA 90064

> Christopher A. Cole
> Gregory W. Fortsch
> Manatt, Phelps & Phillips, LLP
> 700 12th Street, N.W.
> Washington, DC 2005

/s/ Francis DiGiovanni
Francis DiGiovanni (#3189)