# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-654-GMS |
| | ) | |
| v. | ) | **REDACTED FOR PUBLIC FILING** |
| | ) | |
| | ) | |
| MAYTAG CORPORATION, | ) | |
| HOOVER, INC. and | ) | |
| HOOVER PARTNERSHIP L.P. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Francis DiGiovanni  (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
Phone (302) 658-9141

Kimball R. Anderson
Stephen P. Durchslag
WINSTON & STRAWN LLP
Chicago, IL  60601
Phone (312) 558-5600

Ray L. Weber
Renner, Kenner, Greive, Bobak,
 Taylor & Weber
400 First National Tower
Akron, OH  44308
Phone (330) 376-1242

Dated:  May 4, 2007                              *Attorneys for Defendants*

**TABLE OF AUTHORITIES**

Page

*Barre-National, Inc. v. Barr Laboratories, Inc.,*
   773 F. Supp. 735 (D.N.J. 1991) ..........................................................................8

*Bell & Howell: Mamiya Co. v. Masel Supply Co.,*
   719 F.2d 42 (2d Cir. 1983)...............................................................................8

*Castrol, Inc. v. Pennzoil Quaker State Co.,*
   169 F. Supp. 2d 332 (D.N.J. 2001) ............................................................12, 13

*Chevron USA v. National Resources Defense Council,*
   467 U.S. 837 (1984)........................................................................................17

*Church & Dwight Co. Inc. v. S.C. Johnson & Son, Inc.,*
   873 F. Supp. 893 (D.N.J. 1994) ......................................................................24

*Consumers Union of United States v. General Signal Corp.,*
   724 F.2d 1044 (2d Cir. 1983)......................................................................20, 21

*Cordis Corp. v. Medtronic, Inc.,*
   835 F.2d 859 (Fed. Cir. 1987) ........................................................................10

*Dyson Tech. Ltd. v. Maytag Corp.,*
   Civ. No. 05-434-GMS (D. Del.) ...................................................................1, 8

*ECRI v. McGraw-Hill, Inc.,*
   809 F.2d 223 (3d Cir. 1987)..............................................................................9

*eSpeed, Inc. v. Brokertec USA, LLC,*
   2004 WL 62490 (D. Del., January 14, 2004).................................................8, 25

*GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.,*
   2006 WL 1792856 (3rd Cir. June 29, 2006)......................................................17

*Instant Air Freight Co. v. C.F. Air Freight, Inc.,*
   882 F.2d 797 (3rd Cir. 1989) ..............................................................2, 8, 9, 12

*L & F Prods., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.,*
   845 F. Supp. 984 (S.D.N.Y. 1994) ............................................................13, 24

*Mead Johnson & Co. v. Abbott Laboratories,*
   41 F. Supp. 2d 879 (S.D. Ind. Mar. 18, 1999) ..................................................17

*Millennium Import Co. v. Sidney Frank Importing Co., Inc.,*
   2004 WL 1447915 (D. Minn. June 11, 2004).....................................................17

## TABLE OF AUTHORITIES

**Page**

*Moltan Co. v. Eagle-Picher Indus., Inc.,*
    55 F.3d 1171 (6th Cir. 1995) ..............................................................................................10

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,*
    290 F.3d 578 (3rd Cir. 2002) ....................................................................9, 10, 11, 12, 20

*Novozymes A/S v. Genecor Intern., Inc.,*
    2005 WL 2716496 (D. Del., October 24, 2005) ........................................................8, 25

*Nutrition 21 v. United States,*
    930 F.2d 867, 871 (Fed. Cir. 1991)..............................................................................11

*Opticians Ass'n v. Independent Opticians,*
    920 F.2d 187 (3rd Cir. 1990) ........................................................................................10

*Pappan Enters, Inc. v. Hardee's Food Sys., Inc.,*
    143 F.3d 800 (3rd Cir. 1998) .....................................................................................10

*SmithKline Beecham Consumer Healthcare, L.P. v.*
    *Johnson & Johnson-Merck Consumer Pharms. Co.,*
    906 F. Supp. 178 (S.D.N.Y. 1995) ..........................................................................23, 24

*Soltex Polymer Corp. v. Fortex Indus., Inc.,*
    832 F.2d 1325 (2d Cir. 1987) ..................................................................................20, 21

*Thompson Medical Co. v. CIBA-GEIGY Corp.,*
    643 F. Supp. 1190 (S.D.N.Y. 1986)........................................................................20, 21

*Upjohn Co. v. American Home Prods. Corp.,*
    598 F. Supp. 550 (S.D.N.Y. 1984) .........................................................................20, 21

*W.L. Gore Assocs., Inc. v. Totes, Inc.,*
    788 F. Supp. 800 (D. Del. 1992).....................................................................................9

## OTHER AUTHORITIES

Lanham Act..............................................................................................................Passim

Defendants Maytag Corporation, Hoover, Inc. and Hoover Partnership L.P., (collectively "Hoover")[1] submit this answering brief in opposition to Plaintiff Dyson, Inc.'s ("Dyson") motion for a preliminary injunction.

