IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DYSON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 06-654-GMS |
| MAYTAG CORPORATION, | ) | |
| HOOVER COMPANY 1, LP, and | ) | |
| HOOVER, INC. | ) | **REDACTED –** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

## DYSON, INC.'S REPLY BRIEF IN SUPPORT
## OF ITS MOTION FOR A PRELIMINARY INJUNCTION

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
C. Barr Flinn  (No. 4092)
John W. Shaw (No. 3362)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
bflinn@ycst.com
jshaw@ycst.com
cstover@ycst.com

OF COUNSEL:

Chad S. Hummel
Kathrin A. Wanner
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

*Attorneys for Plaintiff Dyson, Inc.*

Dated:  May 11, 2007

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT .............................................................................................................. 2

    A.    Dyson Will Suffer Irreparable Harm If Maytag's False Packaging And
            Advertising Continue ......................................................................................... 2

            1.    Lost Sales and Consumer Confusion Caused By Maytag's False
                   Advertising Irreparably Harm Dyson ......................................................... 2

            2.    This Court's Rulings In Dyson I Do Not Preclude A Finding Of
                   Irreparable Harm In This Case............................................................... 6

            3.    Maytag's Voluntary Cessation Of Its False Advertising Does Not
                   Moot This Motion. .................................................................................. 8

    B.    Maytag's Claims Are Literally False And Unsubstantiated ............................... 10

            1.    Dyson's Testing Was Properly Conducted And Demonstrates That
                   Maytag's Vacuums Lose Suction ........................................................... 10

                     █████████████████████████████████████████ ............ 12

            3.    Maytag's Disclaimer Is Woefully Inadequate To Cure Its False
                   Advertising Claims ................................................................................ 13

             4.    Dyson's Citation To The NAD's Prior Decision Is Entirely Proper. ....... 16

            5.    Dyson Has Vigorously Prosecuted Its Motion for Preliminary
                   Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

    C.    The Balance Of Harms Overwhelmingly Favors Dyson ..................................... 19

III. CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Asseo v. Pan Am. Grain Co.,*
   805 F.2d 23, 26 (1st Cir. 1986) .......................................................................... 18

*Chattanoga Mfg., Inc. v. Nike, Inc.,*
   140 F. Supp. 2d 917, 928-29 (N.D. Ill. 2001) ...................................................... 14

*Flynt Distrib. Co. v. Harvey,*
   734 F.2d 1389, 1394 (9th Cir. 1984) .................................................................. 18

*Heideman v. South Salt Lake City,*
   348 F.3d 1182, 1188 (10th Cir. 2003) ................................................................ 18

*Houdini Inc. v. Goody Baskets LLC,*
   166 Fed. Appx. 946, 947 (9th Cir. 2006) ............................................................ 18

*Kos Pharm., Inc. v. Andrx Corp.,*
   369 F.3d 700, 718 (3d Cir. 2004) ................................................................... 17, 18

*Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,*
   51 F.3d 982, 985 (11th Cir. 1995) ...................................................................... 18

*Millenium Import Co. v. Sidney Frank Importing Co., Inc.,*
   Civ. A. No. 03-5145 JRT/FLN,
   2004 WL 1447915 (D. Minn. June 11, 2004) ..................................................... 14

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.*
   *Co.,* 290 F.3d 578 (3d Cir. 2002) ....................................................................... 2

*Opticians Ass'n v. Indep. Opticians,* 920 F.2d 187, 195 (3d Cir. 1990) ...................... 2

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,*
   143 F.3d 800, 805 (3d Cir. 1998) ........................................................................ 2

*Sierra Club, Lone Star Chapter v. FDIC,*
   992 F.2d 545, 551 (5th Cir. 1993) ...................................................................... 18

*Ty, Inc. v. GMA Accessories, Inc.,*
   132 F.3d 1167, 1171 (7th Cir. 1997) .................................................................. 18

*Upjohn Co. v. Riahom Corp.,*
   641 F.Supp. 1209 (D. Del. 1986) ...................................................................... 7, 8

*W.L. Gore Assocs., Inc. v. Totes, Inc.,*
   788 F. Supp. 800, 810 (D. Del. 1992) .................................................................. 2

## OTHER AUTHORITIES

Shari Seidman Diamond, *Reference Guide on Survey Research,*
   in Reference Manual on Scientific evidence pp. 259-60
   (Matthew Bender ed., 2000) ............................................................................... 14

Plaintiff Dyson, Inc. ("Dyson") submits this brief in reply to defendants Maytag Corporation, Hoover, Inc. and Hoover Partnership L.P.'s (collectively, "Maytag") answering brief ("Opposition") to Dyson's motion for a preliminary injunction.