## NATURE AND STAGE OF THE PROCEEDINGS

For the past four years, Dyson has captured a significant share of the upright vacuum cleaner market in the United States by falsely touting the suction and cleaning capabilities of its products, thus inducing consumers to spend hundreds of millions of dollars on vacuums that do not clean as well as Hoover's, while simultaneously harming Hoover's sales and market share. In an unmitigated campaign to exact further damage, Dyson brings this frivolous motion for a preliminary injunction against Hoover.

Incredibly, Dyson claims it has been and will be irreparably harmed by Hoover's advertising relating to two vacuums cleaners: the Hoover Fusion ("Fusion") and Maytag Legacy ("Legacy"). This claim is demonstrably false. Under Third Circuit law, Dyson is required to show a loss of market share in order to prove irreparable injury. This it cannot do. Indeed, Dyson's market share has steadily increased, at Hoover's expense. Moreover, this Court held in *Dyson Tech. Ltd. v. Maytag Corp.*, Civ. No. 05-434-GMS (D. Del.) ("*Dyson I*") that Dyson could not satisfy the irreparable injury element for preliminary injunctive relief on its patent claim. This finding compels a denial of the instant motion based on the same product.

---

[1] Dyson originally sued the Maytag Corporation, but, as a result of a January 31, 2007 transaction, the parties have stipulated to add Hoover, Inc. and Hoover Partnership L.P. as defendants to this action. Although Dyson directed the current motion solely against the Maytag Corporation, this memorandum in opposition is filed on behalf of all three defendants.

Dyson's motion is a rank abuse of process and profound waste of the Court's time.

Moreover, a preliminary injunction is unwarranted at the time because trial in this matter has been set for December 2007. (Affidavit of Josh Goldberg in Support of Hoover's Opposition to Dyson's Motion for Preliminary Injunction Ex. A at 24) ("Goldberg Aff.") Third Circuit law requires a movant for preliminary injunction relief to demonstrate harm that "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). Dyson does not and cannot show any alleged harm that could not simply be redressed after trial, which is a mere seven months away.

Finally, any delay in getting its baseless motion briefed and decided is of Dyson's own making. First, it filed this case in the Southern District of New York because it was forum-shopping in search of lower preliminary injunction standards. (Docket Item ("D.I.") 10 of 06-6576)[2] Second, it resisted Hoover's efforts to change venue to this Court, necessitating motion practice and a formal transfer ruling by the New York Court. (D.I. 25 of 06-6576) Third, after the case was appropriately transferred to this Court, Dyson failed to re-file the motion until April 2007, despite the fact that it was based on inapplicable Second Circuit law and needed to be revised to address the far more rigorous standards of the Third Circuit. (D.I. 66 of 06-654)

In short, Dyson sat on whatever rights it had with respect to the matters at bar.

---

[2] Docket Item references are included for this case, prior to its transfer from the Southern District of New York ("06-6576"), after its transfer to this Court ("06-654"), and for the other pending litigation involving Dyson's false advertising, also pending before this Court ("05-434"). Both the case and Docket Item are referenced.

## SUMMARY OF THE ARGUMENT

1.    Dyson's request for preliminary injunctive relief must fail because it cannot establish irreparable harm because, as of the date of this filing, Hoover has ceased conducting the activity about which Dyson complains. Further, Dyson cannot demonstrate any harm in the form of lost market share or sales as a result of any Hoover advertising, as required for preliminary injunctive relief in Lanham Act cases in the Third Circuit. In fact, throughout the relevant period, Dyson's sales and market share in the U.S. have risen.

2.    More importantly, this Court has already found that Dyson cannot show irreparable injury with respect to the Fusion, which is the main product that is the subject of this motion. And,

3.    Furthermore, Dyson cannot provide any evidence that Hoover's advertising is false or misleading and, thus, cannot show it is likely to succeed in its complaint. Hoover's advertising claim that its bagless cyclonic vacuum cleaners do not lose suction when loaded with up to 10 ounces of dust does not violate § 43(a) of the Lanham Act or any related state laws.