## I.    INTRODUCTION

Dyson's request for a preliminary injunction should be granted.  Dyson will be irreparably injured if Maytag is permitted to continue to make these false claims in the marketplace, in the form of lost sales, consumer confusion, and injury to Dyson's goodwill and reputation. Maytag's Opposition blatantly misstates the law regarding irreparable injury and the arguments advanced by Maytag suggesting that Dyson will not be irreparably harmed absent injunctive relief entirely lack merit. Further, Dyson has demonstrated, through sound testing, that it is likely to prevail on its false advertising claim. Maytag's attempts to refute this evidence fail. As such, Dyson has met the standards for the issuance of a preliminary injunction. Further, Maytag has indicated that the cost of removing these false and misleading claims -- ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ -- is relatively minimal, and Dyson is willing and able to bond that cost. As such, the balance of equities also weighs in favor of granting Dyson's motion for preliminary injunction. Maytag should be required to remove all "No Loss of Suction" claims associated with its Hoover Fusion and Maytag Legacy vacuums immediately.

## II.    ARGUMENT

### A.    Dyson Will Suffer Irreparable Harm If Maytag's False Packaging And Advertising Continue.

#### 1.    Lost Sales and Consumer Confusion Caused By Maytag's False Advertising Irreparably Harm Dyson.

In its Opposition, Maytag argues that Third Circuit law somehow *requires* Dyson to prove loss of market share in order to establish irreparable harm. But neither the principal case relied on by Maytag -- *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.,* 290 F.3d 578 (3d Cir. 2002) -- nor any other Third Circuit case law requires proof of loss of market share to establish irreparable harm.

Maytag states that "[r]ather than allowing false advertising plaintiffs to obtain a preliminary injunction on the allegation that they *may* suffer harm, the *Novartis* court squarely held instead that 'loss of market share constitutes irreparable harm,'" clearly implying that Third Circuit law *requires* such proof. [Opp'n at p. 10; *see also Id.* at p. 1 ("Under Third Circuit law, Dyson is required to show a loss of market share in order to prove irreparable injury.").] But nothing in *Novartis* or any other Third Circuit case requires that particular type of evidence. Rather, loss of market share is simply one type of evidence by which a plaintiff may show irreparable harm. *See W.L. Gore Assocs., Inc. v. Totes, Inc.*, 788 F. Supp. 800, 810 (D. Del. 1992) ("Irreparable injury does not require diversion of actual sales and it can include the loss of control of reputation, loss of trade, and loss of good will."). Indeed, the *Novartis* court noted with approval that the cases of *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) and *Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 195 (3d Cir. 1990) both held that: "[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *See Novartis*, 290 F.3d at 596; *see also* Opp'n at p. 10 (quoting

same). Thus, it is crystal clear that, contrary to Maytag's protestations, Third Circuit law does not require Dyson to demonstrate a loss of market share.

Applying the appropriate standard under Third Circuit law, the evidence is clear that Dyson will suffer irreparable harm if Maytag is permitted to continue marketing and selling the Fusion and Legacy vacuum cleaners with the "No Loss of Suction" claim. While it is true that Dyson has largely gained market share over the relevant time period, this fact alone does not end the irreparable harm analysis. It is reasonable to conclude that Maytag's marketing of the Fusion and the Legacy with the "No Loss of Suction" claim has diverted sales from Dyson and continues to do so. Crucially, the following points made by Dyson in its Opening Brief have gone uncontested by Maytag in its Opposition:

- Maytag and Dyson are competitors in the upright vacuum cleaner market (Opening Br. at p. 27 citing Att'y Decl., Ex. X ¶ 9);
- A loss in sales occasioned by false advertising of one is highly likely to result in at least some gain by the other (*Id.* citing Att'y Decl., Ex. X ¶¶ 13-18);
- The "No Loss of Suction" claim has historically been identified with Dyson (*Id.*);
- Maytag used the "No Loss of Suction" claim on its Fusion and Legacy vacuum cleaners to undermine Dyson's uniqueness in the market and to take sales from Dyson for its own benefit (*Id.*); and
- ███████████████████████████████████████████████

Thus, although Dyson cannot prove that its market share declined during the relevant time period, Dyson has presented more than enough proof to reasonably conclude that Maytag's false advertising has diverted and will continue to divert sales from Dyson, and has and continues to erode Dyson's good will and reputation in the marketplace.