4.    Finally, the balance of harms and public interest also favor Hoover. Dyson's motion must fail.

3

## STATEMENT OF FACTS

### I.    Background

In 2002, Dyson introduced its brand of bagless cyclonic vacuum cleaners to the United States, claiming that they never lose suction, ever. (*See* Goldberg Aff. Ex. B)  As a result of this false advertising, Dyson was able to take the U.S. upright vacuum cleaner market by storm.  From its entry into the U.S. market in 2002 until the end of 2006, Dyson gained 12% share of the market in terms of units sold, and 28% percent share in terms of revenue. (*See* Declaration of Hoover Vice President David Baker ¶ 3) ("Baker Decl.")

Three years after Dyson's entry, Hoover introduced its own line of bagless cyclonic vacuum cleaners, namely the Fusion and Legacy. (*Id.* ¶ 2)

Hoover advertised that the Fusion and Legacy do not lose suction, along with the clear and conspicuous qualifier: "Suction stays constant for up to 10 ounces of dirt, as tested by an independent laboratory using the ASTM International F558 test method and dirt composition comprised of 70% mineral dust, 20% cellulose dust and 10% fibrous material." (Goldberg Aff. Ex. C)

Even advertisements produced by Dyson in related litigation demonstrate that Hoover displayed this qualifier claim prominently on advertising and product packaging

Moreover, on Hoover's website for the Fusion, the qualifier was located on the same page and in the same column as the claim that the vacuum does not lose suction. (Declaration of Kathrin A. Wanner in Support of Dyson's Motion for Preliminary Injunction Ex. G) ("Wanner Decl.")  The Internet advertising for the Fusion, however, has been removed from Hoover's website. (Goldberg Aff. Ex. D)

4

Moreover, the qualifier at all times was located in close proximity to the claim and always in plain view of the reader. (Goldberg Aff. Ex. C)[3] For example, on the product packaging, Hoover placed the claim near the top right corner of the packaging, and the qualifier on the same side of the box near the bottom left corner and in the exact same size. (*Id*)

## II.    No Effect On Dyson's Market Share

(Baker Decl. ¶ 2) Dyson cannot show that, during the brief two year periods that these vacuum cleaners have been on the market, the Fusion and Legacy advertising have had any effect Dyson's sales or market share.

The most current available data for market share of upright vacuum cleaners in the U.S. show that, when measuring by the number of units sold, Dyson went from about 1% market share in 1Q03 to about 13% in 4Q06—a 12% gain in the three-year period. (*Id*. ¶ 3) When measuring in terms of dollars, Dyson's market-share gain is even more significant— Dyson went from about 2% market share in 1Q03 to nearly 30% market share in 4Q06—a 28% gain in the same period. (*Id.*)

Significantly, Dyson's market share gains were virtually unaffected by Hoover's introduction of the Fusion or Legacy. After Hoover introduced the Fusion in June 2005, Dyson's market share in terms of units rose from about 8% in 3Q05 to 13% in 4Q06—a 5% gain in just over one year. (*Id*. ¶ 4) In dollars, Dyson's market share went from 18.9% to 28.8%—almost a

---

[3] Dyson's presentation for purposes of this motion of Hoover's advertising is laughable; the poor quality of the copies is a blatant effort by Dyson to mislead the Court as to the legibility of Hoover's ads and their disclaimers. (*See* Dyson Br. at 1-2; Wanner Decl. Exs. A-G) In order to give a true depiction of what consumers could clearly view, Hoover includes but a handful of the many advertisements that are not purposefully copied to appear darkened or taken out of focus. (Goldberg Aff, Ex. C)

10% gain in one year. (*Id.*) Dyson's market share increases was also unimpeded by the introduction of the Legacy in January 2006. (*Id.* ¶ 5)

## ARGUMENT

Courts, including this one, have long recognized that preliminary injunctive relief is "a drastic and extraordinary remedy that is not to be routinely granted." *Dyson Tech. Ltd. v. Maytag Corp.*, No. 05-434 (GMS), slip. op. (D. Del. Mar. 21, 2006) ("*Dyson I* Op.") (attached as Goldberg Aff. Ex. F); *see also Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3rd Cir. 1989).