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████  For

instance, in its Advertiser's Statement published along with the NAD decision, Maytag stated

that it would comply with the NAD's recommendation (*see* Opening Br. at p. 14 citing Att'y

Decl., Ex. H at p. 37), but the NAD later concluded that Maytag had not complied.  (*See id.* at p.

15 citing Att'y Decl., Ex. J.)  Further, when Maytag moved to transfer this case to this Court, it

urged that this case and the related case already pending before this Court should be

consolidated, and expressly promised the New York Court that "the parties will be able to litigate

Dyson's motion for a temporary injunction in Delaware promptly upon a transfer to that Court"

(*See id.* at p. 16 citing Att'y Decl., Ex. Q at p. 9, n.4).  However, in December of 2006, Maytag

then told this Court that the cases should ***not*** be consolidated (*See id.*, Att'y Decl., Ex. R at 41:7-

11.)

063753.1002



DB01:2391904.1    063753.1002



Notably, Maytag attempts to explain its misrepresentations to the Court in a footnote. (*See* Opp'n at p. 7, n.6.)  There is no basis for trusting these representations given that Maytag has previously made multiple misrepresentations and changed its story on this particular issue four times already.  Quite simply, this Court should not give credit to Maytag's representations.

### 2.    This Court's Rulings In *Dyson I* Do Not Preclude A Finding Of Irreparable Harm In This Case.

Maytag argues in its Opposition that this Court's denial of Dyson's request for preliminary injunctive relief for Maytag's alleged patent infringement in *Dyson Tech. Ltd. v. Maytag Corp.*, Civ. No. 05-434-GMS (D. Del.) ("Dyson I") constitutes a finding that "Dyson cannot show irreparable injury with respect to the Fusion, which is the main product that is the subject of this motion."[2]  (Opp'n at p. 3.)  Maytag's argument is baseless.

First, Maytag's contention that this Court's prior ruling in another, albeit related, litigation, means Dyson cannot show irreparable injury *with respect to the Fusion*, is completely unsubstantiated.  Irreparable injury is the result of specific improper conduct.  In Dyson I, Dyson sought injunctive relief due to Maytag's alleged patent infringement.  Here, Dyson is seeking

---

[2]    Maytag ignores the fact that this preliminary injunction motion is not confined solely to its false advertising on the Hoover Fusion vacuum cleaner.  Dyson seeks relief for Maytag's false

DB01:2391904.1                                                                                              063753.1002

injunctive relief to prevent Maytag's false advertising. The fact that this Court did not enjoin Maytag's alleged patent infringement does not mean that Maytag's false advertising cannot cause irreparable harm. Furthermore, this Court's prior ruling does not immunize the Hoover Fusion vacuum cleaner, or any of Maytag's conduct related thereto, from causing irreparable harm, as Maytag's counsel suggests.

The flaws in Maytag's reasoning are illustrated by the District Court's analysis in *Upjohn Co. v. Riahom Corp.*, 641 F.Supp. 1209 (D. Del. 1986). In *Upjohn*, plaintiff, a pharmaceutical company that developed and patented a compound to promote increased hair growth, sued defendant, a company that sold a solution containing the compound as a hair loss treatment product. Plaintiff sought preliminary injunctive relief for both defendant's alleged patent infringement and false advertising. *Id.* The Court denied plaintiff's request for preliminary injunctive relief for defendant's alleged patent infringement, noting that, among other things, plaintiff could not establish irreparable harm because plaintiff does not yet have its product on the market. *Id.* at 1221.

Notwithstanding the finding of no irreparable harm for defendant's alleged patent infringement, the Court issued a preliminary injunction to prohibit defendant's false advertising. *Upjohn*, 641 F.Supp. at 1226. The Court held that "[d]efendant's false and misleading claims . . . definitely tend to induce consumers to purchase their product, thereby depriving [plaintiff] of potential customers and sales." *Upjohn*, 641 F.Supp. at 1225.