Where, as here, a plaintiff fails to show irreparable harm and a likelihood of success on the merits, the court should deny the drastic relief of a preliminary injunction. *See Novozymes A/S v. Genecor Intern., Inc.*, No. Civ.A. 05-160-KAJ., 2005 WL 2716496 at * 1 (D. Del. Oct. 24, 2005) (Jordan, J) (attached as Goldberg Aff. Ex. G); *eSpeed, Inc. v. Brokertec USA, LLC*, No. Civ.A. 03-612-KAJ, 2004 WL 62490 at * 1 (D. Del. Jan. 14, 2004) (attached as Goldberg Aff. Ex. H); *see also Barre-National, Inc. v. Barr Laboratories, Inc.*, 773 F. Supp. 735, 746 (D.N.J. 1991) (holding that pharmaceutical manufacturer failed to demonstrate that pharmacists were likely to confuse its liquid products with competitor's liquid products, as required to preliminarily enjoin competitor's use of allegedly infringing mark under the Lanham Act); *Bell & Howell: Mamiya Co. v. Masel Supply Co.*, 719 F.2d 42 (2d Cir. 1983) (reversing district court's grant of preliminary injunctive relief where plaintiff could not demonstrate a likelihood of success on the merits of its Lanham Act claim).

To obtain a preliminary injunction under the Lanham Act, a plaintiff must show that the following factors favor granting relief: (1) the likelihood that the plaintiff will succeed on the merits; (2) the extent to which the plaintiff will suffer irreparable harm without injunctive

relief; (3) the extent to which the defendant will suffer irreparable harm if the injunction is issued; and (4) the public interest. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002).

## I.    DYSON CANNOT DEMONSTRATE THAT IT WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF

Because Dyson cannot show irreparable harm, the Court should deny Dyson's motion on this ground alone.

In order to prove irreparable harm, the plaintiff must demonstrate potential harm that cannot be redressed by a legal or an equitable remedy following a trial. *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989) (reversing district court's issuance of preliminary injunction where evidence did not establish that plaintiff faced irreparable injury). In other words, a preliminary injunction must be the only way of protecting the plaintiff from harm. *Id.*

In addition, establishing a *risk* of irreparable harm is not enough. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (reversing district court's issuance of preliminary injunction where plaintiff failed to meet its burden of establishing irreparable injury) (emphasis added). A plaintiff has the burden to make a "clear showing of immediate irreparable injury." *Id.* (citations omitted). The requisite injury "must be of a peculiar nature, so that compensation in money cannot atone for it." *Id.* (citations omitted). In sum, in order to show irreparable harm, the plaintiff must show more than a reasonable basis that it is likely to suffer injury; it must show a particularized and actual injury, such as loss of market share. *Novartis*, 290 F.3d at 595-96.

Dyson utterly misrepresents the law in the Third Circuit. Citing the 1992 district court decision of *W.L. Gore Assocs., Inc. v. Totes, Inc.*, 788 F. Supp. 800 (D. Del. 1992), Dyson

argues that "[i]n the Third Circuit, to be entitled to injunctive relief, a false advertising plaintiff need submit only proof providing *a reasonable basis for the belief that the plaintiff is likely to be damaged as a result of the false advertising.*" (Dyson Brief in Support of its Motion for Preliminary Injunction at 25) (emphasis added) ("Dyson Br.")  However, the Third Circuit's 2002 decision in *Novartis* squarely rejected that argument. 290 F.3d at 595-96.  Specifically, the Third Circuit held that the "reasonable basis for believing that it is likely to suffer injury" was the wrong standard to apply on a preliminary injunction motion in a false advertising case. *Id.* at 595.

Rather than allowing false advertising plaintiffs to obtain a preliminary injunction on the allegation that they *may* suffer harm, the *Novartis* court squarely held instead that "loss of market share constitutes irreparable harm." *Id.* at 596 (emphasis added) (*citing Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1175 (6th Cir. 1995) (affirming decision to grant preliminary injunction where manufacturer's false claims were causing irreparable injury to a competitor in the form of lost sales and market share)); *Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859, 864 (Fed. Cir. 1987) ("a loss in market share caused by an injunction could result in irreparable harm"); *Pappan Enters, Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3rd Cir. 1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."); *Opticians Ass'n v. Independent Opticians*, 920 F.2d 187, 195 (3rd Cir. 1990) (same).

It is incontrovertible that Dyson cannot meet the standard.  Indeed, Dyson has gained, not lost, market share during the relevant period in this case.

This Court said essentially the same thing in *Dyson I* (attached as Goldberg Aff. Ex. F). In *Dyson I*, Dyson moved for a preliminary injunction to enjoin Hoover from manufacturing and selling the Fusion. *Id.* at 1. In denying injunctive relief, the Court held:

> ... Dyson concedes that in less than three years it has gained 29% of the vacuum cleaner market in terms of sales in the United States, and about 10% in the market in terms of number of sales units. In fact, according to Dyson, '[r]ecently published statistics show that, in the short time its products have been available in our country [*i.e.*, the United States], Dyson has become the number one seller of upright vacuum cleaners as measured by value.' this success demonstrates that Dyson, even though it would have the Court believe otherwise, is firmly untrenched in the United States vacuum cleaner market.