The *Upjohn* case illustrates what should be obvious – a determination of whether irreparable harm exists requires a specific analysis of the impact of the conduct alleged in the absence of a preliminary injunction. *Upjohn*, 641 F.Supp. at 1224-25 ("[t]o prove irreparable

---

advertising made in connection with its Maytag Legacy vacuum cleaner as well.

DB01:2391904.1                                                                    063753.1002

injury under §43(a), a plaintiff need only provide "a reasonable basis for the belief that . . . it is likely to be damaged as a result of the false advertising."). Just as in *Upjohn*, Maytag's false advertising will cause irreparable harm by confusing customers (in this case into thinking the Hoover Fusion and Maytag Legacy vacuum cleaners are on par with Dyson's vacuum cleaners when it comes to suction retention) and by diverting sales away from Dyson (which Maytag appears to concede is the typical result of a "no loss of suction" claim, when it asserts that Dyson "captured a significant share of the upright vacuum cleaner market in the United States by falsely touting the suction . . . capabilities of its products" (Opp'n at p. 1.)) Maytag's request for this Court to mechanically adopt the same irreparable harm analysis it used in Dyson's patent infringement action is unavailing and overly simplistic. This Court's analysis must account for the significant differences between a patent infringement claim and a false advertising claim. Moreover, interpreting Dyson's increased market share over a given period of time as *per se* evidence of no irreparable harm ignores the obvious fact that diverted sales and consumer confusion can happen to growing companies just as easily as they can happen to shrinking ones.



DB01:2391904.1

063753.1002



DB01:2391904.1                                                        063753.1002

**B.** **Maytag's Claims Are Literally False And Unsubstantiated.**

      **1.** **Dyson's Testing Was Properly Conducted And Demonstrates That Maytag's Vacuums Lose Suction.**





DB01:2391904.1

063753.1002



DB01:2391904.1

063753.1002



### 3. Maytag's Disclaimer Is Woefully Inadequate To Cure Its False Advertising Claims.

In its Opposition, Maytag cites a number of cases in an attempt to rebut Dyson's argument that Maytag's qualification of its "No Loss of Suction" claim is ineffective. Maytag argues that "[d]isclaimers in advertising are commonplace and are extremely useful at dispelling the possibility of consumer confusion." (Opp'n at p. 20.) Maytag's contention, and the cases cited in support thereof, are inapposite. Dyson is not claiming that disclaimers are *per se* improper and Dyson does not doubt that, in certain circumstances, disclaimers can be used effectively. Maytag's footnoted disclaimer is not an example of a proper disclaimer, however. Maytag's disclaimer improperly purports to change and obfuscate the meaning of the claims at issue and confuses consumers. Accordingly, Maytag's cases are irrelevant and, for the reasons set forth in Dyson's Opening Brief, and as demonstrated by the consumer survey conducted by Dr. Mazis, Maytag's disclaimer should be given no weight.



DB01:2391904.1                                                          063753.1002

(1)  <u>Dr. Mazis' Study Was Well Designed To Prevent Prior
Beliefs From Distorting The Results.</u>

As even the cases cited by Maytag in its Opposition show, not all consumer surveys or consumer perception studies need or would benefit from a control group. *See Millenium Import Co. v. Sidney Frank Importing Co., Inc.*, Civ. A. No. 03-5145 JRT/FLN, 2004 WL 1447915 at *10 (D. Minn. June 11, 2004) ("the need for a control group is not evident to the Court"); *see also Chattanoga Mfg., Inc. v. Nike, Inc.*, 140 F. Supp. 2d 917, 928-29 (N.D. Ill. 2001).  A control group generally is used in situations where it is important to reduce the impact of: (1) the tendency of test subjects to guess or agree with affirmative statements and (2) the effect of pre-existing beliefs.  (Mazis Reply Decl. ¶ 3.)  Dr. Mazis simply focused on whether subjects read and understood the disclaimer to Maytag's suction claim.

(2)  <u>The "Interviewing Context" of Dr. Mazis' Study Was Well
Designed And Implemented Correctly.</u>



### 4.    Dyson's Citation To The NAD's Prior Decision Is Entirely Proper.

Utterly misconstruing the purposes for which Dyson discussed the NAD's prior decision holding that Maytag's "No Loss of Suction" claim is false, Maytag further argues that this Court should ignore the NAD's decisions.  In support of this request, Maytag argues that: (1) NAD findings are not preclusive; (2) Dyson moved to preclude the NAD decision in the *Dyson I* case;

and (3) the NAD decision is somehow flawed. (*See* Opp'n at pp. 17-20.) But Maytag's points are inapposite and incorrect.