(*Id.* at 4 (citations omitted)).

Recognizing that "Dyson's argument, therefore, is premised on its *potential* loss of market share," the Court found that the "potential to lose market share" is insufficient to support a finding of irreparable harm. *Id.*, *citing Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) (noting that loss of market share (or speculation that it might occur) is insufficient to state irreparable harm for preliminary injunction) (emphasis in original).

Despite this well-established law in the circuit, Dyson nevertheless argues that it "need not come forward with specific evidence that [Hoover's] ads have actually resulted in identifiable loss of sales to Dyson." (Dyson Br. at 25) *Novartis* and this Court's decision in Dyson I are squarely to the contrary. At both the March 15 and 29 conferences with the Court counsel for Hoover cited this law and Dyson's counsel acknowledge that it would address it in its brief. (Goldberg Aff. Ex. A at 6-7; Ex. I at 7-11) Yet, remarkably, Dyson brief fails to address these precedents, and makes no attempt to distinguish them in any way.

11

As shown above, Dyson has continued to gain market share at the expense of Hoover. Even after Hoover launched and sold the Fusion and Legacy at three large, national retailers, Dyson's market share continued to increase. (Baker Decl. ¶ 4)

Dyson's mischaracterization of the law in the Third Circuit and its ignorance of this Court's decision on the same issue mandate denial of Dyson's motion on this ground alone.

## II.    BECAUSE HOOVER'S ADVERTISING WAS NOT FALSE, DYSON CANNOT SHOW A LIKELIHOOD OF SUCCESS

Dyson's motion also must be denied because it cannot show likelihood of success on the merits.

In order to demonstrate a likelihood of success on the merits of a false advertising claim under the Lanham Act, a plaintiff must show that the commercial message or statement is either (1) literally false or (2) literally true or ambiguous, but has the tendency to deceive consumers. *Novartis.,* 290 F.3d at 586, *citing Castrol, Inc. v. Pennzoil Co.,* 987 F.2d 939, 943 (3rd Cir. 1993) ("a plaintiff must prove either literal falsity or consumer confusion, but not both") (emphasis in original).

12

### A.   Hoover's Advertisements Are Not Literally False

Dyson contends that Hoover's "No Loss of Suction" claim is literally false because: (1) Hoover's tests do not establish the "No Loss of Suction" proposition, (2) Dyson's testing proves that Hoover's Fusion and Legacy vacuums lose suction by about 35%; and (3) the NAD has already concluded that Hoover's suction claim was literally false.

Courts have stated that in order to prove literal falsity when a defendant's advertisement is premised on tests or studies, the plaintiff must demonstrate that defendant's tests are "not sufficiently reliable to permit one to conclude with *reasonable certainty* that they established the claim made." *Castrol, Inc. v. Pennzoil Quaker State Co.*, 169 F. Supp. 2d 332, 336 (D.N.J. 2001).   In other words, Hoover's tests need only establish with a *reasonable certainty* that Hoover's vacuums do not lose suction for up to 10 ounces of dirt. *See, e.g., L & F Prods., a Div. of Sterling Winthrop, Inc. v. Procter & Gamble Co.*, 845 F. Supp. 984, 1001 (S.D.N.Y. 1994) (finding tests sufficiently reliable to support a superiority claim even though tests were not perfect).

13

15

Dyson argues that Hoover's claim of no loss of suction up to 10 ounces of dust (which is equal to approximately 283 grams) is misleading because it constitutes only about 25% of the available dust capacity of the Fusion and Legacy vacuums as determined by IBR's testing. (Dyson Br. at 10)  Dyson argues that the IBR testing demonstrated that the full point for the Hoover vacuums is actually 1200 grams and that consumers are misled because the Hoover vacuums lose suction between the partial loaded point of 10 ounces (283 grams) and the actual full point of 1200 grams.  (*Id.*)

### 2.    The NAD Decision

Finally, Dyson's reliance upon a decision of the National Advertising Division of the Better Business Bureau ("NAD") is misplaced.