First, Dyson has never argued that the NAD decision has any preclusive or "collateral estoppel effect" in the instant case. (*See* Opp'n at 17.) Rather, Dyson introduced evidence regarding the NAD decisions for two reasons: (1) to illustrate Dyson's likelihood of success on the merits, because Dyson and Maytag had already argued this precise issue to a widely-respected industry-funded arbitral forum designed specifically to decide precisely these kinds of issues and Dyson unequivocally prevailed (*see* Opening Br. at p. 20); and (2) as evidence that injunctive relief was necessary to prevent further abuses by Maytag, given Maytag's utter refusal to comply with the NAD's decision despite promising to do so (*see id.* at pp. 2-4, 16).[7] Thus, Maytag's litany of cases regarding the non-binding nature of NAD decisions is nothing more than a straw man argument of no relevance to the issues before this Court. (*See* Opp'n at p. 17.)

Second, although *in Dyson I* Dyson moved to preclude the NAD decision in a Motion *in Limine*, that motion was based in part on evidentiary standards applicable at trial, not upon a motion for preliminary injunction. As the Third Circuit has noted, "[i]t is well-established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (quoting *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)). In *Kos*, the Court refused to find error in the district court's consideration of hearsay

---

[7]    Indeed, as set forth in Dyson's Opening Brief, the NAD referred this matter to the FTC because Maytag had not complied with the NAD's decision. In interrogatory responses served on May 2, 2007, Maytag revealed that the FTC had initiated an investigation into this matter and that meetings took place in the fall of 2006 between high level FTC representatives and Hoover representatives regarding Hoover's claims at issue in this litigation. (Wanner Reply Decl. at Ex.

statements in ruling on a motion for preliminary injunction and noted with approval that, "many

of our sister Circuits have recognized that 'affidavits and other hearsay materials are often

received in preliminary injunction proceedings.'"  *Id.,*[8] *see also Houdini Inc. v. Goody Baskets*

*LLC*, 166 Fed. Appx. 946, 947 (9th Cir. 2006) ("district court did not abuse its discretion in

considering hearsay and biased evidence . . . because the rules of evidence do not strictly apply

to preliminary injunction proceedings.") (citing *Republic of the Philippines v. Marcos*, 862 F.2d

1355, 1363 (9th Cir. 1988) and *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir.

1984)).  Therefore, it is perfectly reasonable and appropriate for Dyson to move to preclude

introduction of the NAD decision in *Dyson I*, while at the same time using it to advance its

Motion for Preliminary Injunction in the instant case.

Finally, the NAD decision regarding Maytag's "No Loss of Suction" claim is not flawed.

In a desperate attempt to make it appear otherwise, Maytag again sets up a straw man, arguing

that the NAD should have found its "No Loss of Suction" claim substantiated because it was

"tied to a cleaning efficacy claim that was substantiated."  (*See* Opp'n at p. 19.)  But "cleaning

efficacy" is not what either the NAD decision on this issue or this case are about.  Rather, the

issues before the NAD on Maytag's "No Loss of Suction" claim and before this Court are

---

C.)

[8]  *Kos* cited the following authority for this proposition:  *Asseo v. Pan Am. Grain Co.,* 805 F.2d 23, 26 (1st Cir. 1986); *Ty, Inc. v. GMA Accessories, Inc.,* 132 F.3d 1167, 1171 (7th Cir. 1997); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982, 985 (11th Cir. 1995) ("At the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction...."); *Sierra Club, Lone Star Chapter v. FDIC,* 992 F.2d 545, 551 (5th Cir. 1993) (courts at preliminary injunction stage "may rely on otherwise inadmissible evidence, including hearsay"); *Flynt Distrib. Co. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir. 1984) ("The urgency of obtaining a preliminary injunction ... makes it difficult to obtain affidavits from persons who would be competent to testify at trial. The trial court may even give inadmissible evidence some weight ...."); *Heideman v. South Salt Lake City,* 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings.").

-18-

whether, in fact, the Fusion and the Legacy lose suction and whether Maytag's "No Loss of Suction" claim is misleading. Maytag's attempt to disparage the NAD's decisions by linking the issue of "cleaning efficacy" to its false "No Loss of Suction" claim should be disregarded.