The NAD's general observations regarding vacuum cleaner advertising and substantiation are valuable, but because the NAD is not an adjudicating body with evidentiary rules or hearings with the examination of live witnesses under oath, its findings regarding *specific* products are not entitled to collateral estoppel effect in any subsequent civil litigation. *See GlaxoSmithKline Consumer Healthcare, L.P. v. Merix Pharmaceutical Corp.*, No. 05-4566, 2006 WL 1792856 at *1 (3d Cir. June 29, 2006) ("Participation in NAD proceedings is voluntary, and the results are non-binding.") (attached as Goldberg Aff. Ex. N); *see also Millennium Import Co. v. Sidney Frank Importing Co., Inc.*, No. Civ. 03-5145 JRT/FLN, 2004 WL 1447915 at *2 (D. Minn. June 11, 2004) (recognizing that NAD decisions are not binding) (attached as Goldberg Aff. Ex. O); *Mead Johnson & Co. v. Abbott Laboratories*, 41 F. Supp. 2d 879, 905 (S.D. Ind. Mar. 18, 1999) (stating that NAD decisions are not binding and that federal courts remain the legal forum for adjudicating Lanham Act claims). Nor is the NAD an agency of the federal government whose views would be entitled to deference under the *Chevron Doctrine. See Chevron USA v. National Resources Defense Council*, 467 U.S. 837 (1984). Therefore, the NAD's findings regarding Hoover (as opposed to its general observations

17

regarding vacuum cleaner advertising and substantiation) are not entitled to any weight for purposes of Dyson's motion.

Indeed, Dyson's reliance in the NAD decision is utterly disingenuous in light of its motion *in limine* to preclude use of that NAD decision in *Dyson I*.

In *Dyson I*, Dyson states:

> First, the [NAD] decision is blatant hearsay, an out-of-court statement on behalf of a private entity. Second, the NAD Opinion sets for the NAD's own opinions and inferences, but does not satisfy the Federal Rules of Evidence requirements for expert opinion testimony. Third, the NAD Opinion bears the false and prejudicial imprimatur of a "judicial" finding and states quasi-legal principles that will confuse a jury.

(NAD Motion, D.I. 314 of 05-434 at 1).

With respect to NAD procedures, Dyson asserts:

> The parties have no right to discovery or a hearing; the NAD has discretion to request additional materials or have a "meeting" or phone call with one or both parties. The NAD's decision . . . is non-binding, and compliance is voluntary.

(*Id.* at 2, citations omitted).

Dyson further notes that "[s]ubstantively, principles governing NAD disputes are very different from false advertising principles under the Lanham Act . . . NAD proceedings involve a different body of legal principles and burdens of proof, inconsistent with those that govern the case." (*Id.* at 2-3).

In an astonishing about face, Dyson contends in this case:

> The NAD is a widely-respected, advertising industry-funded arbitral forum that reviews national advertising for truthfulness and accuracy and determines whether advertising claims have been substantiated.

(Dyson Br. at 2)

Dyson cannot have it both ways. For the purposes of considering the extraordinary remedy of injunctive relief before a trial on the merits (at which time, in Dyson's

18

world, NAD decisions would be inadmissible), the specific findings in the NAD decision relating to any Hoover products, on which Dyson relies, should carry no weight in these proceedings.

In the NAD proceeding, Dyson challenged a variety of advertising claims by Hoover. (Goldberg Aff. Ex. P at 1-2)  The primary focus involved cleaning superiority claims by Hoover with regard to Dyson's vacuum cleaners. (*Id.* at 3, 6)  Hoover claimed that its vacuum cleaned more effectively then Dyson's product. (*Id.* at 6, 9)  Hoover substantiated that claim before the NAD by submitting testing, conducted in accordance with industry standards, that demonstrated that Hoover's vacuums outclean Dyson's. (*Id.* at 13-14)

However, when it came to deciding the merits of Hoover's related advertising claim that the Fusion experiences no loss of suction when filled with up to ten ounces of dust, the NAD inexplicably ignored its own conclusions regarding the cleaning claim.  The NAD remarked that suction claims imply a "meaningful" performance attribute, such as cleaning efficacy, to consumers that may not, in fact, exist. (*Id.* at 33-34)

In short, the NAD believed that suction claims have the potential to mislead consumers into believing that cleaning efficacy has been demonstrated.  While Hoover wholeheartedly agrees with this general observation, in this case, the NAD's fear was entirely misplaced with regard to Hoover's claim.  Hoover's suction claims were tied to a cleaning efficacy claim that was substantiated.  Because the NAD already agreed that Hoover had a valid basis to claim cleaning superiority over Dyson, there was no danger that consumers would be misled into believing that Hoover's claim of "no loss of suction up to 10 ounces" implies a performance attribute that does not exist.  In other words, the NAD's rationale on Hoover's specific suction claims was flatly contradicted by its conclusions on Hoover's cleaning claims.