### 5.    Dyson Has Vigorously Prosecuted Its Motion for Preliminary Injunction

Amazingly, Maytag argues in its Opposition that Dyson has delayed the prosecution of this motion for preliminary injunction. (*See* Opp'n at p. 2.) This contention is absurd and at clear odds with the facts.

First, there is no logical reason that Dyson would move for emergency injunctive relief and then seek to delay the proceedings necessary to get such emergency relief. Such a contention by Maytag simply makes no sense. Instead, as set forth more fully in Dyson's Opening Brief, Dyson has vigorously pursued a ruling on its request for a preliminary injunction, only to encounter dilatory tactics by Maytag at every turn. To summarize:

- Dyson filed its Motion for Preliminary Injunction in the Southern District of New York, an entirely appropriate forum under the law;
- Maytag moved to transfer the case to this Court, based in part on promises of consolidation and quick resolution of Dyson's Motion for Preliminary Injunction, only then to turn around and argue to this Court that the cases should ***not*** be consolidated;
- ████████████████████████████████████████████████████████████████
- Maytag delayed responding to Dyson's properly served interrogatories.

The facts speak for themselves. Maytag, not Dyson, has tried to "run out the clock." The Court should not reward Maytag's dilatory, obstructionist behavior.

### C.    The Balance Of Harms Overwhelmingly Favors Dyson

Finally, Maytag cannot possibly argue that the balance of harms does not *overwhelmingly* favor Dyson here. In support of its contention that the balance of harms somehow favors

Maytag, Maytag offers a series of complete *non-sequiturs* about **Dyson's** "No Loss of Suction" claim. However, **Maytag's** false "No Loss of Suction" claim is at issue in the instant case, not **Dyson's**.

It is not surprising that Maytag would attempt such a misdirection because a close look at the facts -- and Maytag's own representations -- reveals that Dyson stands to suffer great harm if the Court does not immediately enjoin Maytag's offending conduct while Maytag would suffer little harm comparatively. The potential irreparable harm Dyson could suffer is outlined in detail above. In contrast:

- Maytag has conceded that Dyson's "No Loss of Suction" claim is the "cornerstone of Dyson's advertising campaign," which Dyson successfully uses to its "competitive advantage" (*see* Opp'n at p. 24);

- [REDACTED]

- Maytag has also admitted that it does not even believe in its own "No Loss of Suction" claim (*see id.*);

- [REDACTED]

- Dyson has offered to bond the cost of stickering over the false "no loss of suction" claim on any Fusion or Legacy vacuums being sold, or to be sold, in the retail marketplace.

So, if Maytag does not believe in the false claim and Dyson will bond the cost of a stickering program, then Maytag cannot possibly face any real harm. As such, the balance of harms overwhelmingly favors Dyson.

## III.  **CONCLUSION**

For the foregoing reasons, the Court should grant the relief sought by Dyson in this motion for a preliminary injunction.

-20-

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

C. Barr Flinn (No. 4092)
John W. Shaw (No. 3362)
Chad S.C. Stover (No. 4919)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
cstover@ycst.com

OF COUNSEL:

Chad S. Hummel
Kathrin A. Wanner
MANATT, PHELPS & PHILLIPS, LLP
7 Times Square
New York, New York  10036
(212) 790-4500

*Attorneys for Plaintiff Dyson, Inc.*

Dated:  May 11, 2007

## CERTIFICATE OF SERVICE

I, Chad S.C. Stover, hereby certify that May 18, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Francis DiGiovanni, Esquire
>James D. Heisman, Esquire
>CONNOLLY BOVE LODGE & HUTZ LLP
>The Nemours Building – 8th Floor
>1007 N. Orange Street
>Wilmington, Delaware 19801

I further certify that on May 18, 2007, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

**BY E-MAIL**

>Anthony DiSarro, Esquire
>WINSTON & STRAWN LLP
>200 Park Avenue
>New York, NY  10166

>YOUNG CONAWAY STARGATT & TAYLOR, LLP

>/s/ *Chad S.C. Stover*
>C. Barr Flinn  (No. 4092)
>John W. Shaw (No. 3362)
>Adam W. Poff (No. 3990)
>Monté T. Squire (No. 4764)
>Chad S.C. Stover (No. 4919)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware  19801
>(302) 571-6600
>cstover@ycst.com

>*Attorneys for Dyson, Inc.*