19

The NAD decision is internally inconsistent insofar as it pertains to Hoover's claim of no loss of suction when filled with up to 10 ounces of dust. Under the NAD's reasoning, Hoover's claim should pass muster because it is coupled with a cleaning claim that is supported by testing that comports with "real world conditions." Also, there is no danger here that consumers will mistakenly believe that suction power falsely implies cleaning efficacy. Hoover's suction claims are accompanied by cleaning claims that are well-substantiated.

### B.    Hoover's Advertisements Are Not Implicitly False

Dyson contends that, if Hoover's claim is literally true, it is still misleading because the qualifiers are legally insufficient. (Dyson Br. at 21-25) This contention must fail.

Disclaimers in advertising are commonplace and are extremely useful at dispelling the possibility of consumer confusion. *See, e.g., Upjohn Co. v. American Home Prods. Corp.*, 598 F. Supp. 550, 561 (S.D.N.Y. 1984) (holding that a disclaimer countered any misleading effect of the advertisement); *see also Novartis*, 290 F.3d at 599.[8] Courts have routinely held that explanatory disclaimers are an appropriate means of alleviating the possibility that a claim might mislead consumers. *Soltex Polymer Corp. v. Fortex Indus., Inc.*, 832 F.2d 1325, 1329-30 (2d Cir. 1987); *Consumers Union of United States v. General Signal Corp.*, 724 F.2d 1044, 1053 (2d Cir. 1983); *Thompson Medical Co. v. CIBA-GEIGY Corp.*, 643 F. Supp. 1190, 1199 (S.D.N.Y. 1986).

In fact, courts have regularly expressed preference that the advertiser use an explanatory disclaimer over enjoining the claims at issue. *See e.g., Thompson Medical*, 643 F. Supp. at 1199 (refusing to enjoin language so long as advertiser included an explanatory

---

[8] Dyson's citation to *Novartis* to the contrary is inapposite because, there, the question was whether the disclaimer could cure alleged falsity of the offending products *name*, not advertising that has since ceased. (Dyson Br. at 21); *Novartis*, at 598-9.

disclaimer); *Consumers Union*, 724 F.2d at 1053 ("Absolute prohibitions of speech . . . are improper where there is any possibility that an explanation or disclaimer will suffice."); *Soltex Polymer*, 832 F.2d at 1329-30 (preferring the use of a disclaimer over issuing an injunction). Even further, courts have held that to "enjoin language where there is a reasonable possibility that a disclaimer would suffice would violate the first amendment." *Upjohn*, 598 F. Supp. at 561 (S.D.N.Y. 1984).

Accordingly, Hoover employs an explanatory disclaimer that for up to 10 ounces of dirt the Fusion and the Legacy will not lose suction and thereby eliminates any possibility that Hoover's claim could be misleading.  *See, e.g., Thompson Medical*, 643 F. Supp. at 1199 (finding that defendants' claim was not false and misleading where an asterisk directed the reader to a proper "explanatory disclaimer").  Hoover's disclaimer leaves no doubt that its suction claim is qualified—namely, that the vacuum will eventually lose suction as its dirt cup is partially loaded with dust.

### C.    Hoover's Suction Claims Are Expressly Qualified

In light of the NAD decision, Hoover proposed modifying its suction claim to completely eliminate any possibility of consumer confusion.  Hoover included the following explicit language, which appears in the same size and font directly after the claim that the Hoover vacuums do not lose suction when filed with up to 10 ounces of dust: "Vacuum Cleaner Suction Tests Do Not Represent Carpet Cleaning Ability."  (Goldberg Aff. Ex. Q at 2) Additionally, Hoover added the following statement to its qualifier: "No testing has established a correlation between suction performance and carpet cleaning ability in the home.  Household results may vary."  (*Id.*)  Hoover proposed these additional disclosures in a good-faith effort to address the concerns raised by the NAD.

21

Dyson contends that the qualifying language above, as well as Hoover's qualifier that its vacuums do not lose suction when loaded with up to 10 ounces of dust, are insufficient because consumers either will not notice them or will not understand them. (Dyson Br. at 21-24) In support of this argument, Dyson submits a consumer survey conducted by a putative expert, Michael Mazis.  (Wanner Decl. Ex. P)  A review of Mazis's consumer survey, however, reveals fatal flaws that render its conclusions void.

22

Because Hoover and Dyson have presented diametrically opposed testimony from two experts, Dyson cannot meet the likelihood-of-success element for a preliminary injunction. (Goldberg Ex. F at 3) (holding that Dyson had not shown likelihood of success because the parties submitted expert opinions that were diametrically opposed).

Moreover, Dyson's reliance on Second Circuit case law to the contrary is inapposite. For example, Dyson cites *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co., Inc.*, 906 F. Supp. 178 (S.D.N.Y. 1995), for the proposition that inconspicuously located qualifiers do not remedy misleading claims. (Dyson Br. at 22) In *SmithKline*, the defendant advertised that doctors prescribed its heartburn medicine over two hundred million times more than they prescribed the plaintiff's heartburn medicine. 906 F. Supp. at 186. The court found that the advertisement implied that prescriptions were measured over an "equal time period." *Id.* However, according to the qualifier, the defendant did not measure prescriptions over an equal time period. Instead, defendant's calculations included an extra nine years of prescriptions, which artificially inflated defendant's numbers. Therefore, the qualifier in *SmithKline* did not qualify the claim, it revealed that the claim was

23

deceptive. Here, Hoover's qualifier limits its suction claim by explaining to the reader that "no loss of suction" occurs during a period of usage (the collection of 10 ounces or less of dirt).

Because Hoover's advertising is not literally or implicitly false, Dyson cannot succeed on its claims and its motion must be denied.

## III.     THE BALANCE OF HARMS FAVORS HOOVER

The balance of equities weigh heavily in favor of Hoover here. Unlike Hoover, which has made narrow, limited, and qualified suction claims, Dyson has been making a "No Loss of Suction" claim without any qualifying language since it entered the U.S. market in 2002. (Goldberg Aff. Ex. B) The cornerstone of Dyson's advertising campaign in the U.S. always has been that its vacuums "never lose suction," "ever," no matter how far or how long consumers use them. (*Id.*) Accordingly, granting Dyson a preliminary injunction would provide an unjust, competitive advantage for Dyson. *See L & F Prods.*, 845 F. Supp. at 1004 (denying preliminary injunction where plaintiff did not show likelihood of success on the merits and plaintiff would have gained a significant competitive advantage over defendant).

Dyson already has exacted copious damage on its competitors in the U.S. as a result of its own flagrantly false advertising campaign. Its current motion is little more than another business decision to cause further harm to its main competitor, Hoover, and must be denied.

## IV.    THE PUBLIC INTEREST FAVORS DENIAL OF INJUNCTIVE RELIEF

Because Hoover's advertising of the Fusion and Legacy vacuums is true, Dyson's arguments regarding the public interest do not apply. (Dyson Br. at 29)  Little public interest is served by an injunction against a company that already has ceased manufacturing and advertising products about which an opponent brings frivolous Lanham Act claims.  Dyson's unfettered gains in the U.S. market,                                            , and the fact that Hoover's advertising is not false demonstrate that Dyson cannot prove the essential elements for a preliminary injunction.  Accordingly, the public interest favors Hoover, and Dyson's motion should be denied. *Novozymes*, 2005 WL 2716496 at * 1 (denying preliminary injunction because movant failed to establish either of the first two crucial factors without making additional findings respecting the other factors) (attached as Goldberg Aff. Ex. G); *eSpeed, Inc. v. Brokertec USA, LLC*, No. Civ.A. 03-612-KAJ, 2004 WL 62490 at *1 (same) (attached as Goldberg Aff. Ex. H).

**CONCLUSION**

For the foregoing reasons, the Court should deny Dyson's request for preliminary

injunctive relief.

Francis DiGiovanni (#3189)
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
Phone (302) 658-9141

Kimball R. Anderson
Stephen P. Durchslag
Winston & Strawn LLP
35 West Wacker Drive
Chicago, IL 60601
Phone (312) 558-5600

Ray L. Weber
Renner, Kenner, Greive, Bobak,
    Taylor & Weber
400 First National Tower
Akron, OH 44308
Phone (330) 376-1242

Dated: May 4, 2007

**CERTIFICATE OF SERVICE**

I, Francis DiGiovanni, hereby certify that on May 4, 2007, I caused a copy of the

foregoing document to be served on the below-listed counsel of record in the manner so

indicated:

**BY HAND AND E-MAIL:**

John W. Shaw
Young Conaway Stargatt & Taylor LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801

**BY E-MAIL AND U.S. MAIL:**

Chad S. Hummel
Kathrin A. Wanner
Manatt Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, CA 90064

Christopher A. Cole
Manatt, Phelps & Phillips, LLP
700 12th Street, N.W.
Washington, DC 2005

Steven F. Reich
Jeffrey S. Edelstein
Manatt, Phelps & Phillips, LLP
7 Times Square
New York, NY 10004

Francis DiGiovanni (#3189)